UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:22-cv-81883- RAR

BRITTANY ROBERSON, REBECCA
FREEMAN, BIANCA VIÑAS, TIFFANY
KING, and TRESHA THOMPSON,
individually and on behalf of others
similarly situated,

       Plaintiffs,

v.

HEALTH CAREER INSTITUTE LLC (dba
HCI COLLEGE LLC and HCI ACQUISITION LLC),
FLORIAN EDUCATION INVESTORS LLC, and
STEVEN W. HART,

       Defendants.
_____/

## DEFENDANT, STEVEN W. HART'S, MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendant, STEVEN W. HART ("Hart"), by and through his undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(2) and (6), hereby files his Motion to Dismiss First Amended Complaint [DE 40] with incorporated memorandum of law, and in support thereof states as follows:

### Introduction

1.    On December 2, 2022, Plaintiffs, BRITTANY ROBERSON ("Roberson"), REBECCA FREEMAN ("Freeman"), BIANCA VIÑAS ("Viñas"), and TIFFANY KING ("King"), initiated this suit by filing a Class Action Complaint against Defendants, HEALTH CAREER INSTITUTE LLC (dba HCI COLLEGE LLC and HCI ACQUISITION LLC) ("HCI") and FLORIAN EDUCATION INVESTORS LLC ("Florian"). DE 1.

1

2.      On February 21, 2023, Roberson, Freeman, Viñas, King and TRESHA THOMPSON ("Thompson") (collectively "Plaintiffs") filed their First Amended Class Action Complaint ("Amended Complaint") against Defendants, HCI, Florian, and now, Hart. DE 40.

3.      HCI is a registered limited liability company organized under the laws of Delaware. DE 40, ¶42. Plaintiffs allege that HCI is registered to transact business in Florida and runs "HCI College." *Id.*

4.      HCI College is a school that offers Associate of Science in Nursing programs at its West Palm Beach and Fort Lauderdale campuses ("ADN Programs"). DE 40, ¶¶1-2,42. HCI College obtained approval from the Florida Board of Nursing ("BON") to operate its ADN Programs. DE 40, ¶¶51,82,89,96.

5.      Plaintiffs are former students of HCI College's ADN Programs. DE 40,¶¶37-41.

6.      The ten-count Amended Complaint alleges Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, et. seq. ("FDUTPA") violations relating to educational services provided in HCI College's ADN Programs (Counts 1,2,3,6 and 7); Breach of Contract based on HCI College's enrollment agreements and catalog relating to requirements and clinical placements in the ADN Programs (Counts 4 and 5); Unjust Enrichment based on alleged payments to HCI for a course required in HCI College's ADN Programs (Count 8); Equal Credit Opportunity Act, 15 U.S.C. §1691, et. seq. ("ECOA") violation for HCI allegedly targeting HCI College's ADN Programs to individuals based on race and extending credit for an illusory program (Count 9); and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, et. seq. ("Title VI") violation for intentional discrimination against Black people in connection with making federal student loans for enrollment in HCI College's ADN Program or for provision of

educational services by HCI and targeting Black people with their predatory product (Count 10). DE 40,¶¶460-528.

7.      Florian is a Delaware corporation with alleged principal place of business in Darien, Connecticut. DE 40,¶43. Without further elaboration, Amended Complaint alleges that Florian a "managing member" of HCI and "[o]n information and belief, Florian is an active owner and has been intimately involved in the operation of HCI since 2013." DE 40, ¶¶43,81. It also alleges that HCI College's catalogs state HCI College is "a subsidy" of Florian. *Id.* at ¶43.

8.      Florian has filed a pending Motion to Dismiss the Amended Complaint under Rule 12(b)(2) for lack of personal jurisdiction. DE 46 at pp.5-12. In short, Florian argues that Plaintiffs fail to allege sufficient facts to establish personal jurisdiction over it as a nonresident corporation under the Florida long-arm statute or to satisfy the due process requirements. *Id.*

9.      Hart is a resident of the State of Connecticut. DE 40,¶¶44,43. The only Amended Complaint allegations that specifically refer to Hart are as follows:

  a.  Florian was co-founded by Steve Hart and Larry Brown and was "established to build a multi-campus and online school group focused on the allied health sector."

  b.  In its Annual Reports to the BON, HCI has reported its owner to be "Steve Hart" or "HCI Acquisition LLC."

  c.  Florian's CEO is listed inits SEC filings as Steven W. Hart, a resident of the state of Connecticut.

  d.  Defendant Steven W. Hart is a resident of Connecticut. Mr. Hart is the Chairman of HCI and the CEO of Florian. In his role as Chairman of HCI, Hart directs HCI's President and CEO.

  e.  Mr. Hart is also the founder of Hart Capital LLC, a Connecticut Corporation described as a "family office which invests in a diversified portfolio of assets" which operates under the North American Industry Classification System ("NAICS") code 611310, which is the NAICS code reserved for "Colleges, Universities, and Professional Schools."

