**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| BRITTANY ROBERSON, REBECCA FREEMAN, BIANCA VIÑAS, TIFFANY KING, and TRESHA THOMPSON, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>HEALTH CAREER INSTITUTE LLC (dba HCI COLLEGE LLC and HCI ACQUISITION LLC), FLORIAN EDUCATION INVESTORS LLC, and STEVEN W. HART,<br><br>        Defendants. | Civil Action No. 9:22-cv-81883-RAR |

**STATEMENT OF INTEREST OF THE
CONSUMER FINANCIAL PROTECTION BUREAU
IN SUPPORT OF PLAINTIFFS**

I.    **Introduction**

The Consumer Financial Protection Bureau ("CFPB" or "Bureau") respectfully submits this Statement of Interest to assist the Court in its evaluation of Plaintiffs' claim under the Equal Credit Opportunity Act ("ECOA"). ECOA is a civil rights law that prohibits creditors from discriminating against any applicant "with respect to any aspect of a credit transaction" on a prohibited basis, including "race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). The Bureau has authority to enforce ECOA and to interpret, and issue rules under, the statute. *See* 15 U.S.C. §§ 1691b(a), 1691c(a)(9), 1691e(e). The rules implementing ECOA are known as Regulation B. *See* 12 C.F.R. pt. 1002.

One form of discrimination prohibited under ECOA is discriminatory targeting (also called "reverse redlining" or "targeted predatory lending"). Discriminatory targeting is the act of targeting unfair or predatory lending acts or practices to certain groups on a prohibited basis, which may be proven through either intentional targeting or disparate impact. While the acts underlying a discriminatory targeting claim are varied, courts have recognized such claims when creditors target, on a prohibited basis, predatory lending acts or practices such as equity-stripping, issuing loans that are designed to fail, bait-and-switching, churning through foreclosures or repossessions, and misrepresenting costs to induce credit applications.[1]

---

[1] *See, e.g.*, *Carroll v. Walden Univ., LLC*, No. 22-CV-00051, 2022 WL 17252556 (D. Md. Nov. 28, 2022); *Horne v. Harbour Portfolio VI, LP*, 304 F. Supp. 3d 1332 (N.D. Ga. 2018); *United States v. Home Loan Auditors, LLC*, No. 16-CV-04839, 2016 WL 6962881 (N.D. Cal. Nov. 29, 2016); *Saint-Jean v. Emigrant Mortg. Co.*, 50 F. Supp. 3d 300 (E.D.N.Y. 2014); *U.S. ex rel. Cooper v. Auto Fare, Inc.*, No. 14-CV-0008, 2014 WL 2889993 (W.D.N.C. June 25, 2014); *M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538 (E.D.N.Y. 2010); *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D. Ill. 2007); *Jackson v. Novastar Mortg., Inc.*, 645 F. Supp. 2d 636 (W.D. Tenn. 2007); *Munoz v. Int'l Home Cap. Corp.*, No. 03-01099, 2004 WL 3086907, at *4 (N.D. Cal. May 4, 2004); *Phillips v. Better Homes Depot, Inc.*, No. 02-CV-1168, 2003 WL 25867736 (E.D.N.Y. 2003); *Matthews v. New Century Mortg. Corp.*, 185 F. Supp. 2d 874 (S.D. Ohio 2002); *Hargraves v. Cap. City Mortg. Corp.*, 140 F. Supp. 2d 7 (D.D.C. 2000).

The named plaintiffs in this case represent a putative class of Black students who enrolled at Health Career Institute ("HCI"), a for-profit nursing school. First Am. Compl. ¶ 2, ECF No. 40. Plaintiffs allege that HCI extended and arranged for students to take out credit to pay for the program in the form of federal and private student loans. *Id.* ¶ 514. Plaintiffs further allege that HCI adopted new policies, while students were enrolled, that increased the amount of time and money it would take students to complete the program. *Id.* ¶ 203. And Plaintiffs allege that HCI intentionally targeted its program to individuals on the basis of race, with the understanding that they were highly likely to require an extension of credit to pay for the program. *Id.* ¶ 517. Plaintiffs claim that HCI engaged in "reverse redlining" (hereinafter "discriminatory targeting") in violation of ECOA, 15 U.S.C. § 1691(a), and they bring other claims under federal and state law. Defendants moved to dismiss Plaintiffs' First Amended Complaint, including this ECOA claim. *See* Defendants' Motion to Dismiss First Amended Complaint ("MTD"), ECF No. 55.

