UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-81883-Ruiz/McCabe

BRITTANY ROBERSON, et al.,

    Plaintiffs,

v.

HEALTH CAREER INSTITUTE LLC, et al.,

    Defendants.
_____/

**REPORT & RECOMMENDATION
ON PARTIAL MOTION TO DISMISS**

THIS CAUSE came before the Court on Defendants' Partial Motion to Dismiss and Strike Second Amended Complaint ("Motion") (DE 99), which was referred to the undersigned by United States District Judge Rodolfo A. Ruiz, II (DE 135).  For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **DENIED.**

**I.     Background**

This is a putative class action against a for-profit nursing school alleging, among other claims, violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq*.  Plaintiffs seek to represent a class comprised of students who attended the school, subject to certain parameters, from September 1, 2019 to the present (DE 93 ¶ 474).  In February 2023, Plaintiffs filed a First Amended Complaint ("FAC") (DE 40), which Defendants moved to dismiss (DE 55), resulting in a detailed order from the District Court, dismissing portions of the FAC (DE 84).

On September 1, 2023, Plaintiffs filed a Second Amended Complaint ("SAC") (DE 93), attempting to cure the deficiencies identified by the District Court's previous order.  The SAC

alleges the following counts against the various Defendants, Health Career Institute LLC ("HCI"), its parent company, Florian Education Investors LLC ("Florian"), and the chief executive of both organizations, Steven W. Hart:

| | | |
|---|---|---|
| Count 1 | | FDUTPA Violation based on Grading and Advancement against all Defendants |
| Count 2 | | FDUTPA Violation based on Misrepresentation of Educational Services Provided against all Defendants |
| Count 3 | | FDUTPA Violation based on Unauthorized Retail Installment Contracts against all Defendants |
| Count 4 | | Breach of Contract based on Grading and Advancement against HCI and Florian |
| Count 5 | | Breach of Contract based on Clinical Placement against HCI and Florian |
| Count 6 | | FDUTPA Violation based on "New" Program against all Defendants |
| Count 7 | | FDUTPA Violation based on Withholding Advancement and Transcripts from Students for Defendants' Financial Gain against all Defendants |
| Count 8 | | FDUTPA Violation based on VATI Course against all Defendants |
| Count 9 | | Equal Credit Opportunity Act Violation against HCI |
| Count 10 | | Title VI of the Civil Rights Act of 1964 Violation against HCI |

(DE 93).

This Motion followed, seeking dismissal of all or portions of the FDUTPA claims alleged in Counts 1, 2, 3, 6, 7, and 8, pursuant to Fed. R. Civ. P. 12(b)(6).

## II.   Legal Standard

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Although Rule 8(a)(2) requires only

"a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. Discussion

Defendants urge dismissal of all or portions of the FDUTPA claims alleged in Counts 1, 2, 3, 6, 7, and 8 on multiple grounds, each of which the Court will address in turn.

#### A. Individual FDUTPA Liability for Defendants Hart and Florian

Defendants first argue that the SAC fails to allege sufficient facts to state viable claims of individual FDUTPA liability against Defendants Hart and Florian in Counts 1, 2, 3, 6, 7, and 8 (DE 99 at 4-8).[1] "It has long been the law in Florida that in order to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper dealings." *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1074 (Fla. 5th DCA 2008) (cleaned up); *see also Aboujaoude v. Poinciana Development Co. II*, 509 F.Supp.2d 1266, 1277-78 (S.D. Fla. 2007) ("In order to proceed against an individual for a violation of FDUTPA, a plaintiff must allege that the individual was a 'direct participant' in the dealings.") (cleaned up).

---

[1] The Court notes that Florian is a company, not an individual person. In briefing this matter, the parties attached no significance to this distinction (DE 99 at 4-8, DE 122 at 5-9). Accordingly, the Court will do likewise.