DE 40, ¶¶34,42-45.

## Memorandum of Law

**I.      Plaintiffs fail to satisfy their burden of establishing personal jurisdiction over Hart**

A defendant may move to dismiss a claim for lack of personal jurisdiction under Rule 12(b)(2). Where a defendant challenges personal jurisdiction, "the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1217 (11th Cir. 2009). First, plaintiff bears the initial burden of alleging sufficient facts in the complaint to make out a *prima facie* case of long-arm jurisdiction. *United Technologies Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009). If plaintiff meets her initial burden, the burden then shifts to defendant to make a *prima facie* showing of the inapplicability of the state long-arm statute. *Future Technology Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). If defendant sustains this burden, plaintiff must then substantiate the allegations of the complaint by affidavits and other competent proof and cannot merely reiterate facts in the complaint. *Id.* A court that lacks personal jurisdiction over a defendant must grant the motion to dismiss under Rule 12(b)(2) and is powerless to take any further action. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).

A federal court must undertake a two-step inquiry in determining whether personal jurisdiction exists over a nonresident defendant. *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 855 (11th Cir. 1990). The determination is made according to the law of the state where the district court sits, *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 581 (M.D. Fla. 1991), which in this case is Florida. The Florida Supreme Court has explained that in determining whether long-arm jurisdiction is appropriate in a case, two inquiries must be made: first, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the Florida long-arm statute; and, if it

4

does, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements. *Venetian Salami Co. v. J.S. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989); *see Cable/Home Communication Corp.,* 902 F.2d at 856 (when extent of long-arm statute is governed by Florida law, federal courts must construe it as would the Florida Supreme Court).

In connection with the first prong, Florida's long-arm statute, Section 48.193, confers two types of jurisdiction. *Pinnacle Ins. & Financial Servs., LLC v. Sehnoutka*, 2017 WL 3193641 at *2 (M.D. Fla. Jul. 27, 2017). "[S]ection 48.193(1) lists enumerated acts which will confer specific personal jurisdiction over a defendant for suits arising from those acts." *Id.* The second type of jurisdiction is set forth under Section 48.193(2), which "'provides that Florida courts may exercise general personal jurisdiction' if the defendant engages in 'substantial and not isolated activity in Florida[,]' whether or not the claims asserted actually involve the defendant's activities in Florida." *Id.* (citing *Carmouche v. Tamborlee Mgmt., Inc.,* 789 F.3d 1201, 1203-04 (11th Cir. 2015)).

Recently, in *Parisi v. Kingston,* 314 So. 3d 656, 660 (Fla. 3d DCA 2021), the Third District Court of Appeal clarified that the first prong of the inquiry "focuses exclusively on the plaintiff's complaint, and whether it either tracks the language of Florida's long-arm statute (section 48.193(1)-(2) of the Florida Statutes) or alleges facts sufficient to show that the defendant's actions fit within one or more subsections of the statute." *Id.* (citing *Belz Investco Ltd. v. P'ship v. Groupo Immobiliano Cababie, S.A.,* 721 So. 2d 787, 789 (Fla. 3d DCA 1998)). If the complaint does not contain sufficient allegations to establish a basis for personal jurisdiction under Section 48.193, then the constitutional analysis under the second prong is unnecessary. *Id.*