This Statement of Interest addresses two legal issues regarding the application of ECOA raised by Defendants' motion. First, to state a claim under ECOA, a plaintiff need allege only facts to plausibly suggest that a defendant discriminated on a prohibited basis with respect to an aspect of a credit transaction; they need not allege the elements of a prima facie case, which is an evidentiary standard and not a pleading requirement. Second, ECOA's prohibition on discrimination "with respect to any aspect of a credit transaction" applies to every aspect of the applicant's dealings with a creditor, not merely the loan terms in the contract.

## II. Argument

### a. A plaintiff need not allege the elements of prima facie case to state a claim of discriminatory targeting under ECOA.

Defendants contend that to state a claim for discriminatory targeting under ECOA, a "plaintiff must allege that: (1) she is a member of a protected class; (2) she applied and was

2

qualified for a loan; (3) the loan was given on grossly unfavorable terms; and (4) the lender intentionally targeted her for unfair loans or makes loans on more favorable terms to others." MTD at 33 (quoting *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 876 (N.D. Cal. 2010)). That contention is mistaken on two fronts: First, those elements are an evidentiary standard for proving discrimination, not a pleading requirement; at this stage, a plaintiff need allege only sufficient facts to state a claim under the *Twombly/Iqbal* standard. Second, even at later stages when a plaintiff must prove that discrimination occurred, the specific elements that Defendants identify may not be necessary to prove discrimination, since the evidentiary standard will depend on the evidence in the specific case.

On the first point, the four-part test that Defendants cite is a variation of the elements that a plaintiff must show to establish a prima facie case of discrimination when proceeding under the familiar *McDonnell Douglas* burden-shifting standard.[2] But the Supreme Court has made clear that the prima facie case "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Thus, a plaintiff "need not plead a prima facie case of discrimination" to survive a motion to dismiss. *Id.* at 515. Instead, at this stage, the allegations in the complaint "should be judged by the statutory elements" of the specific statute "rather than the structure of the prima facie case." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). Accordingly, to plead a claim of discrimination under ECOA, a plaintiff need allege only "enough factual matter (taken as true) to suggest" that a defendant discriminated on a prohibited

---

[2] Under this well-established framework, a plaintiff first makes out a prima facie case, which establishes a presumption of discrimination; the burden then shifts to the defendant to rebut that presumption by offering "some legitimate, non-discriminatory reason" for the action; and finally, the burden shifts back to the plaintiff to show the defendant's "proffered reason to be a pretext." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325-26 (11th Cir. 2011).

3

basis with respect to any aspect of a credit transaction. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 666 (2009).

Contrary to Defendants' suggestions, the complaint here adequately alleges that HCI engaged in "discrimination." Plaintiffs allege that HCI engaged in discrimination by targeting women of color, specifically Black women, with their predatory program and lending practices. To support this claim, Plaintiffs allege that HCI prominently featured Black women as models in advertisements and that HCI enrolled a disproportionate number of Black students compared to the population of surrounding neighborhoods. First Am. Compl. ¶¶ 26(e), 113-14. At this stage, these allegations are sufficient to plausibly allege that HCI discriminated on the basis of race. *See Carroll*, 2022 WL 17252556, at *5-6, 10-11 (plaintiffs sufficiently alleged discrimination by alleging race-targeted advertising and marketing and by alleging targeting toward nontraditional students which disproportionately impacts a protected class); *Cooper*, 2014 WL 2889993, at *3 (plaintiffs sufficiently alleged discrimination by alleging location of car dealerships in predominantly Black neighborhoods, a high percentage of Black customers, and derogatory remarks by an employee); *cf. M & T Mortg.*, 736 F. Supp. 2d at 576 (evidence that defendants advertised in Black neighborhoods and employed Black agents could support conclusion that defendants discriminated on prohibited basis); *Hargraves*, 140 F. Supp. 2d at 21-22 (evidence that defendants solicited brokers who operated predominately in the Black community, distributed flyers and advertisements in Black communities, placed offices in Black communities, and made a greater percentage of loans in majority Black census tracts than other subprime lenders could support conclusion that defendants discriminated on a prohibited basis).