3

Borrowing from the analogous model of the Federal Trade Commission Act ("FTCA"), numerous federal district courts have recognized that FDUTPA's concept of direct participation includes an individual defendant's ability to control the violative conduct, coupled with knowledge of that conduct. In *Fed. Trade Comm'n v. Student Aid Ctr., Inc.*, 281 F. Supp. 3d 1324, 1336 (S.D. Fla. 2016), for example, the court denied an individual defendant's motion to dismiss and, in doing so, described the FTCA and FDUTPA standards for individual liability as one in the same, reasoning as follows:

> To be individually liable for FTC[A] and FDUTPA violations, the [plaintiff] must show that the individual (1) participated directly in the deceptive acts or practices; or (2) possessed the authority to control them; and (3) had some knowledge of the practices.

(citing *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996) (affirming finding of individual FTCA liability where individual defendant had direct control over the corporation's activities and knowledge of the illegal practices)).

Other courts have agreed with this approach, applying the FTCA standard for individual liability to FDUTPA claims. *See Gov. Empl. Ins. Co. v. Glassco Inc.*, No. 8:19-CV-1950-KKM-JSS, 2021 WL 4391717, at *12 (M.D. Fla. Sept. 24, 2021) (denying summary judgment on FDUTPA claim based on genuine issues of material fact concerning individual defendant's level of control over the entity's violative conduct); *see also Bluegreen Vacations Unlimited, Inc. v. Timeshare Termination Team, LLC*, No. 20-CV-25318, 2023 WL 4105529, at *8 (S.D. Fla. June 21, 2023) (treating FDUTPA and FTCA standards for individual liability as one in the same); *Wyndham Vacation Ownership, Inc. v. Salkin*, No. 6:19-CV-817-PGB-EJK, 2023 WL 4350566, at *5 (M.D. Fla. Apr. 25, 2023), *R. & R. adopted*, 2023 WL 4350441 (M.D. Fla. May 15, 2023)

4

(same); *McNider Marine, LLC v. Cain & Daniels, Inc.*, No. 8:17-2561, 2018 WL 5293013, at *1 n.2 (M.D. Fla. Oct. 25, 2018) (same).

Applying these cases here, the Court finds the SAC alleges sufficient facts to demonstrate individual FDUTPA liability against Defendants Hart and Florian based on a theory of ability to control, coupled with knowledge of, the violative conduct. To begin, the SAC alleges that Defendants Hart and Florian "had the authority to control, and did control" the violative conduct alleged in Counts 1, 2, 3, 6, 7, and 8 (DE 93 ¶¶ 494, 500, 505, 533, 540, 545). The SAC likewise alleges that Defendants Hart and Florian had knowledge of the violative conduct alleged in Counts 1, 2, 3, 6, 7, and 8 through Defendant Hart's participation in Executive Committee meetings and dealings with HCI administrators (DE 93 ¶¶ 494, 500, 505, 533, 540, 545).

The Court finds these allegations plausible based on other facts alleged in the SAC, including the following:

- Florian is the sole managing member of HCI, and Florian has no employees other than Hart, who serves as Florian's CEO (DE 93 ¶¶ 52–53, 98).

- Florian, as the sole managing member of HCI, also appointed Hart to serve as CEO of HCI "to carry out the business of [HCI]" (DE 93-3 at 5).

- HCI's Operating Agreement provides that the CEO (Hart) "shall, subject to the direction of [Florian], have general supervision and control of [HCI's] business" (DE 93 ¶ 102).

- HCI's Operating Agreement also provides that "[t]he powers of [HCI] shall be exercised by or under the authority of, and the business affairs of [HCI] shall be managed under the direction of [Florian]" (DE 93-3 at 5).

- In his role as Chairman of HCI, Hart directed HCI's President and CEO, and Hart sat "on HCI's Executive Committee with the company's CEO and CFO" (DE 93 ¶ 56).

- By participating in HCI's Executive Committee meetings, Hart became aware of HCI's activities (DE 93 ¶¶ 494, 500, 505, 533, 540, 545).

5

- Hart and Florian also exercised control over HCI through "Authorization Guidelines," which governed a number of HCI's operations including "procedures for budgeting and forecasting; … student tuition financing, including specific policies governing the retail installment contracts serviced by Tuition Options; and minimum entry requirements for incoming students" (DE 93 ¶ 103).

- The Authorization Guidelines specified that any exceptions to, or clarifications of, the Authorization Guidelines could only be obtained from "the Chairman," i.e., Hart (DE 93 ¶ 103).