At the outset, the Amended Complaint fails to mention Florida's long-arm statute or track its language with respect to Hart at all. *C.f.* DE 40, ¶¶29,30. Plaintiffs admit that Hart is a resident of Connecticut. DE 40, ¶¶43-44. The totality of the allegations referring to Hart in any way are contained in just five paragraphs of the 528-paragraph Amended Complaint. DE 40,¶¶34,42-45. While the Amended Complaint vaguely alleges that Hart was reportedly the owner and Chairman of HCI and CEO and co-founder of Florian, it is completely devoid of allegations that Hart undertook any specific act or engaged in any conduct enumerated under Section 48.193(1) that could potentially give rise to any of the causes of action asserted against him individually. *See* §48.193(1)(a), Fla. Stat. Thus, the Amended Complaint fails to allege sufficient facts to establish specific personal jurisdiction over Hart and Plaintiffs cannot satisfy the first prong as to personal jurisdiction under Section 48.193(1) as a matter of law. *See id.*; *Parisi,* 314 So. 3d at 660; *see also Abdo v. Abdo*, 263 So. 3d 141, 146-49 (Fla. 2d DCA 2018) (concluding that plaintiffs' complaint failed to allege sufficient jurisdictional facts to subject nonresident corporate defendant to jurisdiction under any relevant subsection of Section 48.193(1)(a)(1),(2),(7), including where there were no factual allegations that could establish defendant breached a contract).

Notably, the Amended Complaint is likewise devoid of allegations that Florian, an alleged Delaware corporation with principal place of business in Connecticut, took any specific action or engaged in any specific conduct with respect to the asserted causes of action. DE 40, ¶43. Florian has also moved to dismiss on the grounds that Plaintiffs fail to establish personal jurisdiction. *See* DE 46. Thus, Hart's mere role as an alleged co-founder or CEO of Florian is insufficient standing alone to confer personal jurisdiction, particularly where the Amended Complaint is devoid of allegations that would establish personal jurisdiction over Florian either

in the first instance. Just as with Hart, the Amended Complaint contains only conclusory and vague allegations as to Florian, which are clearly insufficient. *See Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc.,* 522 F.Supp.3d 1202, 1209 (S.D. Fla. 2021) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the [plausibility] standard."); *see e.g.,* DE 40, ¶81.

In fact, the Amended Complaint is so vague and unclear that it does not specify the capacity in which Plaintiffs bring this lawsuit and their claims against Hart or even what entity he was allegedly acting on behalf of. Nonetheless, whether Hart is sued individually or in his capacity as a corporate officer is inconsequential as the Amended Complaint is insufficient to confer personal jurisdiction over him in any capacity. There is simply no allegation that Hart, in his individual capacity, took any action or engaged in any course of conduct in the State of Florida that could give rise to any of the causes of action asserted, all of which are premised upon allegations relating to HCI's provision of educational services and student loans in HCI College's ADN Programs in Florida. *See* DE 40, ¶¶460-528. To the extent Plaintiffs may attempt to argue that there is jurisdiction over Hart based on an agency theory, this argument fails as the Amended Complaint fails to allege the requisite elements of an agency relationship or that HCI was acting on behalf of Hart and mere allegations that Hart was an owner or chairman is insufficient. *See Abdo,* 263 So. 3d at 147 (concluding complaint did not contain sufficient factual allegations to confer specific personal jurisdiction under Florida's long-arm statute on an agency theory where it was devoid of allegations indicating that defendants controlled the actions of purported agent). Accordingly, the Amended Complaint is woefully insufficient to establish that Hart, in his individual capacity, is subject to specific jurisdiction under Florida's long-arm

statute. *See Sutton v. Seaman,* 2014 WL 12861091 at *2-4 (S.D. Fla. Sept. 4, 2014) (dismissing complaint for lack of personal jurisdiction where vaguely alleged conduct did not establish that defendants in their individual capacities engaged in any business activity or tortious conduct in Florida giving rise to alleged causes of action against them).

Moreover, to the extent that the Amended Complaint contains vague allegations about Hart in his capacity as a corporate officer, such allegations are likewise insufficient to establish personal jurisdiction based on the alter ego theory and/or corporate shield doctrine. "The mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders to the extent that the debts of the corporation should be imposed upon them personally. If this were the rule, it would completely destroy the corporate entity as a method of doing business and it would ignore the historical justification for the corporate enterprise system." *See Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984). Florida courts will hold individuals personally liable **only in** situations where "the corporation was a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose. *See Exigent Tech., Inc. v. Radiant Telecom, Inc.*, 04-22140-CIV, 2005 WL 8155082, at *2 (S.D. Fla. Dec. 5, 2005).[1]

---

[1] HCI and Florian are both Delaware companies. To the extent a choice of law issue may be present, it is not significant since the laws of Delaware and Florida are functionally the same in this regard. *In re Hillsborough Holdings Corp*., 166 B.R. 461, 468 (Bankr. M.D. Fla. 1994), aff'd, 176 B.R. 223 (M.D. Fla. 1994).