On the second point, a plaintiff need not necessarily establish the four elements that Defendants cite even when it comes time to prove that discrimination, in fact, occurred. That is

because "the *McDonnell Douglas* framework does not apply in every" discrimination case. *Swierkiewicz*, 534 U.S. at 511. Rather, a plaintiff can prove discrimination by using "direct evidence"; presenting "a convincing mosaic of circumstantial evidence"; or establishing "a prima facie case" of discrimination under a burden-shifting framework. *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022) (analyzing a § 1981 claim); *see also Glenn v. Vilsack*, No. 4:21-CV-137-AW-MAF, 2022 WL 3012744, at *4 (N.D. Fla. June 29, 2022) (applying same framework to ECOA). In other words, "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff" to prove a claim for discrimination. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

Further, even within the prima facie framework, the elements that Defendants identify are not necessarily prerequisites. As the Supreme Court has made clear, "the precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic." *Swierkiewicz*, 534 U.S. at 512 (cleaned up). Consistent with that teaching, when evaluating discriminatory targeting claims, some courts have applied the standard established in *Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7, 20 (D.D.C. 2000), which provides that plaintiffs may prove discriminatory targeting by showing that defendants engaged in unfair or predatory lending practices, and either intentionally targeted or caused a disparate impact on the basis of race. *See, e.g.*, *Steed v. EverHome Mortg. Co.*, 308 F. App'x. 364, 368 (11th Cir. 2009); *Cooper*, 2014 WL 2889993, at *3; *Carroll*, 2022 WL 17252556, at *9. Indeed, these two elements—(1) unfair or predatory lending and (2) targeting or disparate impact—are at the heart of every court's analysis of discriminatory targeting claims.[3]

---

[3] Some courts have grafted the two *Hargraves* factors onto the other prima facie factors that are used in discriminatory denial cases. *E.g.*, *Matthews*, 185 F. Supp. 2d at 886; *Munoz*, 2004 WL 3086907, at *4; *Davenport*, 725 F. Supp. 2d at 876; *M & T Mortg.*, 736 F. Supp. 2d at 575. This

5

In sum, at this stage, a plaintiff need allege only sufficient facts to state a claim under *Twombly/Iqbal*, which Plaintiffs here have done. The prima facie case that Defendants identify is one way, but not the only way, for a plaintiff to later prove that a defendant in fact discriminated.

### b. ECOA prohibits discrimination with respect to "any aspect of a credit transaction," which encompasses more than just loan terms.

Next, Defendants argue that "Plaintiffs fail to identify any aspect of a credit transaction that is allegedly discriminatory based on race or any specific loan term they allege was unfair or predatory." MTD at 33. That is mistaken because Plaintiffs do identify specific loan terms that they allege were unfair or predatory—namely, the terms of the private retail installment contracts that "require immediate payment while students are in school, do not offer income-sensitive repayment options, and have a risky acceleration clause that makes the entire balance due upon a single missed payment." First Am. Compl. ¶¶ 162-64. In any event, even where loan terms are not themselves unfair or predatory, a plaintiff may still proceed with a discriminatory targeting claim because, contrary to Defendants' suggestion otherwise, ECOA covers every aspect of a credit transaction, not just the loan terms in the four corners of the contract.

To state a claim under ECOA, a plaintiff must allege that a defendant engaged in discrimination "with respect to *any aspect of* a credit transaction." 15 U.S.C. § 1691(a) (emphasis added). The word "'any' means all," *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1194 (11th Cir. 2019), and ECOA therefore applies to all aspects of a credit transaction.

---

approach raises analytical difficulties, however, given the differences between discriminatory denial claims and targeting claims. For instance, while this framework requires proof that a plaintiff is "qualified" for credit, discriminatory targeting cases often involve allegations that defendants steered borrowers into loans regardless of whether they were qualified. *See Davenport*, 725 F. Supp. 2d at 876 n.3. While Defendants here do not dispute that Plaintiffs were "qualified" for the loans, this tension underscores the importance of ensuring that "the elements of a prima facie case are flexible and should be tailored, on a case-by-case basis, to differing factual circumstances." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1123 (11th Cir. 1993).