- Hart did not have a Florian email account and instead, "nearly all electronic communication" he sent and received pertaining to [Florian] came through his HCI email address (DE 93 ¶ 104).

- Hart was "kept apprised of many day-to-day issues regarding HCI, including student complaints, and [he] regularly consult[ed] with the President and CEO about issues and decisions related to HCI's operations" (DE 93 ¶ 105).

The Court finds these allegations, taken as a whole, sufficient to survive a motion to dismiss. Specifically, the Court finds these allegations sufficient to state a plausible claim that Defendants Hart and Florian had the ability to control, and knowledge of, the FDUTPA violations alleged in Counts 1, 2, 3, 6, 7, and 8. *See Fed. Trade Comm'n v. Life Mgmt. Servs. of Orange Cnty., LLC*, 350 F. Supp. 3d 1246, 1260 (M.D. Fla. 2018) ("Authority to control [a] company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer.") (cleaned up); *Fed. Trade Comm'n v. Transnet Wireless Corp.*, 506 F.Supp.2d 1247, 1270 (S.D. Fla. 2007) (noting that "[a]n individual's status as a corporate officer gives rise to a presumption of ability to control a small, closely-held corporation") (cleaned up).

The Court has considered, but finds unpersuasive, Defendants' argument that FDUTPA's concept of "direct participation" does not allow for liability based on an individual defendant's mere ability to control, coupled with knowledge of, the violative conduct (DE 132 at 2-5). The

Court rejects Defendants' arguments based on the weight of authority cited above, allowing for individual FDUTPA liability on that basis.

To be sure, Defendants have pointed to many shortcomings in the level of detail in the SAC, such as specific actions taken by Hart or Florian showing participation in, or ability to control, the alleged violations (DE 99 at 5-6). But a plaintiff need not prove his or her case at the motion-to-dismiss stage; instead, a plaintiff need only state a plausible claim for relief. The Court finds Plaintiffs have done so here. This holding does not preclude a different result at summary judgment with the benefit of a full factual record.

### B. FDUTPA Liability for Retail Installment Contracts (Counts 3 & 7)

Defendants next seek dismissal of Counts 3 and 7, both of which allege FDUTPA violations based upon HCI's use of retail installment contracts. Specifically, Count 3 alleges Defendants engaged in a deceptive and unfair practices by offering retail installment contracts, and thereafter collecting payments on them, without first obtaining the necessary license allegedly required under Florida law (DE 93 ¶¶ 503-09). Count 7 alleges Defendants engaged in a deceptive and unfair practice by withholding student transcripts and program advancement until such time as students made payments on the allegedly illegal retail installment contracts (DE 93 ¶¶ 536-42).

Defendants urge dismissal of these counts on multiple grounds, each of which the Court will address in turn.

#### 1. "Retail Seller" Under Florida's Retail Installment Sales Act

Defendants first argue that Counts 3 and 7 must be dismissed because HCI did not qualify as a "retail seller" under Florida's Retail Installment Sales Act ("RISA"), Fla. Stat. § 520.30, *et. seq.* Specifically, RISA imposes a state licensing requirement, subject to certain exemptions not relevant here, on "retail sellers" who engage in "retail installment transactions." Fla. Stat. §

7

520.32(1).  The statute defines "retail seller," in relevant part, as "a person regularly engaged in, and whose business consists to a substantial extent of, selling *goods* to a retail buyer."  Fla. Stat. § 520.31(16) (emphasis added).  Defendants argue that HCI did not sell "goods" within the meaning of RISA and, therefore, HCI did not meet the definition of "retail seller" (DE 99 at 10-12).  As such, HCI had no obligation to become licensed, thereby undermining the legal premise of Counts 3 and 7, namely, that HCI entered into "illegal" retail installment contracts (DE 99 at 10-12).