"'The corporate shield doctrine prohibits the exercise of jurisdiction under the Florida long-arm statute over corporate employees whose only conduct in Florida [is] in furtherance of a corporation's interests.'" *Sutton,* 2014 WL 12861091 at *3 (quoting *Lane v. XYZ Venture Partners, LLC,* 322 F.App'x 675, 678 (11th Cir. 2009)). Florida recognizes the alter ego theory, which is an exception to the corporate shield doctrine, as a limited exception to the two-step inquiry for establishing long-arm jurisdiction. *See id.*; *Abdo,* 263 So. 3d at 149. To demonstrate jurisdiction under an alter ego theory, plaintiff must make sufficient allegations to pierce the corporate veil which requires establishing "both that the corporation is a 'mere instrumentality' or alter ego of the defendant and that the defendant engaged in 'improper conduct' in the formation or use of the corporation." *Abdo,* 263 So. 3d at 149 (emphasis in original). The Amended Complaint is devoid of any such allegations.

It cannot be emphasized enough that all of the causes of action asserted in the Amended Complaint arise out of the alleged educational services and student loans in HCI College's ADN Programs. *See* DE 40,¶¶460-528. Plaintiffs expressly allege HCI runs HCI College. DE 40, ¶42. There is no allegation that Hart runs HCI College or is involved with the alleged provision of educational services or loans in HCI College's ADN Programs. Preliminarily, the Amended Complaint is devoid of any specific allegation that Hart engaged in any improper conduct at all, let alone in the formation or use of any corporation. *See* DE 40, ¶¶34,42-45. Likewise, it also fails to allege that HCI was a "mere instrumentality" or alter ego of Hart. *Abdo,* 263 So. 3d at 149-50. The sole Amended Complaint allegations about Hart's role at and conduct with respect to HCI are that "[i]n his role as Chairman of HCI, Hart directs HCI's President and CEO." DE 40,¶44. Critically, the Amended Complaint does not state that Hart specifically directed HCI's President and CEO to do any of alleged tortious acts so that he could be individually liable in nay

respect. *See Sutton,* 2014 WL 12861091 at *3-4. In sum, the Amended Complaint is insufficient to establish personal jurisdiction over Hart and his mere alleged role as Chairman or owner of HCI or Florian -- the complaint is unclear which -- is insufficient to confer personal jurisdiction. *Id.*; *Abdo,* 263 So. 3d at 149-51.

To the extent Plaintiffs may argue that the Amended Complaint establishes general personal jurisdiction over Hart, the United States Supreme Court's decisions in *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915 (2011) and *Daimler AG v. Bauman,* 571 U.S. 117 (2014), are instructive. *See Sehnoutka,* 2017 WL 3193641 at *7. Relying in large part on *Goodyear,* the *Daimler* Court clarified that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.* It also held that with respect to an individual defendant, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* (quoting *Daimler*, 571 U.S. at 117). In *Sehnoutka,* under *Goodyear* and *Daimler,* this Court concluded that it could not exercise general jurisdiction over the individual defendants as neither was domiciled in Florida and plaintiff had not shown that Florida was the functional equivalent of their states of domicile. *Sehnoutka,* 2017 WL 3193641 at *11-12.

Here, the Amended Complaint alleges that Hart is a resident of Connecticut. DE 40,¶¶44,43. The Amended Complaint is devoid of any specific factual allegations that would indicate that Hart, as an individual defendant, has any contacts with the State of Florida, let alone contacts that are so "substantial and not isolated" and "continuous and systematic" such as to render him "essentially at home in the forum state" for purposes of conferring general jurisdiction as required. *Sehnoutka,* 2017 WL 3193641 at *11-12. On its face, the Amended

Complaint establishes that this Court cannot exercise general personal jurisdiction over Hart, a Connecticut resident under Section 48.193(2).