6

Similarly, the word "aspect" means that the challenged conduct "need not *itself* be a credit transaction so long as it is an '*aspect* of a credit transaction.'" *FirstMerit Bank, N.A. v. Ferrari*, 71 F. Supp. 3d 751, 758 (N.D. Ill. 2014) (emphasis in original).

In line with the statutory text, Regulation B, which implements ECOA, prohibits discrimination "regarding any aspect of a credit transaction," 12 C.F.R. § 1002.4(a), and defines a "credit transaction" as "*every aspect* of an applicant's dealings with a creditor regarding an application for credit or an existing extension of credit (including, but not limited to, information requirements; investigation procedures; standards of creditworthiness; terms of credit; furnishing of credit information; revocation, alteration, or termination of credit; and collection procedures)," *id.* § 1002.2(m) (emphasis added). And the Official Interpretation of Regulation B further explains that the prohibition on discrimination regarding any aspect of a credit transaction "covers *all dealings*, without exception, between an applicant and a creditor." 12 C.F.R. pt. 1002, Supp. I (emphasis added). Thus, the text of ECOA and Regulation B makes clear that "any aspect of a credit transaction" includes, but is not limited to, the terms of credit.

Given this plain language, courts have held that ECOA covers "more than one aspect of the transaction." *Hargraves*, 140 F. Supp. 2d at 23; *accord Carroll*, 2022 WL 17252556, at *10. Courts have found, for example, that aspects of credit transactions include not just the credit terms in the four corners of the contract—such as interest rates or repayment terms—but also sale prices or down payments; determinations of borrowers' ability to repay; rates of default, repossession, or foreclosure; and the delivery of services in connection with offering credit. *See, e.g.*, *Munoz*, 2004 WL 3086907, at *6 (allowing ECOA claim to proceed based on allegations that defendants "baited and switched" them into loans with higher principal loan amounts and interest rates than they wanted or could repay, made little or no effort to verify their ability to

7

repay, and issued predatory loans that were designed to fail and inevitably triggered foreclosure proceedings); *Hargraves*, 140 F. Supp. 2d at 20, 23 (allowing ECOA claim to proceed based on allegations that defendants charged exorbitant interest rates, issued loans that were designed to fail, engaged in "equity-stripping," made foreclosures, and charged excessive fees).

Notwithstanding the plain language of ECOA and the case law interpreting it, Defendants offer the cramped view that ECOA covers discrimination with respect to only the loan terms themselves. MTD at 33. That view is erroneous. In support of their position, Defendants cite a single case, *Brook v. Sistema Universitario Ana G. Mendez, Inc.*, No. 17-CV-171, 2017 WL 1743500 (M.D. Fla. May 4, 2017). In that case, the plaintiff, proceeding pro se, alleged that the defendants targeted a sham education program to low-income Latinos, misrepresented the quality of its program, and induced her to take out significant debt to pay tuition for a worthless degree. *Id.* at *3. The court held that the plaintiff failed to state a claim under ECOA because she did not "explicitly describe … any aspects of the credit transaction (as opposed to [the school's] fraudulent enrollment tactics) that she believes were discriminatory," and likely could not show that her "loan terms" (for federal loans) "were unfair." *Id.* In short, the court simply held that the plaintiff had failed to connect the discrimination to an aspect of a credit transaction (whether that aspect be the loan terms themselves or any other aspect). To the extent Defendants suggest that case means ECOA applies only where "loan terms" are themselves unfair, they are mistaken.