The Court cannot determine, on a motion to dismiss, the extent to which HCI's business included the sale of "goods" within the meaning of RISA.[2]  This inquiry would require consideration of evidence outside the four corners of SAC, including but not limited to, the specific items regularly conveyed from HCI to its students and whether these items included books, laboratory equipment, or the like.  The SAC does not include these factual details, nor in the Court's view was it required to do so, as the heightened pleading standards of Fed. R. Civ. P. 9(b) do not apply to FDUTPA claims.  *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1228 (S.D. Fla. 2021).  To the extent Defendants seek to prove the RISA licensing requirements did not apply to HCI, they must do so at summary judgment or a later stage of the case with the benefit of a full factual record as to the nature of items regularly conveyed from HCI to its students.[3]  In the meantime, the Motion should be denied on this ground.

---

[2] Under RISA, the term "goods" means "all personalty when purchased primarily for personal, family, or household use, including certificates or coupons issued by a retail seller exchangeable for personalty or services, but not including other choses in action, personalty sold for commercial or industrial use, money, motor vehicles or construction, mining, or quarrying equipment.  The term "goods" includes such personalty which is furnished or used, at the time of sale or subsequently, in the modernization, rehabilitation, repair, alteration, improvement, or construction of real property as to become a part thereof, whether or not severable therefrom."  Fla. Stat. § 520.31(7).

[3] Plaintiffs have included in their response to this Motion an excerpt from a sample Retail Installment Contract obtained from HCI's website, which states "This Contract is for educational

## 2. Actual Damages

Defendants next argue Counts 3 and 7 fail to state a claim for "actual" damages, a mandatory requirement for FDUTPA claims. *See Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819, 824–25 (Fla. 4th DCA 2010) (noting that "[p]roof of actual damages is necessary to sustain a FDUTPA claim" and that "[t]he statute does not allow the recovery of other damages, such as consequential damages"). Defendants raised this argument in their first motion to dismiss, but the District Court rejected it, finding that Plaintiffs stated a viable claim for actual damages in the form of retail installment contract payments they would not have otherwise made, due to the alleged illegality of the contracts (DE 84 at 26). The Court reasoned:

> Defendants argue that Count 3 should fail because it does not allege actual damages caused by the statutory violations. Mot. at 28. But Plaintiffs allege that they "would not have entered into or paid amounts toward unenforceable, illegal contracts" had they known HCI was unlicensed to offer the retail installment contracts. *See* FAC ¶ 472. Accordingly, Plaintiffs allege damages "equal [to] the amounts they paid pursuant to the illegal contracts, any amounts they purportedly owe on such contracts, and any associated fees." *Id.* ¶ 474. Whether Plaintiffs can prove that they are entitled to those damages is yet to be determined. But the fact that they allegedly would not have entered into the retail installment contracts but for HCI's deceptive conduct and could have pursued "more favorable financing options" shows that they suffered a financial loss cognizable as actual damages. *See id*. ¶ 162.

(DE 84 at 26-27).

Defendants renew the argument here, this time incorporating their "retail seller" argument under RISA. That is, Defendants argue (1) HCI did not meet RISA's definition of "retail seller,"

---

*goods* and services provided to you by SCHOOL" (DE 122 at 11) (emphasis added). The Court has not considered this document in connection with this Motion as Defendants have not stipulated to its authenticity. *See SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (noting that, on a motion to dismiss, courts should consider documents outside the pleadings only when the document is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged).

and therefore (2) HCI had no obligation to become licensed under RISA, and therefore (3) HCI's retail installment contracts were not "illegal" as alleged in the SAC, and therefore (4) Plaintiffs cannot claim actual damages in the form of retail installment contract payments they would not have otherwise made due to the illegality of the contracts (DE 99 at 12-13).

The Court rejects this argument for the same reason set forth in section III.B.1 above, namely, the Court cannot determine, on a motion to dismiss, whether HCI met the definition of "retailer seller." Since Defendants' argument regarding actual damages hinges upon resolution of the "retail seller" issue, the Court declines to dismiss Counts 3 or 7 at this time based on this argument.

The Court has also considered, but finds unpersuasive, Defendants' argument that Counts 3 and 7 overlap one another, such that one of the two counts should be dismissed as duplicative (DE 99 at 13). The Court has reviewed both counts and finds they allege distinct theories of liability. Count 3 alleges Defendants committed an unfair and deceptive practice by entering into retail installment contracts, and thereafter collecting payments on them, without first obtaining the license allegedly required under Florida law (DE 93 ¶¶ 503-09). Count 7 alleges Defendants committed an unfair and deceptive practice by refusing to allow students to progress through the academic program or obtain academic transcripts until they paid balances owed on the allegedly illegal retail installment contracts (DE 93 ¶¶ 536-542). While damages may overlap between the two counts, the Court finds the underlying legal theories sufficiently different to justify pleading in separate counts. As such, the Motion should be denied on this ground.