In sum, Plaintiffs fail to establish a *prima facie* case of personal jurisdiction over Hart under the Florida long-arm statute. *See United Technologies Corp.,* 556 F.3d at 1274; *Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1318 (11th Cir. 2006) (finding plaintiff's vague and conclusory allegations are insufficient to establish a *prima facie* case of personal jurisdiction over defendant). Because the Amended Complaint fails to plead sufficient facts to extend long-arm jurisdiction over Hart, Plaintiffs have failed to satisfy their initial burden of showing a *prima facie* case of personal jurisdiction and the burden has not shifted to Hart to present evidence contesting personal jurisdiction. *Parisi,* 314 So. 3d at 663-64 (citing *Crownover v. Masda Corp.*, 983 So. 2d 709, 713 (Fla. 2d DCA 2008))("Until the plaintiff – within the four corners of the complaint – pleads a legally sufficient basis for extending long-arm jurisdiction over a nonresident defendant, the defendant is not required to file an affidavit, declaration or present other evidence to contest personal jurisdiction.").  Accordingly, all claims asserted in the Amended Complaint must be dismissed as to Hart in their entirety.

## II.     Plaintiffs fail to sufficiently allege any plausible claim for relief against Hart[2]

Rule 8(a) requires "a short and plain statement showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). When a complaint fails to comply with these requirements or otherwise fails to state a claim for relief that is plausible on its face, defendant may seek dismissal under Rule 12(b)(6). *Durr v. Deltona,* 2017 WL 397578 (M.D. Fla. Jan. 30, 2017). A plaintiff's obligation to provide the grounds of

---

[2] By referencing Hart in these arguments as to the sufficiency of the pleadings, Hart in no way waives the arguments related to personal jurisdiction.

entitlement to relief requires more than labels and conclusions. *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level," assuming that all allegations of the complaint are true. *Id.* at 555-56. If there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (citing Rule 8(a)(2)).

Even assuming *arguendo* that Plaintiffs have sufficiently alleged a basis to exercise personal jurisdiction over Hart, which they clearly have **not**, the Amended Complaint nonetheless fails to allege any plausible cause of action against Hart as an individual defendant or otherwise. It is unclear from the Amended Complaint what capacity Plaintiffs have brought their claims against Hart, including whether it pertains to HCI or Florian, or how he is alleged to have been involved at all in events allegedly giving rise to any cause of action. On that ground, the Amended Complaint allegations are insufficient to provide fair notice to Hart as required under the Rules of the claims being asserted against him.

Additionally, as will be discussed, the Amended Complaint allegations are legally insufficient to state any claim for relief against Hart for breach of contract or unjust enrichment or under FDUTPA, the ECOA or Title VI and Counts 1 through 10 must be dismissed as to Hart.

a.    **The Amended Complaint is insufficient to put Hart on notice of the claims being asserted against him.**

As a preliminary matter, as mentioned above, Plaintiffs fail to specify whether they are bringing this lawsuit (or any of the claims asserted herein) against Hart in his individual capacity or some other capacity in connection with any of the corporate entities referenced in the

Amended Complaint. The caption of this lawsuit does not even state whether Hart is being sued as an individual, in his capacity as an officer of a corporate entity, or both. Likewise, the content of the Amended Complaint lacks allegations about Hart's involvement individually or indicating that he did anything on behalf of either one of two corporate entity defendants.

Complaints that fail to comply with the pleading requirements set forth Rules 8(a)(2) and 10(b) are commonly referred to as "shotgun pleadings." *Hernandez v. Integon Nat'l Ins. Co.,* 2020 WL 6581810 at *3 (S.D. Fla. Nov. 10, 2020); *see* Fed. R. Civ. P. 10(b) (requiring a party to state its claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances."). As relevant here, one such type of impermissible shotgun pleading asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at *4 (quoting *Weiland v. Palm Beach Cty. Sheriff's Office,* 792 F.3d 1313, 1321-23 (11th Cir. 2015)). When a complaint pleads multiple claims against multiple defendants by referring to them collectively, courts must determine whether the defendant challenging the sufficiency of the allegations has fair notice of the claims presented against him. *Intra-Lock Internat'l, Inc. v. Choukroun*, 2014 WL 12479195 at *2 (S.D. Fla. Dec. 4, 2014).

Here, only a few paragraphs of the Amended Complaint mention Hart and are limited to general allegations about the parties. DE 40,¶¶34,42-45. The Amended Complaint is totally devoid of any other mention of Hart specifically or any allegations that Hart was personally involved at all in events giving rise to the alleged cause of action. Not only does the Amended Complaint fail to distinguish whether Plaintiffs have sued Hart in an individual capacity or as an officer for any alleged corporate entity mentioned, but it also fails to differentiate between the acts of unspecified Defendants under the causes of action asserted therein. *See* DE 40,¶¶460-528.