On that point, *Carroll v. Walden* is instructive. There, the plaintiffs alleged that the defendants deliberately concealed the true cost of a professional doctoral program by understating the number of credits required to complete the program—"i.e., that the program could be completed within X number of months for approximately X dollars"—when in fact the program took longer and forced plaintiffs to incur "additional and unanticipated loan debt in

8

order to get to the program finish line." *Carroll*, 2022 WL 17252556, at *9, 21. In ruling on a motion to dismiss, the court rejected defendants' argument that plaintiffs' ECOA claim failed since they did not allege that their federal student loan terms were predatory. Instead, relying on the text and purpose of ECOA, the court held that "ECOA violations are not necessarily restricted to consideration of the four corners of the paper bearing a student borrower's signature." *Id.* at *10. Thus, the court looked to the plaintiffs' broad allegations of "unfair and predatory actions" by the defendants, which included "a consistent and longstanding pattern of fraudulent misrepresentations regarding the requirements of the DBA degree—including the required credits, the length of time required for completion, and, most consequentially, the cost of the degree—for the purposes of enticing students to enroll in the DBA degree program." *Id.* Based on these allegations, the court ruled that plaintiffs had adequately alleged that defendants discriminated with respect to an "aspect of a credit transaction." *Id.* at *11.

Here, Plaintiffs similarly allege that HCI misrepresented program requirements—and consequentially, the length, and therefore the cost of the program—to convince students to take out credit to pay tuition for the nursing program. Specifically, Plaintiffs allege that HCI directly extended credit through private loans and arranged for credit through federal student loans. First Am. Compl. ¶ 513. Plaintiffs allege that Defendants steered students into retail installment contracts, even when other, more favorable financing options existed, and often extended these loans on the very same or following day that Plaintiffs signed enrollment agreements with the school. *Id.* ¶¶ 162–64, 255, 262, 309. Further, Plaintiffs allege that HCI represented to students that its program would last 5 semesters and cost $10,000 per semester. *Id.* ¶¶ 116-17. But while students were enrolled, Plaintiffs aver, HCI imposed new grading policies and graduation requirements, which coerced students into repeating semesters they had already taken, which in

9

turn increased the amount of time and money it took for them to complete their program. *Id.* ¶¶ 203, 235, 250. In short, HCI engaged in a bait and switch—enticing Plaintiffs to enter into credit transactions for federal and private loans based on false representations about the amount of credit needed—which resulted in considerable financial harm. And those who were unable to meet these new requirements or pay for additional courses were dismissed from the program, saddled with debt, unable to transfer their credits, barred from campus, and denied transcripts for outstanding loan balances. *Id.* ¶¶ 165-69, 291, 345-46, 439-41.

In sum, Plaintiffs allege discrimination with respect to multiple aspects of a credit transaction—including the contract terms (such as repayment terms), the cost of the product and the amount of credit needed to pay for it, the likely ability of students to repay the credit, the consequences of nonpayment, and the performance of goods and services obtained with credit—any one of which is a sufficient "aspect of a credit transaction" under ECOA. Consistent with the text of ECOA and other courts' application of the statute, *e.g.*, *Hargraves*, 140 F. Supp. 2d at 20, 23; *Carroll*, 2022 WL 17252556, at *9, 21; *Munoz*, 2004 WL 3086907, at *6, Plaintiffs have identified "any aspect of a credit transaction" with respect to which HCI discriminatorily targeted them and have accordingly stated a claim under ECOA.

### III.    Conclusion

To the extent the court reaches these legal issues, it should hold that: (1) to state a claim under ECOA, a plaintiff need not allege the elements of a prima facie case, which is an evidentiary standard and not a pleading requirement, and instead need allege only enough facts to suggest that defendants discriminated on a prohibited basis with respect to any aspect of a credit transaction; and (2) ECOA's prohibition on discrimination "with respect to any aspect of a credit transaction" extends to discrimination beyond the four corners of the loan contract.

April 14, 2023                                          Respectfully submitted,

                                             Seth Frotman
                                                *General Counsel*
                                            Steven Y. Bressler
                                                *Deputy General Counsel*
                                            Kristin Bateman
                                                *Assistant General Counsel*

                                            <u>/s/ Lauren Gorodetsky</u>
                                            Lauren Gorodetsky
                                                *Counsel*
                                            Consumer Financial Protection Bureau
                                            1700 G Street, NW
                                            Washington, D.C. 20552
                                            (202) 435-7560
                                            lauren.gorodetsky@cfpb.gov
                                            Special Florida Bar No. A5503047