### 3.  Successive Motion Under Fed. R. Civ. P. 12(g)(2)

In addition, the Court finds Defendants' "retail seller" argument to be barred by the prohibition against successive motions set forth in Fed. R. Civ. P. 12(g)(2), which provides that a

party who "makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  In this case, the FAC previously alleged that HCI's retail installment contracts were illegal and unenforceable due to HCI's failure to obtain the mandatory license allegedly required by Florida law (DE 40 ¶¶ 26, 141-42, 152, 455, 470-71).  Based on these allegations, the Court finds the "retail seller" argument raised in the current Motion was "available" to Defendants, within the meaning of Fed. R. Civ. P. 12(g)(2), at the time of the previous motion to dismiss, thereby precluding the argument here.

The Court has considered, but finds unpersuasive, Defendants' argument that the SAC added new factual allegations, thus making Fed. R. Civ. P. 12(g)(2) inapplicable.  *See, e.g.*, *In re Adler, Coleman Clearing Corp*, No. 06-80157-CIV, 2008 WL 11411962, at *4 (S.D. Fla. Aug. 13, 2008) (noting that a party may file a new motion to dismiss when "the revised pleading contain[s] new information or different allegations making it subject to a defense or objection that was not previously apparent to the movant.") (cleaned up).  Defendants correctly point out that Count 7 of the SAC added the adjectives "illegal" and "unenforceable" to describe the retail installment contracts in three sentences of the revised pleading (*compare* DE 93 ¶¶ 538-39, *with* DE 40 ¶¶ 495-500).  In the Court's view, however, this argument overlooks the fact that the FAC previously referred to the same retail installment contract as "illegal" and "unenforceable" in Count 3, and the FAC also repeatedly alleged, in the main body of the pleading, that HCI had failed to obtain the necessary license allegedly required by Florida law to offer retail installment contracts (DE 40 ¶¶ 26, 141-42, 152, 455, 470-71).  For all of these reasons, the Court finds the "retail seller" argument to be barred.

### C.      FDUTPA Liability for the Capstone and VATI Courses

Finally, Defendants seek dismissal of Count 8, which alleges a FDUTPA violation based on the Capstone and VATI courses (DE 93 ¶¶ 543-48). Specifically, the SAC alleges Defendants committed an unfair and deceptive practice by charging Plaintiffs over $4,000 for a required program known as the "Capstone" course, when in reality, the course consisted almost exclusively of an at-home, online virtual course known as "Virtual-ATI" or "VATI," offered by a third-party company and available for sale to the general public for only $525 (DE 93 ¶ 544). The SAC alleges damages measured by the difference between the cost of the Capstone course and the cost of the publicly available VATI course (DE 93 ¶ 548).

Count 8 of the previous FAC alleged a common law claim of unjust enrichment based on the same basic facts now alleged in Count 8 of the SAC (*compare* DE 93 ¶¶ 543-48, *with* DE 40 ¶¶ 501-06). The District Court dismissed the previous version of Count 8 for failure to state a claim of unjust enrichment, but noted that "[i]t may be true that Defendants' allegedly deficient Nursing Capstone course could … consist of an unfair and deceptive business practice" (DE 84 at 20). Plaintiffs have now re-formulated their unjust enrichment claim into a FDUTPA claim.

Defendants urge dismissal of the new count on multiple grounds, each of which the Court will address in turn.

### 1.      Improper Amendment

Defendants first argue Plaintiffs lacked permission to refile Count 8 (DE 99 at 14-16). They correctly point out that the District Court's previous order of dismissal specified a dismissal "with leave to amend" for Counts 1, 2, 3, 6 and 7 (DE 84 at 36-37). As to Count 8, however, the District Court's order remained silent as to leave to amend, which silence Defendants interpret as

12

a dismissal with prejudice. Moreover, as Defendants correctly point out, the deadline to amend pleadings under the District Court's scheduling order expired on March 17, 2023 (DE 35).