At bottom, the Amended Complaint fails to satisfy Rule 8(a)'s purpose to give Hart fair notice of the claim(s) brought against him and the grounds for same, *Twombly,* 550 U.S. at 555, and fails to state a claim for relief that is plausible on its face. Thus, the Amended Complaint is insufficient and must be dismissed as to Hart. *Choukroun,* 2014 WL 12479195 at *2-3; *see also Hernandez,* 2020 WL 6581610 at *5 (complaint was clearly unacceptable shotgun pleading given issues including that it was devoid of factual allegations against particular defendant and alleged multiple claims against multiple defendants without specificity).

       **b.**    **Plaintiffs fail to state a breach of contract claim against Hart.**

Assuming *arguendo* that the Amended Complaint was overall sufficient to put Hart on notice of the claims being asserted against him, Plaintiffs fail to sufficiently allege a breach of contract claim against Hart. In Florida, to state a breach of contract claim, plaintiff must plead: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from that breach. *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009). However, under Florida law, "a corporate officer may not be held individually liable on a contract unless that officer signed in an individual capacity, or unless the corporate veil was pierced or the corporate entity should be ignored because it was found to be formed or used for fraudulent purposes, or where the corporation was merely the alter ego of the officer." *Federal Deposit Ins. Corp. v. VRG Appraisals, Inc.,* 2013 WL 12156110 at *2 (M.D. Fla. Aug. 13, 2013) (citing *Ryan v. Wren,* 413 So. 2d 1223, 1224 (Fla. 2d DCA 1982); *Fla. Specialty, Inc. v. H 2 Ology, Inc.,* 742 So. 2d 523, 527 (Fla. 1st DCA 1999)).

Here, under Counts 4 and 5 for breach of contract, Plaintiffs claim that they each entered an Enrollment Agreement "with Defendants" which constitutes a contract "between the student and Defendants." DE 40,¶¶475-76,482,484; *see also id.* at ¶121. Plaintiffs also claim that

"Defendants' college catalog" is a contract. DE 40,¶¶478,486. Plaintiffs allege that "Defendants breached their contracts" with Plaintiffs by making arbitrary and capricious changes to testing and grading requirements and failing to provide clinical placements. DE 40, ¶¶479, 488.

The Amended Complaint is devoid of any allegation that Hart signed any enrollment agreement, college catalog, or any other alleged contract with Plaintiffs. Further, the enrollment agreements attached as exhibits to the Amended Complaint prove that Hart did not sign those documents. DE 40-2, 40-3, 40-4. There is no allegation that Hart was personally involved at all in any alleged contracts purportedly at issue in this lawsuit. Because there are no factual allegations in the Amended Complaint that would indicate Hart could be held personally liable on any alleged contract at issue here, Hart cannot be held personally liable for breach of contract. Moreover, as discussed above, the Amended Complaint is devoid of allegations that would warrant piercing the corporate veil or indicating that HCI or any other corporate entity was merely an alter ego of Hart. As such, Counts 4 and 5 must be dismissed as to Hart. *See Federal Deposit Ins. Corp.,* 2013 WL 12156110 at \*2.

        c.        **Plaintiffs fail to state a claim under FDUTPA against Hart.**

A consumer FDUTPA claim has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Virgilio v. Ryland Group, Inc.,* 680 F.3d 1329, 1338 fn.25 (11th Cir. 2012). It is well settled in Florida that "in order to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper dealings." *SIG, Inc. v. AT&T Digital Life, Inc.,* 971 F.Supp.2d 1178, 1195 (S.D. Fla. 2013) (quoting *KC Leisure, Inc. v. Haber,* 972 So. 2d 1069, 1074 (Fla. 5th DCA 2008)). This Court has held that to satisfy Rule 8's pleading standards, plaintiffs' FDUTPA

allegations must specify the defendant's individual actions and how they constitute a violation of FDUTPA. *Id.* (quotation and citation omitted).

Here, Plaintiffs assert various FDUTPA claims under Counts 1, 2, 3, 6 and 7 against all Defendants without differentiating. The Amended Complaint is utterly devoid of any allegation that Hart took any individual actions in connection with the FDUTPA claims and fail to allege that he directly participated in any events giving rise to the FDUTPA causes of action asserted. As such, the FDUTPA claims are insufficient as a matter of law and must be dismissed as to Hart. *See SIG, Inc.,* 971 F.Supp.2d at 1195-96.