Given that the District Court's previous order did not specify a dismissal with prejudice, and that Fed. R. Civ. P. 15 favors the liberal amendment of pleadings, the Court recommends that Count 8 be allowed to stand. To the extent necessary, the Court finds good cause for an amendment, as the District Court previously observed that "Defendants' allegedly deficient Nursing Capstone Course could … consist of an unfair and deceptive business practice" (DE 84 at 20). Also, the Court finds little prejudice to Defendants given that Plaintiffs have not amended the underlying factual allegations of Count 8 and have merely changed the legal theory on which the count attempts to proceed. Should Defendants wish to seek clarification of the District Court's previous order regarding the dismissal of Count 8, Defendants can do so by way of objections to this Report and Recommendation.

### 2. Failure to State a Claim

Defendants next argue Count 8 fails to state a FDUTPA claim as a matter of law (DE 99 at 16-18). "A consumer claim for damages under FDUTPA has three elements: (1) an objectively deceptive act or unfair practice; (2) causation; and (3) actual damages." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1226 (S.D. Fla. 2021) (cleaned up). The Florida Supreme Court has noted that "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Property Management, Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (cleaned up). A deceptive act or practice includes situations where a seller misrepresents the items delivered to, or the charges collected from, a consumer. *See Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. 3d DCA 2000) (finding viable FDUTPA claim where cruise line charged customers for

"port charges," but in reality, paid only a portion to the port and pocketed the rest); *Zamber v. American Airlines, Inc.*, 282 F. Supp. 3d 1298-1301 (S.D. Fla. 2017) (finding viable FDUTPA claim where airline collected money for travel insurance, allegedly to be paid to a third-party insurance provider, when in reality, the third party paid a portion back to the airline as a kickback).

In this case, the SAC alleges Defendants committed an unfair and deceptive practice by requiring students to enroll in the Capstone course, and charging them over $4,000 for it, when in reality, the course consisted "almost entirely" of, or "little more" than, the online VATI course, administered by a third party and available to the general public for only $525 (DE 93 ¶¶ 27, 309, 364, 544). The SAC requests damages measured by the difference between the cost of the Capstone course and the cost of the VATI course the public marketplace (DE 93 ¶ 548).

The Court finds these allegations, taken as whole, sufficient to allege an objectively deceptive act or unfair practice for purposes of a FDUTPA claim. A reasonable consumer would assume that a "Capstone" course, required by a nursing school in order to graduate from the program and sit for the final state licensing exams, and costing over $4,000, would consist of something materially different than an online course administered by a third party, which the consumer could have purchased from the third party in the public marketplace for only $525.

The Court has considered, the finds unpersuasive, Defendants' argument that Count 8 alleges a mere breach of contract, not cognizable as a FDUTPA claim. "Florida law permits a FDUTPA claim to travel with a related breach of contract claim if the FDUTPA claim challenges the acts underlying or giving rise to the breach, and does not rely solely on a violation of the Agreement as a basis for assertion of a FDUTPA claim." *Kenneth F. Hackett & Assocs., Inc. v. GE Cap. Info. Tech. Sols., Inc.*, 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010) (cleaned up). In the Court's view, Count 8 does not rely on HCI's alleged breach of a contractual promise to deliver

14

the Capstone course to its students. Instead, Count 8 relies on HCI's allegedly deceptive and unfair conduct of delivering an inferior product that students could have purchased in the public marketplace for only 1/8 of the price charged by HCI.

To the extent Defendants challenge causation and damages, the Court finds the SAC adequately pleads these elements. As to causation, the SAC alleges that Defendants' unfair and deceptive practices caused them to purchase the Capstone course (DE 93 ¶ 548). As to damages, the SAC alleges damages measured by the difference between the cost of the Capstone course and the cost of the VATI course the public marketplace (DE 93 ¶ 548). The Court finds these allegations sufficient.

## IV.   Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion (DE 99) be **DENIED.**

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Rodolfo A. Ruiz, II. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 12th day of December 2023.

_____
RYON M. MCCABE
U.S. MAGISTRATE JUDGE