> **d.     Plaintiffs fail to state a claim for unjust enrichment against Hart.**

Count 8 asserts an unjust enrichment claim and alleges that Plaintiffs and Subclass members conferred a benefit on HCI when they paid $4,000 to enroll the required Capstone course, that HCI knowingly and voluntarily accepted this benefit, that HCI did not provide the promised course, and that it would be inequitable for HCI to retain the difference between the cost of VATI and amount charged for Capstone. DE 40, ¶¶501-503, 506. Only defendant HCI is specifically referenced. *Id.* at ¶¶501-06. Hart is not mentioned under Count 8 and the Amended Complaint is otherwise devoid of allegations indicating that Hart had any involvement whatsoever with the Capstone course or that any alleged benefit was conferred upon Hart in connection with same.

In Florida, unjust enrichment is an equitable claim based on a legal fiction which implies a contract as a matter of law even though the parties to such implied contract never indicated by deed or word that an agreement existed between them. *Tooltrend, Inc. v. CMT Utensili, SRL,* 198 F.3d 802, 805 (11th. Cir.1999). Such contract implied in law, also known as a quasi contract, is established "where it is deemed unjust for one party to have received a benefit without having to

pay compensation for it." *14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc.,* 43 So. 3d 877, 880 (Fla. 1st DCA 2010).  Thus, to prevail on an unjust enrichment claim, a party must demonstrate that plaintiff has conferred a benefit, with defendant's knowledge and under the circumstances would be unfair to retain without the benefit of paying fair value. *Com. P'ship 8098 Limited P'ship v. Equity Contracting Co., Inc.*, 693 So. 2d 383 (Fla. 4th DCA 1997). Here, Plaintiffs allege in essence that they paid too much for a product they claim is worthless. However, this does not amount to unjust enrichment under Florida law. As discussed, the essence of a cause of action for unjust enrichment that defendant has received a benefit for which it has not paid fair market value. Quite simply, this is not what Plaintiffs pled. As such their claim for unjust enrichment fails as a matter of law against any of Defendants, including Hart.

The claim also fails with respect to Hart, because "[i]n a claim for unjust enrichment, Florida courts require that a plaintiff *directly* confer a benefit to a defendant." *ASD Specialty Healthcare, Inc. v. Jupiter Hematology & Oncology Assocs., P.A.,* 2010 WL 11596318 at \*5-6 (S.D. Fla. Oct. 1, 2010) (discussing Florida cases). The Court's reasoning in dismissing a plaintiff's unjust enrichment claim against an individual defendant in *ASD Specialty Healthcare, Inc.* is instructive in this regard. In *ASD Specialty Healthcare, Inc.*, an individual, Shapiro, executed an application for new account with plaintiff and listed the medical practice as the applying corporation's name "c/o [Shapiro]." After signing, Shapiro and others ordered pharmaceuticals from plaintiff using the account established by the application and the outstanding obligation exceeded 1.2 million dollars. Plaintiff sued Shapiro and others alleging claims including unjust enrichment. *Id.* at \*1.

On Shapiro's motion to dismiss, the Court found that plaintiff failed to state a claim for unjust enrichment, because the complaint stated a "blanket claim of unjust enrichment against all

Defendants" and allegation that Shapiro specifically retained any proceeds from sale or use of the purchased pharmaceuticals. The court found that such employment related benefits were not conferred by plaintiff upon Shapiro, but rather by the corporate entities that Shapiro was associated with. The Court concluded that unless it could be alleged that the corporate entities were mere conduits for proceeds from the use or sales of plaintiff's pharmaceuticals, or that his salary otherwise derived entirely from same, plaintiff had no cause of action against Shapiro for unjust enrichment. *Id.* at *6. It also noted that allowing such claim against Shapiro may run afoul of the corporate fiction as there was no argument that the corporate veil should be pierced because Shapiro misused the corporate form or engaged in fraud or deception. *Id.* at *6, fn.5.

Here, Count 8 expressly alleges that Plaintiffs conferred a benefit on HCI by purchasing the $4,000 Capstone course, HCI accepted the benefit but did not provide the promised course, and it would be inequitable for HCI to retain the difference between the cost of VATI and purchase price paid for Capstone. DE 40, ¶¶501-503, 506. Accordingly, the express language of Count 8 is clear that Plaintiffs allege their unjust enrichment claim against only HCI specifically. Hart is not mentioned under Count 8 at all and there no allegation in the Amended Complaint that Hart specifically or directly retained any benefit from the Plaintiffs' alleged purchase of the Capstone course or HCI's alleged retention of the difference between the cost of VATI and amount Plaintiffs paid for Capstone. On these grounds alone, Plaintiffs fail to state an unjust enrichment claim against Hart. And further, any argument that Hart was conferred a benefit by virtue of his association with HCI fails as Plaintiffs have failed to allege that HCI is a mere conduit for him to receive proceeds from Plaintiffs' purchase of the Capstone course and have made no allegations that would support piercing the corporate veil. In sum, consistent with the

Court's reasoning in *ASD Specialty Healthcare, Inc.,* Count 8 must be dismissed as to Hart as Plaintiffs allegations are insufficient to state an unjust enrichment claim against him.

      **e.**      **Plaintiffs fail to state an Equal Credit Opportunity Act claim against Hart.**

The Equal Credit Opportunity Act ("ECOA") makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction [] on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. §1691(a)(1). In order to hold a defendant liable under the ECOA, the defendant must be a "creditor" as defined by the statute and applicable regulations. *Hunter v. Bev Smith Ford, LLC,* 2008 WL 1925265 at *5-6 (S.D. Fla. Apr. 29, 2008); *see also Brook v. Sistema Universitario Ana G. Mendez, Inc.,* 2017 WL 1743500 at *2-3 (M.D. Fla. May 4, 2017). "Creditor" is defined under the ECOA as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. §1691a(e). The applicable regulations further define "creditor" as "a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit." 12 C.F.R. §202.2(l). The issue of whether a defendant is a creditor as defined by the ECOA and applicable regulations is dispositive to defendant's liability under the ECOA. *Hunter,* 2008 WL 1925265 at *6.

Here, under Count 9 for alleged ECOA violation based on "reverse redlining," Plaintiffs allege HCI is a "creditor" within the meaning of 15 U.S.C. §1691a(e) because of its participation in making and arranging the extension, renewal or continuation of student loans. DE 40, ¶513. Count 9 does not mention Hart specifically and the Amended Complaint is otherwise devoid of

any allegations to indicate that he had any involvement whatsoever in with respect to student loans. Therefore, Count 9 against Hart simply fails and must be dismissed against him.

  **f.**  **Plaintiffs cannot bring a Title VI claim against Hart.**

  Title VI of the Civil Rights Act of 1964 provides that no person "shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d. The text of Title VI precludes liability against those who do not receive federal funding, including individuals. *Shotz v. Plantation,* 344 F.3d 1161, 1170 (11th Cir. 2003). Here, Plaintiffs appear to lump all Defendants together under Count 10 for alleged Title VI violation. DE 40, ¶¶520-528. For example, Plaintiffs vaguely allege without differentiating that "Defendants, as recipients of federal financial aid, receive 'Federal financial assistance' within the meaning of 42 U.S.C. §2000d." DE 40,¶525. Hart is not specifically mentioned and the Amended Complaint is otherwise devoid of allegations that would indicate he received any federal financial aid or was involved at all in the alleged intentional discrimination and reverse redlining. On this ground alone, Plaintiffs fail to sufficiently state a Title VI claim against Hart. But even if he was alleged to be involved, Plaintiffs cannot bring any claim for relief against Hart under Title VI anyway because the statute does not provide for individual liability. *See Shotz,* 344 F.3d at 1170. Thus, Count 10 must be dismissed as to Hart with prejudice.

**CONCLUSION**

WHEREFORE, based on the foregoing, Defendant, STEVEN W. HART, respectfully requests that this Court grant his Motion to Dismiss and dismiss the First Amended Class Action Complaint in its entirety as to Defendant, STEVEN W. HART.

Dated: March 24, 2023                    Respectfully submitted,

                                        BY: /S/ *Michael J. Carney*
                                        MICHAEL J. CARNEY (Florida Bar No. 44326)
                                        MJC-KD@kubickidraper.com
                                        BARBARA FOX (Florida Bar No. 155608)
                                        BF-KD@kubickidraper.com
                                        **KUBICKI DRAPER**
                                        110 East Broward Boulevard, Suite 1400
                                        Ft. Lauderdale, Florida 33301
                                        Telephone: (954) 713-2323
                                        Attorneys for Defendants