# Exhibit A

| | |
|---|---|
| **From:** | Michael J. Carney |
| **To:** | Rebecca Eisenbrey |
| **Cc:** | Barbara Fox; Lily Wong; Victoria Roytenberg; Jennifer Thelusma; Clay Losier; Eileen Connor |
| **Subject:** | Re: Roberson v. HCI - Plaintiffs" 2d Set of RFPs to FEI and 3d Set of RFPs to HCI |
| **Date:** | Friday, November 17, 2023 3:34:07 PM |

Of course. Ty, Rebecca

Sent from my so-called "smartphone" so please excuse any obvious spellcheck errors.

> On Nov 17, 2023, at 3:26 PM, Rebecca Eisenbrey <REisenbrey@ppsl.org> wrote:

> Wednesday is fine for FEI. We can agree to a final cutoff date of November 30 for HCI, but please make a rolling production if possible and provide whatever you can before then.

> Plaintiffs' responses to the most recent set of RFPs are currently due the day after Thanksgiving. In light of the holiday, could we extend that deadline one week, to December 1?

> **From:** Michael J. Carney <mjc@kubickidraper.com>
> **Sent:** Friday, November 17, 2023 2:53 PM
> **To:** Rebecca Eisenbrey <REisenbrey@ppsl.org>
> **Cc:** Barbara Fox <bf@kubickidraper.com>; Lily Wong <lw@kubickidraper.com>; Victoria Roytenberg <VRoytenberg@ppsl.org>; Jennifer Thelusma <Jthelusma@ppsl.org>; Clay Losier <nicole@mayerlawflorida.com>; Eileen Connor <econnor@ppsl.org>
> **Subject:** Re: Roberson v. HCI - Plaintiffs' 2d Set of RFPs to FEI and 3d Set of RFPs to HCI

> Rebecca:

> WE can get FEI done for sure next week, Wednesday,
> But given the holidays we need probably until Nov f30th for HCI to be safe, does that work ?

> Ty

> Mike

> Sent from my so-called "smartphone" so please excuse any obvious spellcheck errors.

On Nov 17, 2023, at 2:31 PM, Rebecca Eisenbrey <REisenbrey@ppsl.org> wrote:

Hi Mike,

We got the document this morning and accessed it without any trouble—thanks. For the extension, how much time do you need?

Becca

---

**From:** Michael J. Carney <mjc@kubickidraper.com>
**Sent:** Friday, November 17, 2023 2:22 PM
**To:** Rebecca Eisenbrey <REisenbrey@ppsl.org>
**Cc:** Barbara Fox <bf@kubickidraper.com>; Lily Wong <lw@kubickidraper.com>; Caroline A. Sand <cas@kubickidraper.com>; Victoria Roytenberg <VRoytenberg@ppsl.org>; Jennifer Thelusma <Jthelusma@ppsl.org>; Clay Losier <nicole@mayerlawflorida.com>; Eileen Connor <econnor@ppsl.org>
**Subject:** Re: Roberson v. HCI - Plaintiffs' 2d Set of RFPs to FEI and 3d Set of RFPs to HCI

Rebecca

First did you get the native format doc (Exh H). I believe it was sent this AM.

Second, i need to request a bit of an extension on the latest RFP. I know we had the shortened response timeframe, and that was in fact my idea, but we've been slammed the last couple weeks. Barbara was in trial this week and we lost our partner, Caroline, who left to work elsewhere, and she had done a great deal of the discovery legwork in this case.

Let me know if ok and I can prepare an Order.

Sincere thanks in advance,

Mike.


Sent from my so-called "smartphone" so please excuse any obvious spellcheck errors.

On Nov 17, 2023, at 12:30 PM, Rebecca Eisenbrey
<REisenbrey@ppsl.org> wrote:

Hi all,

Pursuant to Judge McCabe's Order on DE 104 (DE 133),
responses to Plaintiffs' second set of RFPs to Defendant FEI
and third set of RFPs to Defendant HCI were due yesterday.
Please let us know when we can expect them.

All best,

Becca

---

**From:** Rebecca Eisenbrey
**Sent:** Thursday, November 2, 2023 10:21 AM
**To:** Michael J. Carney <mjc@kubickidraper.com>; Barbara
Fox <bf@kubickidraper.com>; Lily Wong
<LW@kubickidraper.com>; Caroline A. Sand
<cas@kubickidraper.com>
**Cc:** Victoria Roytenberg <VRoytenberg@ppsl.org>; Jennifer
Thelusma <Jthelusma@ppsl.org>; Clay Losier
<nicole@mayerlawflorida.com>; Eileen Connor
<econnor@ppsl.org>
**Subject:** Roberson v. HCI - Plaintiffs' 2d Set of RFPs to FEI
and 3d Set of RFPs to HCI

Counsel,

Attached are Plaintiffs' second set of RFPs to Defendant FEI
and third set of RFPs to Defendant HCI.

All the best,

Becca

Becca Eisenbrey
Attorney
Project on Predatory Student Lending

769 Centre Street, Suite 166
Jamaica Plain, MA 02130
Tel.: 617-322-2808

Fax: 781-218-9625

www.ppsl.org

<image001.jpg>           Michael J. Carney

<image002.png>           Shareholder

<image003.png>           Direct   (954) 713-2323

                         Fax      (954) 768-0514

<image004.png>           mjc@kubickidraper.com

<image005.png>           110 E. Broward Blvd., Suite 1400

                         Fort Lauderdale, Florida 33301

Committed to DEI, and proudly certified: RING Platinum

# Exhibit B

# MAYER LAW

📞 352.494.3657      📍 171 Dommerich Dr. Maitland, FL 32751      ✉ Nicole@mayerlawflorida.com

December 21, 2023

Michael J. Carney
Lily Wong
Kubicki Draper
110 E. Broward Blvd., Suite 1400
Fort Lauderdale, Florida 33301

Barbara Fox
Kubicki Draper
9100 S. Dadeland Blvd., Suite 1800
Miami, Florida 33156

*In re: Roberson et al. v. Health Career Institute LLC et al*, 9:22-cv-81883-RAR

Dear Counsel,

We are writing to confer with you on several outstanding discovery issues; each addressed in turn below in order of priority.

1. **Meet and Confer on HCI's Response to Plaintiffs' Third Set of Document Requests and Documents Produced in Response to Court Order No. 133**

   a. **No Index Provided.**

We note that your written responses to Plaintiffs' Third Set of RFPs stated that documents would be produced for RFPs 3, 4, 5, 7, 24, 27, 28, and 29; however, you did not provide an index, and the names of the documents you produced (see below) suggest that nothing was produced in response to these requests.



1

# MAYER LAW

📞 352.494.3657          📍 171 Dommerich Dr. Maitland, FL 32751          ✉ Nicole@mayerlawflorida.com

Additionally, for RFPs 6, 12, and 14, HCI's responses indicated that responsive documents were already produced; however, no Bates number were provided to identify these documents.

*Please provide a complete index showing the Bates numbers of the previously produced documents responsive to RFPs 6, 12, and 14, and the Bates numbers of documents responsive to RFPs 3, 4, 5, 7, 24, 27, 28, and 29.*

### b. <u>Objections</u>

In response to Plaintiff's Third Set of RFPs, HCI objected to RFPs 1-7, 12-15, 17, 18, 21, and 24-28.

For RFPs 4-7, 12, and 27, HCI stated that it was making a production "[n]otwithstanding and without waiving" the objections. However, as noted above, it is not clear what, if any, documents were produced in response to these requests; as a result, Plaintiffs cannot determine what may have been withheld on the basis of the objections.

**RFPs 1 and 2** seek "[a]ll profit and loss statements, balance sheets, income statements, and statements of cash flows," and "[a]ll documents concerning or relating to audits of" and "all communications relating to" same. HCI refused to produce any responsive documents. As discussed below, HCI's objections are meritless:

- *Terms are not defined, overly broad, vague and ambiguous*: Aside from the fact that "profit and loss statements," "balance sheets," "income statements," and "statements of cash flows" are common, easily understandable terms that are routinely used in business and accounting,[1] HCI's CFO, Ryan Miller, specifically testified that every month he does an actual versus budget comparison, and that in doing so,

  > I look at a full financial package, which includes profit and loss statements, balance sheet, cash flow, population models . . . Capex expenditures . . . I look at 90/10 percentage. So pretty much anything on the financial side, we look at monthly and compare it.

  Miller Dep. Tr. 31:19-24 (Nov. 14, 2023). Later in his deposition, Miller testified that monthly he creates HCI's income statement, balance sheet, and cash flow." *Id.* 89:19-90:9. Miller went on to explain what each of these documents contains. *Id.* 122:12-123:11. Moreover, when asked on November 14, 2023, if he knew whether he had compiled any financial documents for production in this case, Miller testified, "I believe there's a third production request to compile these financials together" and that he had "[s]tarted to pull these for each month." *Id.* 50:24-51:9.

---

[1] *See, e.g.*, Jeff Smith, Corporate Finance Institute, "Three Financial Statements," https://corporatefinanceinstitute.com/resources/accounting/three-financial-statements/ ("The three financial statements are the income statement, the balance sheet, and the cash flow statement.").

2

# MAYER LAW

📞 352.494.3657        📍 171 Dommerich Dr. Maitland, FL 32751        ✉ Nicole@mayerlawflorida.com

- *Documents sought are irrelevant*: As the U.S. Securities and Exchange Commission explains in its "Beginners' Guide to Financial Statement," the financial statements sought "show you where a company's money came from, where it went, and where it is now." https://www.sec.gov/reportspubs/investor-publications/investorpubsbegfinstmtguide. As Plaintiffs have repeatedly explained, and as Judge McCabe has recognized, the gravamen of the SAC is that Defendants grossly overcharge for a subpar product. Information showing where tuition dollars went, and where they are now, is thus plainly relevant.

*Please produce all responsive documents. If there remains any confusion as to these terms used in the RFP, we suggest you confer with HCI's CFO given that he had already begun identifying and compiling responsive financial documents in the month preceding HCI's written objections.*

**RFP 13** seeks "[a]ll 'written processes' regarding curriculum creation and changes to curricula, as discussed by Alecia Dennis during her 30(b)(6) deposition, and all communications regarding same," citing Ms. Dennis's deposition transcript at 75:18-76:1. HCI refused to produce any responsive documents, stating that the request is "so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought." HCI claims that "Ms. Dennis specifically did not specifically identify the existence of any 'written process' in the quoted parts of her deposition."

The cited deposition testimony reads:

> Q: And so I'll ask, are HCI processes written down?
>
> A: So yes, we have guidance on the various processes we implement.
>
> Q: So regarding curriculum creation and changes to curricula, are their [sic] written processes for that?
>
> A: Right.

RFP 13 clearly seeks the "written processes" "regarding curriculum creation and changes to curricula" that Ms. Dennis confirmed exist.

*Please produce all responsive documents.*

As to communications, HCI claims that absent a list of individuals to whom communications were made, the request is overbroad, vague and ambiguous. Plaintiffs propose the same list of custodians agreed to by HCI for a prior search for curriculum-related communications: Arlette Petersson, Alecia Dennis, Knolan DeVevo, Celeste Blackwell, Pedro De Guzman, Darlene Riggs, Johanna Lane, Catrina Leandre, David Shelpman, Desiree Voita, Dawn Lopater, and Steven Hart.

*Please produce all responsive communications from these custodians.*

**RFP 15** seeks documents related to Tatsiana Tuchinsky and/or EduCompliance Strategies, LLC. HCI complains that the request for "document[s] 'concerning HCI's dealings with Tatsiana Tuchinksy and/or EduCompliance Strategies, LLC' is so overly broad so vague and ambiguous,

3

**MAYER LAW**

📞 352.494.3657       📍 171 Dommerich Dr. Maitland, FL 32751       ✉ Nicole@mayerlawflorida.com

and overly broad so as to provide no meaningful guidance as to what is being sought." This objection completely ignores the remainder of the request, which gives specific examples of the documents being sought. The objection also claims that the request is irrelevant because it is not limited to documents "pertaining to the allegations of the lawsuit." Pedro DeGuzman testified that Tatsiana Tuchinsky is a "compliance person we've used to review our catalog or to review our website, for example." DeGuzman Dep. Tr. 221:21-223:2 (Aug. 15, 2023). The claims in this case concern content in HCI's catalog and website; therefore, information concerning Ms. Tuchinsky is directly relevant to this case.

*Please produce, at minimum, all "agreements for services; written communications between HCI and Tatsiana Tuchinsky and/or EduCompliance Strategies, LLC; attachments to those written communications; and any notes, summaries, or reports generated by Tatsiana Tuchinsky and/or EduCompliance Strategies, LLC concerning HCI."*

**RFP 25** seeks work produced by marketing contractors, including SEM Management and Heart Globe Enterprises, and communications regarding same. HCI objects that "the term 'work' is not defined." Once again, this objection ignored the remainder of the request, which gives specific examples of the "work" being sought. HCI also seems to object that the request seeks irrelevant information. The complaint alleges that HCI engaged in racially targeted marketing and advertising. As a result, all documents related to HCI's marketing and advertising strategies are entirely relevant. Finally, HCI objects that the request for "all communications regarding same . . . provide[s] no meaningful guidance as to what is being sought." As with all other, similar requests, Plaintiffs seek all communications, whether internal to HCI or with employees or agents of the third-party contractors, regarding the requested documents—*i.e.*, all communications discussing the marketing and advertising plans, SEO directives, and market research produced by marketing contractors.

*Please produce all "marketing and advertising plans, SEO directives, and market research" produced for HCI by third parties during the relevant period, and all communications regarding same.*

**RFP 28** seeks "[a]ll documents, including communications, reflecting payments made by HCI to, or on behalf of, FEI and/or its employees or principals, including invoices, billing statements, account statements, and/or receipts." HCI objects that this request is overbroad, vague and ambiguous, and irrelevant. The request is none of these things. The request plainly seeks all documents that contain information about money moving from HCI to FEI, its parent company. Documents produced in this action show that FEI can demand disbursements from HCI, and witnesses for HCI and FEI confirmed that such disbursements are regularly made. As HCI acknowledges, the complaint alleges that the education provided by HCI was subpar. As explained above, inherent in that allegation is that money that should have gone to the provision of educational services was in fact distributed elsewhere, including to FEI investors. The information sought is thus plainly stated and clearly relevant.

*Please produce all responsive documents.*

4

**MAYER LAW**

📞 352.494.3657    📍 171 Dommerich Dr. Maitland, FL 32751    ✉ Nicole@mayerlawflorida.com

### c. Possibly Missing Documents

#### i. Choice of Exam Documents Used in the RN Program

As to **RFP 1** of Plaintiffs' Second Set of RFPs to HCI, Court Order No. 133 required production of all versions of the Policy for Testing Deployment as referred to by Alecia Dennis in her deposition, as well as all versions of the Exit Exam Policy seen at Bates 569. The documents produced and designated as responsive to RFP 1 and 2 are HCI020607-021205. Policy-wise, these documents contain only a Secure Testing Policy created in 2021 and updated in 2022, and instructions for administering an ATI Proctored exam. Neither of these reflect the policy mentioned by Alecia Dennis or the policy CIE required HCI to implement like the draft seen in Bates 569.

**RFP 9** of Plaintiffs' Third Set of RFPs requested all Nursing Curriculum Committee meeting or decision notes concerning the choice of Exit Exam (the last exam taken by students before graduation from HCI's nursing program). The "index" you provided stated that documents responsive to RFP 9 were located at HCI028305-28382, which included the meeting minutes described below:

- *Meeting Minutes* – At HCI028305-HCI028282, HCI produced meeting minutes from Nursing Meetings, Faculty Meetings, Academic Management Meetings, and Curriculum Committee Meetings. These included four sets of meeting minutes from 2019; four sets of meeting minutes from 2020; five sets of meeting minutes for 2021; zero meeting minutes from 2022; and one set of meeting minutes from 2023.

We have reviewed the identified documents at HCI028305-28382 and did not see any documents corresponding with the Policy for Testing Deployment that Alecia Dennis testified about, nor did we find different versions, or even a final version, of the Exit Exam Policy.

Meeting minutes also appear between HCI021171-021205; however, these contain only three meeting minutes from 2019 and three meeting minutes for 2021. While there is reference to different exam formats, the notes do not reflect a decision to switch from one format to the other on a particular date.

*Please advise if any additional documents exist concerning the change of format for the final exit exam or any policies regarding same.*

#### ii. Documents Regarding the 50% Rule

As to **RFP 2** of Plaintiffs' Second Set of RFPs to HCI**,** Court Order No. 133 required HCI to examine the binders kept by the Nursing Director in connection with faculty meetings and produce all documents relating to the 50% Rule, as well as all complaints about the 50% Rule. The documents produced indicate that HCI020607-021205 are responsive to RFPs 1 and 2 referenced in Court Order No. 133. We note, however, that HCI20607-020633 are responsive to only RFP 1.

5

# MAYER LAW

📞 352.494.3657       📍 171 Dommerich Dr. Maitland, FL 32751       ✉ Nicole@mayerlawflorida.com

Documents produced as HCI020634-021205 appear to be responsive to RFP 2. These include complaints as well as meeting minutes from Nursing Meetings, Faculty Meetings, Academic Management Meetings, and Curriculum Committee Meetings. These included three sets of meeting minutes from 2019; zero meeting minutes from 2020; three sets of meeting minutes for 2021; and no meeting minutes for 2022 or 2023. Upon review of all faculty/nursing/curriculum meeting minutes produced, [2] the only mention of the new grading policy appears in a May 14, 2021, meeting at which the roll out of the policy was simply announced. HCI028375. We note that David Shelpman's form email responses to students complaining about this new grading policy in August 2021 stated,

> I want to take an opportunity to explain how the college came about deciding this new course requirement. I can assure you that this was not a rash administrative decision to create a more challenging time for our students. This came up during a nursing faculty meeting and was initially brought forth by our nursing education team. We discussed the different competencies that were required to ensure that a student has mastered the necessary skillsets in all areas of the course specifically that of which is taught in the course and covered during exams. Through the discussion of this suggested topic and change it was reviewed and voted on that setting an expectation level of 50% which is relatively a low score in each subsection was something that our nursing students should be able to achieve and demonstrate their ability to [sic] the fact that they have mastered the necessary content required to move on.

HCI021140-41 (Aug. 11, 2021).

Additionally, email responses from Celeste Blackwell to student complaints about the 50% Rule indicated that the administration was gathering data, information, and scores to review prior to considering student complaints. *Examples* at HCI021033 (Aug. 24, 2021); HCI021041 (Aug. 25, 2021); HCI021043 (Aug. 12, 2021); HCI021046 (Aug. 13, 2021). Mr. Shelpman and Ms. Blackwell's statements indicate that extensive analysis was done on the change in grading policy both before and after its implementation. Despite having asked for such documentation in a number of requests, we have yet to see it.

*Please advise if any additional documents exist concerning the creation of, implementation of, or analysis of the 50% Rule.*

 **RFP 14** of Plaintiffs' Third Set of RFPs asked for all written processes regarding student advancement in the RN program as well as all communications regarding same. HCI's response was that responsive documents had already been provided.

*Please advise which documents this response refers to, and/or the request to which responsive documents were previously provided.*

---

[2] In total, as for meetings attended by HCI faculty, HCI has produced 32 sets of meeting minutes from 2019; yet has produced only four from 2020, nine from 2021, zero from 2022, and one from 2023.

**MAYER LAW**

📞 352.494.3657     📍 171 Dommerich Dr. Maitland, FL 32751     ✉ Nicole@mayerlawflorida.com

iii. *ExCom Meeting Notes*

A. Response to Third Set of RFPs

**RFP No. 10** of Plaintiffs' Third Set of RFPs asked for "All notes from ExCom meetings, as discussed by Steven Hart in his deposition, concerning advancement and graduation requirements for the RN Program, the use of examinations in the RN Program, and/or RN Students' preparation for and performance on the NCLEX-RN." In response, HCI produced 24 ExCom Meeting Minutes, all of which were heavily redacted and seven of which were withheld as privileged. Among the ExCom meeting minutes produced, nine sets were from 2021, 12 were from 2022, and four sets were from 2023. In addition to the redaction and privilege concerns addressed in Section 1(d) below, Plaintiffs believe that HCI failed to produce several ExCom Meeting Minutes responsive to RFP No. 10.

Defendant Hart and HCI's CFO Ryan Miller testified that ExCom Meetings occur once per month. Hart Dep. Tr. 44:22-24 (Aug. 17, 2023); Miller Dep. Tr. 240:21-241:10. The Authorization Guidelines provide, and HCI's CFO Ryan Miller confirmed, that at each ExCom meeting the attendees review "monthly and a year-to-date analysis of NCLEX test results, regulatory update, new program and T4 approval, start projection, placement and output updates" and that "the CEO will notify ExCom of any noncompliance with any requirement." Miller Dep. Tr. 147:15-148:6. Based on these descriptions, all ExCom meeting minutes should contain information responsive to RFP No. 10.

ExCom Meeting Minutes produced indicate that ExCom Meetings occurred on the following dates,[3] yet no documentation was produced in connection with these meetings:

1. Dec. 16, 2020;[4]
2. Dec. 30, 2020;[5]
3. Jan. 21, 2021;[6]
4. March 17, 2021;[7]
5. June 16, 2021;[8]
6. Oct. 28, 2021;[9]
7. Feb. 17, 2022;[10]
8. Oct. 20, 2022;[11]

---

[3] That additional meetings occurred is evidenced by the fact that the meeting minutes produced reference approval of meeting minutes that occurred on dates for which no documents were produced.
[4] *See* HCI028385, indicating approval of meeting minutes from Dec. 16, 2020, meeting.
[5] *See* HCI028385, indicating approval of meeting minutes from Dec. 30, 2020, meeting.
[6] *See* HCI028383, indicating approval of meeting minutes from Jan.21, 2021, meeting.
[7] *See* HCI028385, indicating approval of meeting minutes from March 17, 2021, meeting.
[8] *See* HCI028422, indicating approval of meeting minutes from June 16, 2021, meeting.
[9] *See* HCI028417, indicating approval of meeting minutes from Oct. 28, 2021, meeting.
[10] *See* HCI028391, indicating approval of meeting minutes from Feb. 17, 2022, meeting.
[11] *See* HCI028415, indicating approval of meeting minutes from Oct. 20, 2022, meeting.

7

**MAYER LAW**

📞 352.494.3657        📍 171 Dommerich Dr. Maitland, FL 32751        ✉ Nicole@mayerlawflorida.com

        9.  March 2, 2023;[12]
        10. July 2023;[13]
        11. Aug. 2023;[14]
        12.     Sept. 2023;[15]
        13.     Oct. 2023;[16]
        14. Nov. 2023.[17]

    B.  <u>Response to Court Order No. 133</u>

As to **RFP No. 21** of Plaintiffs' Second Set of RFPs, Court Order No. 133 required HCI to produce, in part, minutes of executive committee meetings regarding "the 2018 BON West Palm Beach application and the BON Fort Lauderdale application that followed it" as well as communications in connection with same. In response, HCI produced just six pages of documents, reflecting a few 2018 emails. The response did not include any ExCom meeting minutes or any other communications regarding same concerning the program applications.

*Please produce the responsive ExCom meeting minutes and communications in connection with same. If such documents do not exist, please affirmatively state this.*

   **d.  <u>HCI Redactions and Privilege Log</u>**

   *i.  Redactions*

As discussed above, in response to RFP No. 10 of Plaintiffs' Third Set of RFPs, HCI produced 24 sets of Executive Committee Meeting minutes. While seven sets of "ExCom Minutes" are listed on HCI's privilege log (addressed in Section 1(d)(ii) below), all 24 ExCom Minutes contain heavy redactions. Such heavy unilateral redaction alone poses concerns.[18] However, here, the concerns

---

[12] *See* HCI028426, indicating approval of meeting minutes from March 2, 2023, meeting.

[13] *See* Authorization Guidelines stating that ExCom Meetings occur at least once per month.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] As the Southern District of Florida explained in *ADP, LLC v. Ultimate Software Grp., Inc.,* No. 17-CV-61274 (S.D. Fla. Dec. 15, 2017):

> There are numerous issues associated with allowing unilateral redactions of purportedly irrelevant information. Even when implemented with restraint and in good faith, the practice frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured. Often, this practice results in litigation of collateral issues and in camera review of documents. Further, it is a rare document that contains only relevant information, and prohibiting the practice of unilaterally redacting irrelevant information is the only interpretation of Fed. R. Civ. P. 34 that yields just, speedy, and inexpensive determinations of every action and proceeding.

2017 WL 7794226, at *1 (cleaned up).

8

**MAYER LAW**

📞 352.494.3657      📍 171 Dommerich Dr. Maitland, FL 32751      ✉ Nicole@mayerlawflorida.com

are amplified by the fact that the recently-produced FEI investor reports, which are drafted by the exact same three people who make up the Executive Committee, contain information highly relevant to Plaintiffs' claims regarding advancement, graduation requirements, examinations, and NCLEX preparation and performance. It is difficult to believe that the type of information contained in the investor reports is not also reflected in the ExCom meetings beyond the small excerpts that remain viewable.

*Because of these concerns, we are asking that HCI produce unredacted versions of the Executive Committee meeting minutes. Absent agreement, we will seek them through a motion to compel.*

Pursuant to Court Order No. 133, HCI produced communications with Sachs Media. An email from Defendant Hart to an unidentified person on an unidentified date is fully redacted. This redaction is improper. First, the Court ordered these documents produced. While privileged information can be held back, doing so requires proper assertion of the privilege on a privilege log.

*Please provide an unredacted version of this document or provide a privilege log with enough detail to support a finding that the document is privileged.*

    *ii. Privilege Log*

### A. HCI's Privilege Log in connection with Plaintiffs' Third Set of RFPs

Defendant HCI's Privilege Log to its Responses to Plaintiffs' Third Set of RFPs to HCI lists seven "ExCom Minutes." The information on the privilege log does not support a finding that the withheld documents are privileged.

First, three of the seven documents were created before this lawsuit was ever filed; therefore, it is unclear how information contained therein would be privileged. Second, while the privilege log claims that each withheld documents contains "work product," the ExCom Minutes were clearly not drafted by or for an attorney. Third, Defendant Hart testified that the subjects covered by the ExCom meetings are "largely financial" with some "operating things." Hart Dep. 54:12-55:3 (Aug. 17, 2023). Ryan Miller testified similarly as to the ExCom meetings. Miller also testified that he (a non-attorney) drafts the agendas for the ExCom meetings and is the keeper of the ExCom meeting notes. Miller Dep. Tr. 94:4-16; 99:7-15. Defendant Hart confirmed that Miller takes notes at the ExCom Meetings. Hart Dep. Tr. 41:5-42:1. Additionally, the privilege log does not identify the attorney whose work product is allegedly reflected in the withheld documents, nor does it identify the client to whom such a privilege would belong. Finally, the seventh document listed on the privilege log does not have a Bates Number on it nor does it indicate the identity of the attorney or the client.

*We are requesting unredacted production of the seven withheld documents for the reasons stated above.  Absent agreement, we will seek them through a motion to compel.*

9

**MAYER LAW**

📞 352.494.3657     📍 171 Dommerich Dr. Maitland, FL 32751     ✉ Nicole@mayerlawflorida.com

B. <u>HCI's Privilege Log in connection with Court Order No. 133</u>

HCI's privilege log connected to the documents produced in response to Court Order No. 133 lists six pages of documents which were produced but which were heavily redacted. These appear to be 2018 emails between Defendant Hart, Larry Brown, Robert Bonds, and Steve Chema.

The information on the privilege log does not support a finding that the withheld documents are privileged. The documents were created well before the existence of this lawsuit and the documents appear to be discussions regarding a business matter, specifically, HCI's application to the Florida Board of Nursing for a new RN Program. "Non-legal business advice is not privileged" and "mixed purpose communications" reflecting both legal and business considerations are not privileged." *Nat'l Equestrian League v. White*, No. 20-cv-21746, 2021 U.S. Dist. LEXIS 193558, at *17 (S.D. Fla. Oct. 7, 2021) (internal citations omitted). A review of attorney Chema's profile on his law firm website indicates that he "advise[s] career colleges and institutions of higher education on a wide array of compliance issues." Nothing about the privilege log indicates that HCI sought legal advice from Mr. Chema in anticipation of litigation, but rather with respect to every day business issues. Finally, Plaintiffs question whether Mr. Chema is an investor in Florian given that he has been a recipient of communications address to FEI investors. If this is the case, it is even more unlikely that his involvement in the day-to-day business activity of HCI would be considered privileged.

2. <u>**Meet and Confer on FEI's Response to Plaintiffs' Second Set of RFPs**</u>

a. **Potentially Missing Documents**

Thank you for the supplemental production provided on October 8, 2023. Even after the supplemental production, however, certain documents appear to be missing from FEI's production in response to Plaintiffs' Second Set of RFPs. The documents listed below have still not been produced and nothing about the documents produced thus far indicates a reason the missing documents would not have been created and disseminated to investors. We intend to seek these documents from another source, or through court order, absent a conclusive statement that such documents never existed and a description of the search conducted which led to this determination. Based on testimony obtained to date, our understanding is that as far as HCI employees are concerned, investor reports can be found in the email boxes of, at least, Defendant Hart, Pedro DeGuzman, and Ryan Miller.

- 2019 August voicemail transcript (would be dated September 2019)
- 2019 Quarter 3 Investor Report
- 2019 December voicemail transcript
- 2020 January voicemail transcript
- 2020 March voicemail transcript
- 2020 May voicemail transcript
- 2021 January voicemail transcript
- 2021 Quarter 1 Investor Report

10

# MAYER LAW

📞 352.494.3657          📍 171 Dommerich Dr. Maitland, FL 32751          ✉ Nicole@mayerlawflorida.com

- 2021 July Investor Report
- 2021 July voicemail transcript
- 2022 Quarter 1 Investor Report
- 2023 January voicemail transcript located at FLORIAN000875 – UNREDACTED copy requested (*see* Section 2(c) below)
- 2023 October voicemail transcript
- 2023 November Investor Report
- The "Cover Letter, PDF-HCI College Transforming Lives," Executive Summary, and any documents concerning the virtual Management Presentation on June 2, 2022, as referenced in FLORIAN000846.

### b.  Objections

Florian objected to **Request 10**, which asked for "[a]ll profit and loss statements, balance sheets, income statements, and statements of cash flow. For reasons discussed above in reference to in Reference to Request 1 and 2 in Plaintiffs' Third set of RFPs to HCI, this information is relevant to Plaintiffs' claims.

*Please provide these documents as soon as possible to avoid a motion to compel the documents.*

### c.  Withheld and Redacted Documents

The January 2023 voicemail transcript located at FLORIAN000875 is redacted. FEI's privilege log indicates that the document discusses the handling of the current lawsuit and advice of counsel. The privilege log does not support a finding that the document is privileged. First, as discussed above, privilege cannot be determined because the privilege log does not identify the attorney who communicated to a client, or who shared work product with a client. Further, neither the privilege log, nor the fully redacted email at FLORIAN000875, indicate the identity of the client.

Regardless of the content of the communication, we are aware of no basis for redacting a document containing communication sent to third-party investors. To the extent the document actually did reflect attorney work-product, and assuming FEI did identify the attorney and the client, the privilege was waived by sharing that work product with third-party investors. *Keim v. ADF Midatlantic, LLC,* No. 12-CV-80577, 2019 WL 2298787, at *3 (S.D. Fla. May 30, 2019) (holding that "whether the emails contained work product was a moot issue, because defendants' counsel 'waived the privilege by sharing his views or questions with [a third-party], an employee of a non-party witness").

Additionally, Defendant FEI's privilege log indicates that it withheld a draft investor report with comments from attorney Steve Chema that Defendant Hart emailed to FEI's accountant and FEI Co-CEO Larry Brown on March 9, 2021. Defendant Hart signed the email in his capacity as Co-Chair of

11

HCI College. The email to which the withheld document was attached describes the withheld document as follows: "red and clean off of Steve Chema's comments, added market multiples from Jim Rowan and a few other things." FLORIAN00212. The privilege log does not establish that the document is privileged.

First, while the log asserts attorney-client privilege, it does not identify the client holding the privilege with attorney Chema. While the withheld document is an FEI investor report, the email to which it is attached was authored by Defendant Hart in his capacity as Co-Chair of HCI College as indicated by his signature block. Defendant Hart sent the email from his HCI College email address but CC'd his Hart Capital email address. The email was sent to Larry Brown's HCI College email address and his Gmail address and was also sent to Mike DeCruze, the accounting firm for FEI.

Second, in addition to Mike DeCruze and Larry Brown, attorney Chema's comments in the withheld document appear to have been shared with an individual named "Jim Rowan" whose comments are also in the withheld document. The privilege log does not explain how sharing attorney Chema's comments with Jim Rowan, or Larry Brown and Mike DeCruze, does not constitute a waiver of any existing attorney-client privilege.

Third, "[n]on-legal business advice is not privileged" and "mixed purpose communications" reflecting both legal and business considerations are not privileged." *Nat'l Equestrian League v. White*, No. 20-cv-21746, 2021 U.S. Dist. LEXIS 193558, at *17 (S.D. Fla. Oct. 7, 2021) (internal citations omitted). A review of attorney Chema's profile on his law firm website indicates that he "advise[s] career colleges and institutions of higher education on a wide array of compliance issues." Given that the investor reports were regularly prepared as part of FEI's business, rather than in anticipation of litigation, absent an explanation to the contrary, Mr. Chema's comments to these reports would thus appear to be non-privileged business advice.

Fourth, the title of the withheld document indicates that the draft investor report also contains edits and/or comments from Defendant Hart ("+SH red"). In the unlikely event that Steve Chema's comments constitute legal advice, those comments should simply have been redacted and a copy of the draft investor report with Defendant Hart's edits and comments intact should have been produced.

### 3. **Key Word Searches**

Pursuant to Court Order No. 133, we previously agreed to specific search terms and custodians for use in HCI's gathering of responsive communications.

*Please advise whether the documents produced to date are a result of the searches using the agreed-upon terms and agreed-upon custodians. If the results of the agreed-upon searches were filtered in any way prior to production, please describe the method used to filter documents.*

**MAYER LAW**

📞 352.494.3657   📍 171 Dommerich Dr. Maitland, FL 32751   ✉ Nicole@mayerlawflorida.com

4. <u>**Further Discussions**</u>

If a call would be helpful to discuss any of the above, please let us know. We can be available as early as Friday to answer any questions you may have about this letter. Given the number of issues addressed herein, the upcoming holidays, pending court deadlines, and our desire to engage in a meaningful meet and confer process, we ask that Defendants provide a final response to our meet and confer efforts by January 4, 2024, and that Defendants agree to extend Plaintiffs' deadlines for moving to compel on the discovery requests discussed herein until January 9, 2024. If Defendants are agreeable to this, we will prepare a motion to this effect.

Sincerely,

*Nicole Mayer*

Nicole Mayer

13

# Exhibit C

| | |
|---|---|
| **From:** | Victoria Roytenberg |
| **To:** | Michael J. Carney; Clay Losier; Lily Wong; Barbara Fox |
| **Cc:** | Jennifer Thelusma; Rebecca Eisenbrey |
| **Subject:** | RE: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issue s- Post Meeting Follow-Up |
| **Date:** | Monday, January 8, 2024 3:36:54 PM |
| **Attachments:** | image009.png |
| | image010.png |
| | image011.png |
| | image012.png |
| | image013.png |

Thank you, Mike. We will file it today.

**From:** Michael J. Carney <mjc@kubickidraper.com>
**Sent:** Monday, January 8, 2024 3:25 PM
**To:** Victoria Roytenberg <VRoytenberg@ppsl.org>; Clay Losier <nicole@mayerlawflorida.com>; Lily Wong <lw@kubickidraper.com>; Barbara Fox <bf@kubickidraper.com>
**Cc:** Jennifer Thelusma <Jthelusma@ppsl.org>; Rebecca Eisenbrey <REisenbrey@ppsl.org>
**Subject:** RE: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issue s- Post Meeting Follow-Up

The Motion is fine, Victoria

Hopefully we will have a lot of agreements in the next couple days, per our discussions.

TY

Mike



Michael J. Carney
Shareholder

Direct   (954) 713-2323
Fax      (954) 768-0514

mjc@kubickidraper.com

110 E. Broward Blvd., Suite 1400
Fort Lauderdale, Florida 33301

Committed to DEI, and proudly certified: RING Platinum 

**From:** Victoria Roytenberg [mailto:VRoytenberg@ppsl.org]
**Sent:** Monday, January 08, 2024 3:04 PM
**To:** Clay Losier; Lily Wong; Barbara Fox; Michael J. Carney
**Cc:** Jennifer Thelusma; Rebecca Eisenbrey
**Subject:** RE: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issue s- Post Meeting Follow-Up

Hello Mike,

I wanted to follow up on the email below. Also, attached is a Joint Motion for Further Extension of Time (for plaintiffs to file a motion to compel). We would like to file this today. Please let us know if you agree to file it jointly and if you have any edits. Otherwise, please let us know your position on the motion.

Thank you,
Victoria

---

**From:** nicole@mayerlawflorida.com <nicole@mayerlawflorida.com>
**Sent:** Friday, January 5, 2024 7:22 PM
**To:** Lily Wong <lw@kubickidraper.com>; 'Barbara Fox' <bf@kubickidraper.com>; 'Michael J. Carney' <mjc@kubickidraper.com>
**Cc:** Victoria Roytenberg <VRoytenberg@ppsl.org>; Jennifer Thelusma <Jthelusma@ppsl.org>; Rebecca Eisenbrey <REisenbrey@ppsl.org>
**Subject:** RE: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issue s- Post Meeting Follow-Up

Hello Mike,

Just writing to recap our call today and provide info. you requested. Please let us know if any of this is incorrect or if we forgot anything.

**Motion to Compel Timing**

You asked that we wait to file a motion to compel until after you file Defendants' response to the class cert. motion. We agree and will send a motion next week with a request to change our current Jan. 9th deadline. The hope is that we can reduce the number of disputes before filing any such motion.

**Plaintiffs' Second Set of RFPs to HCI**

Search of Communications Using Search Terms
- 10/27/23 Order from Judge McCabe (ECF No. 133, ¶ 3) stated that "to the extent any documents ordered to be produced by way of this Order include emails" the parties were to agree on search terms within a week of the order.
- Communications were ordered to be produced for:
  ○ RFP Nos. 23, 27, 28 - All responsive communications to be produced.
  ○ RFP No. 21 - Limited to communications regarding the 2018 BON WPB application and Ft. Lauderdale application (including emails, letters, text messages, internal memos, reports, ExCom meetings)
  ○ RFP No. 43 – Limited to communications with Sachs Media, FEI, any FEI investor, or any HCI investor about this lawsuit.
- We agreed on search terms by 11/3/23 and all docs. were to be produced within 30 days of the Order (though we granted an extension)
- Please advise if these searches were run and if all documents retrieved from use of the search terms (meaning without further limiting by Defendant) have been produced.

RFP No. 1 You stated you would review Alecia Dennis's testimony and look into whether there are any processes, policies, etc. that have not been produced.

RFP No. 2 You stated you would look into whether there are any other meeting notes referencing the 50% Rule that have not been produced.

RFP No. 21 HCI produced just six pages which were emails. You asked that I identify these by Bates numbers. The Bates Nos. are HCI025380-25385. You stated you would look to see if there are any responsive communications not produced and whether any ExCom meeting minutes are responsive since the court ordered their production.

RFP No. 43 You said you would check to see if there are any other communications about this lawsuit with Sacks Media, FEI, or any FEI investor about this lawsuit (which the court ordered produced)

**Plaintiffs' Third Set of RFPs to HCI**

RFP Nos. 4, 5, 7, 24, 27, 28, 29 – You said these are RFPs for which documents are still forthcoming. Lily will provide a complete index, including identifying the Bates numbers for docs. previously produced which HCI's responses stated had already been provided (RFP Nos. 6, 12, 14).

RFP Nos. 1 & 2 You advised you would confer with your client to look into whether the financial documents we identified by name are easily produced, and if so, may be willing to produce the documents.

RFP No. 9 You stated you would check to see if there are other meeting notes regarding the choice of Exit Exam and let us know.

RFP No. 10 You stated you would:

    a. Determine the basis for the heavy redactions in the ExCom meeting minutes that were produced and not listed on HCI's privilege log (*see* Bates 28383-28426) and determine if these could be unredacted or whether an *in camera* inspection by the court is appropriate;

    b. Determine why so few ExCom meeting minutes were produced (including but not limited to the meeting minutes missing for the meetings held on the dates listed on page 7 of our meet & confer letter); and

    c. Respond to our request for additional information on HCI's privilege log about why 7 sets of ExCom meeting mins. were withheld as privileged.

RFP No. 13 You stated that you could agree to produce written policies, processes, and documents mentioned by Alecia Dennis in her deposition. You consider the request for communications a separate issue. Whether we need to compel on this may be impacted by whether the search of communications reference in at the beginning of this email was performed.

RFP No. 14 You stated you would check to see if there are written processes and communications regarding student advancement that have not been produced. You also stated you would include in your index the Bates numbers for the documents your response states were already produced.

RFP No. 15 You stated that agreements with Tatsiana Tuchinsky may be produced but that you needed to look into this.

RFP No. 25 You agreed that the limitations we placed on the requests in italicized text seemed fair.

RFP No. 28 Regarding the request for docs. and communications reflecting payments made by HCI to or on behalf of FEI . . . . You stated that you were "putting a pin in" this request, which we think means resting on your objections. In response to this, and HCI's resistance to producing financial documents, I asked what you would request if you were seeking discovery about the connection/overlap between two related defendants. You stated this was an interesting question and that you would think about this. If you have any ideas, we are happy to consider

==them==.

### Plaintiffs' Second Set of RFPs to FEI

<u>Missing documents</u> – We explained that we think it is critical that HCI produce the missing investor documents listed on pages 10 and 11 of our meet and confer letter and that if not produced, we will need to seek these through third-parties. You stated you would look into why certain documents were missing and get back to us.

<u>RFP No. 10</u> We did not specifically discuss this during our call but are we correct in presuming that it will be handled the same as HCI's financial documents? I believe Ryan Miller testified that he keeps these docs. for FEI as well. If not, the accounting firm would have them.

<u>Jan. 2023 VM transcript at FLORIAN000875</u> You stated you would look into why this document was redacted and listed on FEI's privilege log. We explained we saw no basis for withholding a document sent to investors.

<u>Withheld draft investor report</u> – You stated you would look into why a draft investor report (referred to in FLORIAN00212) was withheld as privileged and consider our request for additional information in the privilege log such as the identity of the client and the attorney holding the privilege.

### Upcoming Depositions

As discussed, we would like to take one day to depose Celeste Blackwell and David Shelpman while we are in WPB for the Cooke and Bonds depos. It is ==preferable (but not required) to do the Bonds or Cooke depo the first day== since you plan to start those at 11am; therefore, those of us in Florida could drive to WPB that morning and do two nights in a hotel rather than 3.

We look forward to hearing from you.

Nicole

---

**From:** Andrea Gibson <<u>Andrea.Gibson@kubickidraper.com</u>>
**Sent:** Friday, January 5, 2024 8:56 AM
**To:** 'Rebecca Eisenbrey' <<u>REisenbrey@ppsl.org</u>>; Lily Wong <<u>LW@kubickidraper.com</u>>; Clay Losier <<u>nicole@mayerlawflorida.com</u>>; Barbara Fox <<u>bf@kubickidraper.com</u>>; Michael J. Carney <<u>mjc@kubickidraper.com</u>>
**Cc:** Victoria Roytenberg <<u>VRoytenberg@ppsl.org</u>>; Jennifer Thelusma <<u>Jthelusma@ppsl.org</u>>
**Subject:** RE: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issues

Good morning
Lets go with 2:30 pm.  Shall I send a zoom link?

---

**From:** Rebecca Eisenbrey [<u>mailto:REisenbrey@ppsl.org</u>]
**Sent:** Thursday, January 04, 2024 6:58 PM
**To:** Andrea Gibson; Lily Wong; Clay Losier; Barbara Fox; Michael J. Carney
**Cc:** Victoria Roytenberg; Jennifer Thelusma

**Subject:** Re: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issues

Hi Andrea, do we have a time tomorrow?

---

**From:** Rebecca Eisenbrey <REisenbrey@ppsl.org>
**Sent:** Thursday, January 4, 2024 12:15:35 PM
**To:** Andrea Gibson <Andrea.Gibson@kubickidraper.com>; Lily Wong <lw@kubickidraper.com>; Clay Losier <nicole@mayerlawflorida.com>; Barbara Fox <bf@kubickidraper.com>; Michael J. Carney <mjc@kubickidraper.com>
**Cc:** Victoria Roytenberg <VRoytenberg@ppsl.org>; Jennifer Thelusma <Jthelusma@ppsl.org>
**Subject:** Re: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issues

Andrea, we're available tomorrow from 2 to 5.

---

**From:** Andrea Gibson <Andrea.Gibson@kubickidraper.com>
**Sent:** Thursday, January 4, 2024 10:22 AM
**To:** Rebecca Eisenbrey <REisenbrey@ppsl.org>; Lily Wong <lw@kubickidraper.com>; Clay Losier <nicole@mayerlawflorida.com>; Barbara Fox <bf@kubickidraper.com>; Michael J. Carney <mjc@kubickidraper.com>
**Cc:** Victoria Roytenberg <VRoytenberg@ppsl.org>; Jennifer Thelusma <Jthelusma@ppsl.org>
**Subject:** RE: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issues

Good morning

Mike Carney is in transit and has been delayed in getting back to the office.  Please advise your availability for **Friday, 1/5/24 after 2pm.**  Once you confirm, I will send out a calendar invite.  Thank you.



Andrea Gibson
Legal Assistant

Direct  (954) 713-2309
Fax      (954) 768-0514
Andrea.Gibson@kubickidraper.com
110 E. Broward Blvd., Suite 1400
Fort Lauderdale, Florida 33301

Committed to DEI, and proudly certified: RING Platinum 

---

**From:** Rebecca Eisenbrey [mailto:REisenbrey@ppsl.org]
**Sent:** Wednesday, January 03, 2024 6:23 PM
**To:** Lily Wong; Clay Losier; Barbara Fox; Michael J. Carney
**Cc:** Victoria Roytenberg; Jennifer Thelusma; Andrea Gibson
**Subject:** Re: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issues

And happy New Year!

---

**From:** Rebecca Eisenbrey <REisenbrey@ppsl.org>
**Sent:** Wednesday, January 3, 2024 6:22:50 PM
**To:** Lily Wong <lw@kubickidraper.com>; Clay Losier <nicole@mayerlawflorida.com>; Barbara Fox <bf@kubickidraper.com>; Michael J. Carney <mjc@kubickidraper.com>
**Cc:** Victoria Roytenberg <VRoytenberg@ppsl.org>; Jennifer Thelusma <Jthelusma@ppsl.org>; Andrea Gibson <Andrea.Gibson@kubickidraper.com>
**Subject:** Re: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issues

Thanks, Lily and Andrea. Please let us know as soon as possible.

---

**From:** Lily Wong <LW@kubickidraper.com>
**Sent:** Wednesday, January 3, 2024 3:51:47 PM
**To:** Clay Losier <nicole@mayerlawflorida.com>; Barbara Fox <bf@kubickidraper.com>; Michael J. Carney <mjc@kubickidraper.com>
**Cc:** Victoria Roytenberg <VRoytenberg@ppsl.org>; Jennifer Thelusma <Jthelusma@ppsl.org>; Rebecca Eisenbrey <REisenbrey@ppsl.org>; Andrea Gibson <Andrea.Gibson@kubickidraper.com>
**Subject:** RE: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issues

Hi Nicole,

Happy New Year!
Mike is in transit. I've cc'ed our assistant Andrea to this email chain, she'll be able to confirm the time for the telephone conference tomorrow.

Thank you,
Lily



Lily Wong

Attorney

Direct   (954) 713-2319

Fax       (954) 768-0514

LW@kubickidraper.com

110 E. Broward Blvd., Suite 1400

Fort Lauderdale, Florida 33301

Committed to DEI, and proudly certified: RING Platinum 

---

**From:** nicole@mayerlawflorida.com [mailto:nicole@mayerlawflorida.com]
**Sent:** Wednesday, January 03, 2024 3:45 PM

**To:** Barbara Fox; Michael J. Carney; Lily Wong
**Cc:** 'Victoria Roytenberg'; 'Jennifer Thelusma'; 'Rebecca Eisenbrey'
**Subject:** RE: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issues

Hello. We would appreciate knowing what time you are available to speak with us tomorrow.

Nicole

---

**From:** nicole@mayerlawflorida.com <nicole@mayerlawflorida.com>
**Sent:** Tuesday, January 2, 2024 3:23 PM
**To:** 'Barbara Fox' <bf@kubickidraper.com>; 'Michael J. Carney' <mjc@kubickidraper.com>; 'Lily Wong' <LW@kubickidraper.com>
**Cc:** 'Victoria Roytenberg' <VRoytenberg@ppsl.org>; 'Jennifer Thelusma' <Jthelusma@ppsl.org>; 'Rebecca Eisenbrey' <REisenbrey@ppsl.org>
**Subject:** RE: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issues

Hello. Just following up to see what time works best for you on Thursday for a call.

To the extent you can provide an earlier written response to some of the issues raised in our letter (for example, the requests for which the responses stated documents were produced but for which we did not receive documents) this would help narrow our call on Thursday.

Thank you.

Nicole

---

**From:** nicole@mayerlawflorida.com <nicole@mayerlawflorida.com>
**Sent:** Saturday, December 23, 2023 12:14 PM
**To:** 'Barbara Fox' <bf@kubickidraper.com>; 'Michael J. Carney' <mjc@kubickidraper.com>; 'Lily Wong' <LW@kubickidraper.com>
**Cc:** 'Victoria Roytenberg' <VRoytenberg@ppsl.org>; 'Jennifer Thelusma' <Jthelusma@ppsl.org>; 'Rebecca Eisenbrey' <REisenbrey@ppsl.org>
**Subject:** RE: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issues

On the 4th, we are available 11-12 or 12:30-2:45.

---

**From:** Barbara Fox <bf@kubickidraper.com>
**Sent:** Friday, December 22, 2023 2:51 PM
**To:** 'nicole@mayerlawflorida.com' <nicole@mayerlawflorida.com>; Michael J. Carney <mjc@kubickidraper.com>; Lily Wong <LW@kubickidraper.com>
**Cc:** 'Victoria Roytenberg' <VRoytenberg@ppsl.org>; 'Jennifer Thelusma' <Jthelusma@ppsl.org>; 'Rebecca Eisenbrey' <REisenbrey@ppsl.org>
**Subject:** RE: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issues

I am guessing that due to the holidays the 4th is probably more feasible.  Let me know the times you are available.

---

**From:** nicole@mayerlawflorida.com [mailto:nicole@mayerlawflorida.com]
**Sent:** Friday, December 22, 2023 2:37 PM
**To:** Barbara Fox; Michael J. Carney; Lily Wong
**Cc:** 'Victoria Roytenberg'; 'Jennifer Thelusma'; 'Rebecca Eisenbrey'
**Subject:** RE: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issues

Thank you, Barbara. Please let us know if having a call at 2:30 on Tuesday January 2nd would allow enough time for you to consider the discovery issues raised in our letter and to confer with you client if you deem necessary. If not, we are free most of the 3rd and the 4th as well.

Thank you and Happy Holidays to all.

Nicole

---

**From:** Barbara Fox <bf@kubickidraper.com>
**Sent:** Friday, December 22, 2023 11:56 AM
**To:** 'nicole@mayerlawflorida.com' <nicole@mayerlawflorida.com>; Michael J. Carney <mjc@kubickidraper.com>; Lily Wong <LW@kubickidraper.com>
**Cc:** 'Victoria Roytenberg' <VRoytenberg@ppsl.org>; 'Jennifer Thelusma' <Jthelusma@ppsl.org>; 'Rebecca Eisenbrey' <REisenbrey@ppsl.org>
**Subject:** RE: Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issues

Hi Nicole,
We can agree to extend the deadline and speak after the new year.   Happy Holidays.



Barbara Fox
Shareholder

Direct   (305) 982-6716
Fax       (305) 374-7846
bf@kubickidraper.com
9100 S. Dadeland Blvd., Suite 1800
Miami, Florida 33156

Committed to DEI, and proudly certified: RING Platinum 

---

**From:** nicole@mayerlawflorida.com [mailto:nicole@mayerlawflorida.com]
**Sent:** Thursday, December 21, 2023 8:44 PM
**To:** Michael J. Carney; Lily Wong; Barbara Fox

**Cc:** 'Victoria Roytenberg'; 'Jennifer Thelusma'; 'Rebecca Eisenbrey'
**Subject:** Roberson v. HCI - Meet and Confer Re: Outstanding Discovery Issues

Counsel,

Attached is a meet and confer letter regarding several outstanding discovery issues. Specifically, issues related to HCI's Responses and Production to Plaintiffs' Third Set of RFPs, HCI's Production in Response to Court Order No. 133, and FEI's Production and Responses to Plaintiffs' Second Set of RFPs.

Given the number of outstanding discovery issues, the upcoming holidays, and the pending court deadlines, would Defendants agree to extend Plaintiffs' deadline for moving to compel on any of these discovery issues until January 9th? Our goal would be to conclude the meet and confer discussions by January 4th so that we would have time to draft any necessary motions to compel prior to the 9th.

If Defendants are willing to grant this request, we will draft a motion reflecting this agreement.

Thank you.

Nicole

# Exhibit D

| | |
|---|---|
| **From:** | Rebecca Eisenbrey |
| **To:** | Michael J. Carney |
| **Cc:** | Clay Losier; Lily Wong |
| **Subject:** | RE: Response |
| **Date:** | Thursday, January 11, 2024 4:59:00 PM |

Okay. Does this mean you are no longer seeking an extension of the deadline for your response?

-----Original Message-----
From: Michael J. Carney <mjc@kubickidraper.com>
Sent: Thursday, January 11, 2024 4:46 PM
To: Rebecca Eisenbrey <REisenbrey@ppsl.org>
Cc: Clay Losier <nicole@mayerlawflorida.com>; Lily Wong <lw@kubickidraper.com>
Subject: Re: Response

They are, Rebecca, and I agree with your e-mail. We are working on our response to the motion to certify right now, which is due tomorrow.

I'll have to look at this on Saturday, I'll endeavor to get you an update tomorrow, but the timing overlaps on these deadlines.

Mike

Sent from my so-called "smartphone" so please excuse any obvious spellcheck errors.

> On Jan 11, 2024, at 3:35 PM, Rebecca Eisenbrey <REisenbrey@ppsl.org> wrote:
>
> Hi Mike,
>
> Just checking in on this. Our MTC is due on Tuesday, and we need to know what issues that we raised in our letter have been resolved and what we still need to move to compel. From our conversation on Friday, it seemed like indexes and supplemental productions were almost ready to go. We'd rather not waste our time - and the Court's time - briefing issues unnecessarily.
>
> Thanks,
>
> Becca
>
> -----Original Message-----
> From: Rebecca Eisenbrey
> Sent: Wednesday, January 10, 2024 3:58 PM
> To: Michael J. Carney <mjc@kubickidraper.com>; Clay Losier <nicole@mayerlawflorida.com>
> Subject: RE: Response
>
> Hi Mike,
>
> Sorry for the delay. We can agree to the extension if (a) you can assure us that by COB tomorrow you will produce the indexes and a substantial amount of the documents we discussed last week, let us know whether HCI ran the search terms/custodians we agreed to pursuant to ECF No. 133, and clarify exactly which requests Defendants refuse to produce any documents in response to, and (b) by the end of this week we can nail down depo dates (both for FEI and for Cooke/Bonds/Shelpman/Blackwell).
>
> Happy to discuss.
>
> Becca

>
> -----Original Message-----
> From: Michael J. Carney <mjc@kubickidraper.com>
> Sent: Wednesday, January 10, 2024 12:11 PM
> To: Rebecca Eisenbrey <REisenbrey@ppsl.org>; Clay Losier <nicole@mayerlawflorida.com>
> Subject: Response
>
> Guys
>
> As you can probably guess, Barbara is doing the lions share of the response, she asked me to inquire if you would agree to an extension through Tuesday (it's currently due Friday), couple other issues in other cases we are both dealing with. Let me know and thank you!
>
> Mike
>
> Sent from my so-called "smartphone" so please excuse any obvious spellcheck errors.
>
>
> Michael J. Carney
> Shareholder
>
> Direct   (954) 713-2323
> Fax       (954) 768-0514
>
> Kubicki Draper
> 110 E. Broward Blvd., Suite 1400
> Fort Lauderdale, Florida 33301
>

# Exhibit E

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
### West Palm Beach Division

| | |
|---|---|
| BRITTANY ROBERSON, REBECCA FREEMAN, BIANCA VIÑAS, TIFFANY KING, and TRESHA THOMPSON, individually and on behalf of others similarly situated, *Plaintiffs, v.* HCI COLLEGE LLC (DBA HEALTH CAREER INSTITUTE LLC), FLORIAN EDUCATION INVESTORS LLC, and STEVEN W. HART, *Defendants*. | Civil Action No. 9:22-cv-81883-RAR |

Defendant, HCI COLLEGE LLC (DBA HEALTH CAREER INSTITUTE LCC) ("HCI" or "Defendant"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 34, hereby files its Responses and Objections to Plaintiffs' Third Set of Request for Production dated November 2, 2023, as follows:

### General Statement

These responses are made solely for the purpose of this action, and are made without waiving: (1) the right to object, on the grounds of competency, proprietary, admissibility, privilege, relevancy or materiality, or any other proper grounds, to the use of these responses for any purposes in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other interrogatories or requests for production or other discovery procedures involving or relating to the subject matter of these Requests for Documents; and (c) the right at any time to revise, correct, add to or clarify any of the responses provided herein.

1

The responses herein reflect only the present state of Defendant's recollection and the present state of discovery. Defendant has not yet completed its investigation of the facts relating to this action, has not yet completed its discovery in this action and has not yet completed its preparation for trial. Moreover, as discovery investigation and legal research progress, new facts may be discovered and previously known facts may take on new meaning or significance, thereby changing any conclusions, opinions, representations, objections and/or statements made herein. Consequently, Defendant expressly reserves the right to rely on, at any time including trial, subsequently discovered information or information omitted from these responses as a result of mistake, error, oversight, inadvertence, further diligence, or otherwise.

Except for facts explicitly admitted herein, no admissions or any nature whatsoever are implied or should be inferred. The fact that any Requests for Documents herein has been answered should not be taken as an admission or acceptance of the existence of any facts set forth or assumed by such Document Request, or that such answer constitutes admissible evidence. Except otherwise stated below, an objection to a specific Request for Documents does not imply that facts or documents response to the specific Request for Documents exist. Any response herein is not intended as, and shall not be deemed to be, a waiver of any objection set forth herein. Defendant expressly reserves the right to raise any applicable objection at any time.

## General Objections

Preliminarily, and as a general objection applicable to all of the following specific requests for production contained in Plaintiffs' Third Set of Requests for Production that reference the words "documents" and/or "relating to," and "communications". As set forth below, Defendant objects as the terms "documents" and "relating to," and "communications," even as defined, are so broad, as to provide no meaningful guidance as to what is being sought by this request and this broadness

2

would make any effort to compile responsive items unduly burdensome. For example, the definition of "communications" means any conveyance of information, whether reciprocated or not, from one party to another, and all records thereof, making it impossible to discern exactly what is being sought.   Similarly vague and broad is the term, "document"" which means any written or recorded matter of every kind or description. The terms "related to" "reflect" and "reflecting" is likewise so broad, particularly when coupled with the terms "communications" and "documents", that is impossible for Defendant to determine what is being sought to as to perform a reasonable                                                                          search.

**Specific Responses to Third Set of Requests for Production of Documents**

1.                        All profit and loss statements, balance sheets, income statements, and statements of cash flows.

**Defendant objects as to the fact that profit and loss statements, balance sheets, income statements, and statements of cash flow are not defined and are so overly broad, vague and ambiguous as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.   To the extent that Plaintiffs seek information pertaining to HCI's net worth as to the sole punitive damages claim against HCI arising from Count 9, such claim is limited to "the lesser of $500,000 or 1 per centum of the net worth of the creditor." See 15 U.S.C.A. § 1691e (b).   Thus, the discovery of what appears to be seek all financial records is burdensome as described above and not proportionate to the needs of the case.   Rule 26(b)(1)**

3

**provides, discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."   Here such all encompassing requests for financial records to determine one percent of the Defendant's net worth, which would be relevant only if Plaintiffs prevailed as to count IV is not proportionate to the needs of the case since it is of minimal importance in resolving the issues of the case, and HCI is a small organization which has already produced in excess of 20,000 pages of documents and this has created a significant burden in terms of time spent and resources allocated away from the needs of the business.**

2.      All documents concerning or relating to audits of the documents referenced in Request 1, and all communications relating to same Request 1, and all communications relating to same.

**As set forth above, Defendant objects as to the fact that profit and loss statements, balance sheets, income statements, and statements of cash flow are themselves irrelevant are so overly broad, vague and ambiguous as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.   Likewise, Defendant objects as to the fact that all "documents concerning or related to" and "communications relating to" profit and loss statements, balance sheets, income statements, and statements of cash flow or audits of same are irrelevant and are so overly broad, vague and ambiguous as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to**

compile responsive items unduly burdensome.   Also, the term communications is overly broad, vague and ambiguous and does not define the individuals whose communications are sought or otherwise define parameters and moreover, it is difficult to discern how all communications related to such financial papers has any realistic benefit to the issues raised in the complaint.

To the extent that Plaintiffs seek information pertaining to net worth on the sole punitive damages claim against HCI arising from Count 9, such claim is limited to "the lesser of $500,000 or 1 per centum of the net worth of the creditor."   See 15 U.S.C.A. § 1691e (b).   Thus, the discovery of what appears to be every record pertaining to the "loss statements, balance sheets, income statements, and statements of cash flows" is not in proportion to the needs of the case.  Rule 26(b) (1) provides, discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."     Here such all encompassing requests for financial records given to determine one percent of the Defendant's net worth, which would be relevant only if Plaintiffs prevailed as to count IV is not proportionate to the needs of the case since it is of minimal importance in resolving the issues of the case, and HCI is a small organization which has already produced in excess of 20,000 of pages of documents and this has created a significant burden in terms of time spent and resources allocated away from the needs of the business.

3.     All documents related to the "integrity" of the ATI tests and Kaplan tests that HCI used, or considered using, during 2021, as discussed by Alecia Dennis during her 30(b)(6) deposition (e.g., 115:5-11, 132:23-24). This includes all documents relating to concerns about test integrity, "anomaly reports," communications with vendors regarding test integrity, internal communications regarding test integrity, communications with students regarding test integrity, and documents reflecting disciplinary actions or potential disciplinary actions related to test integrity.

**Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought. Specifically the terms "all documents" "relating to concerns about test integrity" as well as "communications regarding test integrity", and "documents regarding disciplinary actions" and "potential disciplinary actions related to test integrity", so overly broad, vague and ambiguous as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome. Likewise, the term internal communications and communications with students is overly broad, vague and ambiguous and without further parameters does not define the individuals among whom such communications are sought.**

**Nonetheless, and without waiving any objections HCI will provide documents responsive to this request as those terms can be discerned and readily understood.**

4 .            Each monthly "Operation Report," as that term is used in the Authorization Guidelines found at HCI004133-4167, and all communications regarding same.

**Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought. Specifically the terms, all communications regarding same, which is so overly broad, vague and ambiguous as to provide no meaningful guidance as to what is being**

7

sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.   Further, Rule 26(b)(1) provides, discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."   Given the allegations of the case, the need for all communications regarding same, with no parameters is not proportionate to the needs of the case.   Specifically, and HCI is a small organization which has already produced in excess of 20,000 of pages of documents and this has created a significant burden in terms of time spent and resources allocated away from the needs of the business.

Notwithstanding and without waiving the above, HCI is producing its operational reports and emails that accompany their dissemination.

5.    All communications concerning the preparation and distribution of FEI newsletters, investor reports, and investor presentations, including all emails sent from, or received by, an HCI email address that mentions, attaches, or relates to information or material to be distributed or shared with any FEI investor or potential investor.

Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought Specifically, all "communications" concerning the "preparation and distribution of newsletters, reports and presentations and all emails" that "attach or relates to information or materials to be distributed or shared with any FEI investor or potential investor" is so overly broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought by this request and this broadness

would make any effort to compile responsive items unduly burdensome; this is particularly true here since the words "information" and "material" are themselves vague and overly broad. Regardless, this request is irrelevant to the allegations of the complaint; this is not a case filed by investors against FEI, rather, it pertains to students at HCI seeking relief from what they claim is a "subpar" educational experience so that investor newsletters and communications regarding same are irrelevant. Further, Rule 26(b)(1) provides, discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Specifically, and HCI is a small organization which has already produced in excess of 20,000 of pages of documents and this has created a significant burden in terms of time spent and resources allocated away from the needs of the business.

Notwithstanding and without waiving the above, HCI is producing investor presentations and related documents and communications which appear specifically related to same to the best of its ability to do so given the broadness and vagueness of the subject request.

6.      All external audits and/or reviews of HCI's enrollment process, including the admissions process, financial aid process, and any other process used to aid in enrolling students in HCI's RN Program, and all communications regarding same.

Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought. Specifically, "all communications regarding same" is so overly broad and without

indicating the individuals to whom such communications were made or received, and without further parameters, is so vague and ambiguous, and overly broad so as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.

Notwithstanding and without waiving the above, HCI has produced external audits and/or reviews of HCI's enrollment process via previous discovery responses.

7.     All internal audits and/or reviews of HCI's enrollment process, including the admissions process, financial aid process, and any other process used to aid in enrolling students in HCI's RN Program, and all communications regarding same.

Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought Specifically, all communications regarding same is so overly broad and without indicating the individuals to whom such communcations were made or received, and without further parameters, is so vague and ambiguous, and overly broad so as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.

Notwithstanding and without waiving the above, HCI is producing audits and reviews to the best of its ability to do so given the broadness and vagueness of the subject request.

8.     All Nursing Curriculum Committee meeting or decision notes concerning the planning, development, approval, and/or launch of the "new" RN Program at HCI's West Palm Beach Campus. For this request, the time period is July 2017 through December 2019.

Defendant is producing responsive documents.

1

9.      All Nursing Curriculum Committee meeting or decision notes concerning the choice of Exit Exam (meaning the last exam taken by students in HCI's Capstone course before they are cleared for graduation) used by HCI.

**Defendant is producing responsive documents.**

10.      All notes from ExCom meetings, as discussed by Steven Hart in his deposition, concerning advancement and graduation requirements for the RN Program, the use of examinations in the RN Program, and/or RN Students' preparation for and performance on the NCLEX-RN.

**Defendant is producing responsive documents.**

11.      All written evaluations and/or performance reviews for RN Program instructors conducted on a semester or annual basis, as testified to by Alecia Dennis in her 30(b)(6) deposition. *See* Dennis Dep. Tr. 233:22-234:13.

**Defendant is producing responsive documents.**

12.      All "secret shopping," hidden shopping, or undercover reviews or reports of interactions between HCI employees and consumers during the Relevant Period, as discussed by Pedro De Guzman during his 30(b)(6) deposition, and all communications regarding same.

**Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought Specifically, all communications regarding same is so overly broad and without indicating the individuals to whom such communications were made or received, without further parameters, is so vague and ambiguous, and overly broad so as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.**

**Notwithstanding and without waiving the above, HCI has produced responsive documents,     including secret shopper records and other performance evaluations     in     previous     discovery.**

1

13.     All "written processes" regarding curriculum creation and changes to curricula, as discussed by Alecia Dennis during her 30(b)(6) deposition, and all communications regarding same. *See* Dennis Dep. Tr. 75:18-76:1.

**Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought Specifically, all communications regarding same is so overly broad and without indicating the individuals to whom such communications were made or received, and without further parameters, is so vague and ambiguous, and overly broad so as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.   Further, it appears that Ms. Dennis specifically did not specifically identify the existence of any "written process" in the quoted parts of her deposition.**

14.     All "written processes" regarding student advancement in the RN Program, as discussed by Alecia Dennis in her 30(b)(6) deposition, and all communications regarding same. *See* Dennis. Dep. Tr. 76:23-77:6.

**Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought Specifically, all communications regarding same is so overly broad and without indicating the individuals to whom such communications were made or received, and without further parameters, is so vague and ambiguous, and overly broad so as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.**

**Notwithstanding and without waiving same, all requested processes are in the Catalogs and Nursing Handbooks, which have been provided.**

1

15.    All documents concerning HCI's dealings with Tatsiana Tuchinsky and/or EduCompliance Strategies, LLC, including all agreements for services; written communications between HCI and Tatsiana Tuchinsky and/or EduCompliance Strategies, LLC; attachments to those written communications; and any notes, summaries, or reports generated by Tatsiana Tuchinsky and/or EduCompliance Strategies, LLC concerning HCI.

**Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought Specifically, document "concerning HCIs dealings with Tatsiana TUchinksy and/or EduCompliance Strategies, LLC" is so overly broad so vague and ambiguous, and overly broad so as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.   The terms "dealings with" is also not defined as appears to the extent it should have some specific meaning, none can be readily discerned and additionally, appears to seek all documents and is not limited to those not pertaining to the allegations of the lawsuit and therefore this request is irrelevant.**

16.    All communications made by HCI to RN Students regarding HCI's probationary status with the Florida Board of Nursing, or lack thereof, during the Relevant Period.

**Objection since HCI is a corporation and cannot "communicate" However, to the extent this request seeks information or statements formally disseminated on behalf of HCI, such documents will be produced.**

1

**17.**     All documents relating to the Equity Appreciation Rights Plan referenced in the document labeled HCI Sub. Prod. 4/24/23 – 003858, produced in response to Plaintiffs' subpoena to the Commission for Independent Education, including all participant award letters related to the issuing of Appreciation Rights Shares**.**

**Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought Specifically, all documents relating to is so overly broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.   Regardless, this request is wholly irrelevant to the allegations of the complaint; this is not a case filed by investors or shareholders against FEI, rather, it pertains to students at HCI seeking relief from what they claim is a "subpar" educational experience so that share distribution or appreciation is irrelevant Further, Rule 26(b)(1) provides, discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."   Specifically, and HCI is a small organization which has already produced in excess of 20,000 of pages of documents and this has created a significant burden in terms of time spent and resources allocated away from the needs of the business.**

18.     All documents regarding HCI's relationship with Sachs Media, including but not limited to:

1

a.      All contracts, operating agreements, or other Documents establishing, governing, or describing the business relationship between Sachs Media and HCI, including but not limited to, the scope of the work, the purpose of the work, and the compensation for the work;

**This request is wholly irrelevant to the allegations of the complaint.   The business relationship between the two entities has no bearing on the allegations of the complaint and this request appears to be a fishing expedition and otherwise harassing.**

b.      All emails, text messages, correspondence, or other communications, as well as any corresponding attachments, between HCI and Sachs Media, or any anyone acting on behalf of, or in the interest of, HCI between September 1, 2019, the present; and

**Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought.   Specifically, HCI is a corporation and therefore does not communicate and without identifying the individuals for whom such information is transmitted from or to and without further parameters. this request is overly broad so as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome Moreover, the term "anyone acting of behalf of  or in the interest of HCI," is so woefully and unduly broad, vague and ambiguous that it also provides no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome if not impossible. Given the allegations of the case, the need for the information appears to be a fishing expedition and otherwise harassing.   Further culling though all correspondence for anyone acting on behalf of or in the interest of HCI for a four year period, or from Sachs Media on matters not even related to the allegations of the complaint, is irrelevant and is so burdensome, that it is untenable.   It appears to be nothing more than a fishing expedition.   It is also not proportional to the needs of the case. Specifically, and HCI is a small organization which has already produced in excess of 20,000 of pages of documents and this has created a significant burden in terms of time spent and resources allocated away from the needs of the business.**

c.      All Documents pertaining to the "HCI College Statement on the Roberson Lawsuit February 3, 2023," including but not limited to: all drafts of this statement

1

(including drafts with comments), all communications about this statement, and all documents discussing or concerning how it was determined that "at least 300 graduates . . . have passed the National Council Licensure Examination" as that phrase is used in the February 3, 2023, statement.

**Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought Specifically, the phrases all documents "pertaining to" "all documents discussing or concerning" are so overly broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome. Further, communications without identifying the individuals to whom such communications were made or received, and without further parameters without make, is so vague and ambiguous, and overly broad so as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome. Further, it is unclear how any documents compiled after the lawsuit have any relevance to the allegations of the complaint which pre-dated same and none of which are premised on the statements contained therein- as such this discovery is irrelevant; there are no allegations of the complaint based on the February 3, 2023 statement and what action it took after is irrelevant.**

19.     All logs or other records showing RN Student attendance at clinical sites, as discussed by Pedro De Guzman during his 30(b) (6) deposition.

**Responsive documents will be produced.**

20.     All fisdap.com clinical sign-up records.

**Responsive documents will be produced.**

21.     Accounting records, including order sheets, inventory checklists, and related receipts, showing money spent on simulated clinical labs, as discussed by Alecia Dennis during her 30(b)(6) deposition.

**Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought Specifically, the terms "accounting records and related receipts" is so overly broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.**

1

**Further, HCI does not keep records in the manner described.  Without waiving such objections, HCI will produce records which track spending on simulated clinical labs as kept in the course of business as discussed above.**

22.          "Historical data" regarding equipment used in simulations, as discussed by Alecia Dennis during her 30(b)(6) deposition (246:2).

**Responsive documents will be produced.**

23.    Lease agreements with Blue State and other lessors of lab equipment, as discussed by Steven Hart during his deposition.

**Responsive documents will be produced.**

24.    All invoices from advertising and/or marketing companies, all contracts for services with such companies, and all communications regarding same.

**Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought. Specifically, the terms all communications regarding same is so overly broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.  Further, any such documents with marketing or advertising companies is wholly irrelevant to the allegations of the complaint; the contracts, payment and any communications relating thereto are wholly irrelevant to the present lawsuit.**

**25.    Work produced by SEM Management, Heart Globe Enterprises, and similar companies to carry out HCI's marketing during the relevant time period, including marketing and advertising plans, SEO directives, and market research, and all communications regarding same.**

Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought. Specifically, the term "work" is not defined all communications regarding same is so

1

overly broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.   Further, this requires is overly broad to the extent it seeks documents have no relation to the allegations of the complaint.   To the extent, Plaintiffs seek marketing plans, same have already been produced.   Likewise, statements prepared by Sem Management related to the complaint have been produced.

**26.**   All contracts with Facebook, Google, and any other similar third party for marketing or SEO services, and all communications regarding same**.**

**Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought. Specifically, all communications regarding same is so overly broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.   Further, this request is irrelevant as they seek documents have not relation to the allegations of the complaint since the contracts for marketing have bearing to the allegations of the complaint and therefore appear to be nothing more than a fishing expedition.**

27.   All documents sufficient to show which instructor(s) taught each core nursing course, as that term is used in HCI's College Catalog, at each HCI campus during each semester in the Relevant Period.

**Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought. Specifically, the term "sufficient to show"  same is so overly broad, vague and ambiguous so as to**

1

**provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.**

**Notwithstanding and without waiving same, Defendant is producing records as kept in the normal course of business reflecting professor assignments.**

28.    All documents, including communications, reflecting payments made by HCI to, or on behalf of, FEI and/or its employees or principals, including invoices, billing statements, account statements, and/or receipts**.**

**Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought Specifically, all documents and communications reflecting payments to is so overly broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome, particularly where there is no guidance as to whom the communications are directed to or received from and no further parameters given.  Further, given the allegations of the case, the need for the information requested is not relevant since it has nothing to do with same. The allegations of the complaint take issue with the fact that the education product was "subpar" or not what was promised and do not hinge on or are in any way dependent on disbursements to Florian.  As such, this appears to be harassing and a fishing expedition.**

29.    **All documents establishing the qualifications of any consulting or testifying expert(s) retained by Defendants in this case, including but not limited to their most recent CV or resume, publications, and expert reports submitted in other actions.**

**A copy of experts CV and list of publications will be produced.**

1

# Exhibit F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:22-cv-81883- RAR

BRITTANY ROBERSON, REBECCA
FREEMAN, BIANCA VIÑAS, TIFFANY
KING, and TRESHA THOMPSON,
individually and on behalf of others
similarly situated,

       Plaintiffs,

v.

HEALTH CAREER INSTITUTE LLC (dba
HCI COLLEGE LLC and HCI ACQUISITION LLC),
FLORIAN EDUCATION INVESTORS LLC, and
STEVEN W. HART,

       Defendant(s)

## DEFENDANT, FLORIAN EDUCATION INVESTORS LLC,
## RESPONSES TO PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF
## DOCUMENTS DATED NOVEMBER 2, 2023

       Defendant, FLORIAN EDUCATION INVESTORS LLC ("Florian" or "Defendant"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 34, hereby files its Responses and Objections to Plaintiffs' Second Set  of Request for Production dated November 2nd , 2023, as follows:

## General Statement

       These responses are made solely for the purpose of this action, and are made without waiving: (1) the right to object, on the grounds of competency, proprietary, admissibility, privilege, relevancy or materiality, or any other proper grounds, to the use of these responses for any purposes in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the

1

right to object on any and all grounds, at any time, to other interrogatories or requests for production or other discovery procedures involving or relating to the subject matter of these Requests for Documents; and (c) the right at any time to revise, correct, add to or clarify any of the responses provided herein.

The responses herein reflect only the present state of Defendant's recollection and the present state of discovery. Defendant has not yet completed its investigation of the facts relating to this action, has not yet completed its discovery in this action and has not yet completed its preparation for trial. Moreover, as discovery investigation and legal research progress, new facts may be discovered and previously known facts may take on new meaning or significance, thereby changing any conclusions, opinions, representations, objections and/or statements made herein. Consequently, Defendant expressly reserves the right to rely on, at any time including trial, subsequently discovered information or information omitted from these responses as a result of mistake, error, oversight, inadvertence, further diligence, or otherwise.

Except for facts explicitly admitted herein, no admissions or any nature whatsoever are implied or should be inferred. The fact that any Requests for Documents herein has been answered should not be taken as an admission or acceptance of the existence of any facts set forth or assumed by such Document Request, or that such answer constitutes admissible evidence. Except otherwise stated below, an objection to a specific Request for Documents does not imply that facts or documents response to the specific Request for Documents exist. Any response herein is not intended as, and shall not be deemed to be, a waiver of any objection set forth herein. Defendant expressly reserves the right to raise any applicable objection at any time.

**<u>General Objections</u>**

Preliminarily, and as a general objection applicable to all of the following specific requests for production contained in Plaintiffs' Second Set of Requests for Production that reference the words "documents" and/or "relating to," and "communications". As set forth below, Defendant objects as the terms "documents" and "relating to," and "communications" as defined, are so broad, as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome. For example, the definition of "communications" means any conveyance of information, whether reciprocated or not, from one party to another, and all records thereof, making it impossible to discern exactly what is being sought.  Similarly vague and broad is the term, "document" which means any written or recorded matter of every kind or description. The terms "related to" "reflect" and "reflecting" is likewise so broad, particularly when coupled with the terms "communications" and "documents", that is  impossible for Defendant to determine what is being sought        to        as        to        perform        a        reasonable        search.

**<u>Specific Responses to First Set of Requests for Production of Documents</u>**

1.       All FEI investor newsletters and investor reports drafted and/or distributed during the relevant period and all communications regarding same.

**Defendant will respond in part to this request, and object in part.**

**FEI objects on the grounds that the request is overbroad; specifically, that the phrase "communications regarding" the investor newsletters and investor reports is so overly broad, vague and ambiguous as to provide no meaningful guidance as to what is being sought, and FEI contends that this overbreadth would make any effort to compile responsive items unduly burdensome.**

**Further, while the term "related to" is defined, the term "regarding" is not and the use of one term rather than the other leaves Defendant guessing as to whether it is ascribed a different meaning.   Regardless, all communications regarding newsletters and reports would appear to be irrelevant to the allegations of the complaint; this is not a case filed by investors against FEI, rather, it pertains to students at HCI seeking relief from what they claim is a "subpar" educational experience so that investor newsletters and communications from Florian are irrelevant.**

**Further, Rule 26(b)(1) provides that discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely**

4

benefit." Given the allegations of the case, the need for all communications regarding newsletters and reports is not proportionate to the needs of the case and appears to be a fishing expedition.

<u>**Notwithstanding and without waiving the above, Florian is producing reports provided to investors during the relevant time. Florian does not produce or disseminate "newsletters" as that term is readily understood.**</u>

2.     All documents relating to FEI investor presentations made during the Relevant Period, including electronic calendar invitations, applicable slide decks and power point presentations, and any communications regarding each presentation.

**Defendant objects as to the fact that "all documents related to" and "communications" regarding the investor newsletters and investor reports is so overly broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome. Further, while the terms, "related to" is defined, "regarding" is not and the use of one term rather than the other leaves this Defendant guessing as to whether it is ascribed a different meaning. Regardless, all documents and communications related to same, as those terms are defined, and regarding same are irrelevant to the allegations of the complaint; this is not a case filed by investors against FEI, rather, it pertains to students at HCI seeking relief from what they claim is a "subpar" educational experience so that investor newsletters and communications regarding same are irrelevant. Further, Rule 26(b)(1) provides, discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'**

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Given the allegations of the case, the need for all documents and communications relating Investor presentations is not proportionate to the needs of the case and appears to be a fishing expedition.

<u>Notwithstanding and without waiving the above, Florian is producing investor presentations and related documents and communications to the best of its ability to do so given the broadness and vagueness of the subject request.</u>

    3.      Each "Operation Report," as that term is used in the Authorization Guidelines found at HCI004133-4167, and any communications regarding same.

      **None.**

    4.      All documents, including communications, concerning or referencing HCI's termination of the "old" RN Program at its West Palm Beach campus and/or HCI's ending its use of NCLEX code 70755.

      **None.**

    5.      All documents, including communications, concerning or referencing HCI's launch of the "new" RN Program at its West Palm Beach campus and/or HCI's beginning its use of NCLEX code 704146.

      **None.**

    6.      All documents, including communications, concerning or referencing HCI's attempts to gain programmatic accreditation during the Relevant Time Period.

      **None.**

    7.      All documents, including communications, concerning or referencing  HCI's NCLEX-RN passage rates or probationary status with the Florida Board of Nursing.

      **None.**

    8.      The following regarding FEI's relationship with Sachs Media:

      **None.**

          a)  All contracts, operating agreements, or other Documents establishing, governing, or describing the business relationship between Sachs Media and FEI, including but not limited to, the scope of the work, the purpose

of the work, and the compensation for the work;

b) All emails, text messages, correspondence, or other communications, as well as any corresponding attachments, between FEI and Sachs Media any anyone acting on behalf of, or in the interest of, FEI between September 1, 2019, the present;

c) All Documents pertaining to the "HCI College Statement on the Roberson Lawsuit February 3, 2023," including but not limited to: all drafts of this statement (including drafts with comments), all communications about this statement, and all documents discussing or concerning how it was determined that "at least 300 graduates . . . have passed the National Council Licensure Examination" as that phrase is used in the February 3, 2023, statement; and

d) All Documents regarding this lawsuit, *Roberson et al. v. Health Career Institute LLC et al.*, S.D. Fla. Case No. 9:22-cv-81883-RAR**.**

9.      All documents, including communications, related to FEI's involvement in the preparation of federal and state tax documents that reflect the earnings, losses, and expenses of HCI.

**Defendant objects as to the request as a whole since it is so broad, vague and ambiguous so as to provide no meaningful guidance as to what is being sought. Specifically the terms "all documents", "communications", "related to", "involvement" and "that reflect" so overly broad, vague and ambiguous as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome. Regardless, such documents are irrelevant to the allegations of the complaint; this is not a case filed by investors against FEI, rather, it pertains to students at HCI seeking relief from what they claim is a "subpar" educational experience so that investor newsletters and communications regarding same are irrelevant. To the extent that Plaintiffs seek information pertaining to net worth and the sole punitive damages claim against HCI arising from Count 9, such claim is limited to "the lesser of $500,000 or 1 per centum of the net worth of the creditor."   See 15 U.S.C.A. § 1691e (b).       Thus, the discovery of every record pertaining to the "preparation of**

federal and state tax documents that reflect the earnings, losses, and expenses of HCI" is not proportional to the needs of the case.   Rule 26(b)(1) provides, discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Further, this request is similar to Plaintiffs' First Request to Produce Number 14, which states: "Provide all tax returns Florian has prepared for HCI, including federal corporate income tax returns, state income tax returns, and state property tax returns."   Florian objected to this request and Plaintiffs did not move to compel same and therefore, have waived same.   To the extent that Plaintiff is improperly trying to overcome Florian's   previous objections, it again asserts that this request is "irrelevant and therefore appears harassing and is otherwise invasive, particularly in this stage of the proceedings."

    10.    All profit and loss statements, balance sheets, income statements, and statements of cash flows.

Defendant objects as to the fact that profit and loss statements, balance sheets, income statements, and statements of cash flow are irrelevant are so overly broad, vague and ambiguous as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.

Regardless, all the items requested in #10 are irrelevant to the allegations of

9

the complaint; this is not a case filed by investors against Florian, rather, it pertains to students at HCI seeking relief from what they claim is a "subpar" educational experience so the request pertaining to Florian's finances is irrelevant. Moreover, there is no pending punitive damage claim against Florian. Rule 26(b)(1) provides, discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Given the allegations of the case, as discussed, the need for the requested and irrelevant financial information is not proportionate to the needs of the case and appears to be a fishing expedition.

11.     All documents concerning or relating to audits of the documents referenced in Request 10, and all communications relating to same.

Defendant objects as to the fact that all "documents concerning or related to" and "communications relating to" profit and loss statements, balance sheets, income statements, and statements of cash flow are irrelevant and are so overly broad, vague and ambiguous as to provide no meaningful guidance as to what is being sought by this request and this broadness would make any effort to compile responsive items unduly burdensome.    Regardless, all the items requested are irrelevant to the allegations of the complaint; this is not a case filed by investors against Florian, rather, it pertains to students at HCI seeking relief from what they claim is a "subpar" educational experience so the request pertaining to Florian's finances is

irrelevant.   Moreover, there is no pending punitive damage claim against Florian. Rule 26(b)(1) provides, discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."   Given the allegations of the case, as discussed, the need for the requested and irrelevant financial information is not proportionate to the needs of the case and appears to be a fishing expedition.

12.     All documents establishing the qualifications of any consulting or testifying expert(s) retained by Defendants in this case, including but not limited to their most recent CV or resume, publications, and expert reports submitted in other actions.

**See attached.**

Exhibit G

1   spots and soft spots?

2        A.   Yes.

3        Q.   And how would you do that?

4        A.   In our ExCom meetings.

5        Q.   And do you prepare documents before the ExCom

6   meetings?

7        A.   Yes.

8        Q.   Do you prepare an agenda?

9        A.   Yes.

10       Q.   And do you distribute that to the members of

11  the ExCom?

12       A.   Yes.

13       Q.   When I say that, I'm still -- tell me if I'm

14  wrong, but I'm talking about the three of you, Mr. Hart,

15  Mr. DeGuzman and yourself.

16       A.   Yes.

17       Q.   And also in the authorization guidelines there

18  is reference to SSA as an acronym.

19            What does that stand for?

20       A.   Senior staff accountant.

21       Q.   And is that a particular person at HCI?

22       A.   It could be.

23       Q.   Right now, is there an SSA?

24       A.   No.

25       Q.   Who is the most recent SSA?



1          A.   The one now that would be referred to as an

2    SSA is our current controller.

3          Q.   The one in accounting you mentioned?

4          A.   Right.

5          Q.   What's his name again?

6          A.   Daniel Albano.

7          Q.   And before he filled that role, who was in the

8    SSA role?

9          A.   While he was there, I also had another staff

10   accountant, Roberta.  I can't think of her last name.

11              And then prior to that, when I first joined we

12   had one staff accountant, Bernadette Shaia.

13         Q.   There is a section in the authorization

14   guidelines called payroll roster and pay rate changes.

15              Is there actually a payroll roster that's kept

16   for employees of HCI College?

17         A.   I don't understand the question.

18         Q.   So is there one document that contains all the

19   payroll numbers for HCI College employees?

20         A.   You are asking me if there is a payroll

21   roster?

22         Q.   Yes.

23         A.   Yes, we have a payroll roster and we can run

24   payroll roster reports out of our payroll system.

25         Q.   Which payroll system?



RYAN MILLER                                         November 14, 2023
ROBERSON V. HCI

1        A.    Currently using Paylocity.

2        Q.    You told me since 2019 you have used that?

3        A.    Yes, I believe that's correct.

4        Q.    And is there a bonus plan at HCI?

5        A.    There has been.

6        Q.    And when I say -- I guess I used plan loosely,

7    but is there a formal bonus plan?

8        A.    For?

9        Q.    Employees in general.

10       A.    We have had bonus plans on the manager level

11   in the past and everybody would have their different

12   criteria to meet in order to be eligible.  And it also

13   was based on the fact of hitting or beating budget

14   numbers.

15       Q.    And so beating budget numbers, who would be

16   receiving a bonus if budget numbers were beat?

17       A.    It's just a general clause in there that if

18   you're not hitting the budget number, then it decreases

19   your chance of receiving a bonus.

20       Q.    And you say it's a clause in there.  In where?

21       A.    The different bonus plans.

22       Q.    So there are written plans?

23       A.    Yes.

24       Q.    And are there different plans for different

25   positions at HCI?




RYAN MILLER                                    November 14, 2023
ROBERSON V. HCI

1        A.    Yes.

2        Q.    So do, for example, do you have a bonus plan?

3        A.    No, I don't.

4        Q.    Does the director of financial aid have a

5    bonus plan?

6        A.    No.

7        Q.    Does the director of admissions have a bonus

8    plan?

9        A.    Uh-uh, no.

10       Q.    Do the admissions representatives have a bonus

11   plan?

12       A.    Absolutely not.

13       Q.    Do teachers have a bonus plan?

14       A.    Teachers could have a bonus plan for meeting

15   certain requirements, like we had an NCLEX bonus plan

16   that was paid out to faculty.

17       Q.    And what was that?  What does that mean, an

18   NCLEX bonus plan?

19       A.    If the school was 80 percent or better, there

20   was a bonus plan.

21       Q.    Would it be the same for all teachers if

22   80 percent or better get the same amount of money or is

23   it a percentage?

24       A.    I don't recall.

25       Q.    Where does that bonus plan reside, the actual



RYAN MILLER                                          November 14, 2023
ROBERSON V. HCI

1   written plan?

2        A.   I don't know.  I'd have to look for it.

3        Q.   Who would you go to if you wanted to see a

4   copy of it?

5        A.   Myself.

6        Q.   And where would you look?

7        A.   In files.

8        Q.   Which folder?  Is there a folder that has HR

9   stuff?

10       A.   I couldn't tell you which folder it's in.

11       Q.   Who would you have gotten that type of a

12  document from?

13       A.   Either I created it or Pedro helped create it.

14       Q.   Does the executive committee come up with the

15  bonus plans?

16       A.   Yes.

17       Q.   So other than teachers, who else has had a

18  bonus plan?

19       A.   The same that I mentioned before was the

20  management could have a potential bonus plan.

21       Q.   Who falls under management?  What positions?

22       A.    In the past I've had, we've had the director

23  of IT.  We've had the COO.  That's all I can remember

24  right now off the top of my head.

25       Q.   Has the director of nursing ever had a bonus



RYAN MILLER                                            November 14, 2023
ROBERSON V. HCI

```
 1   plan?
 2        A.   I don't recall.  It would be the same that I
 3   mentioned before with the NCLEx bonus plan.
 4        Q.   And the bonus plans, would these be things
 5   established at those executive committee meetings?
 6        A.   Yes.
 7        Q.   And so would they be reflected in the
 8   committee meeting notes?
 9        A.   I'm not sure.
10        Q.   Are you the keeper of the executive committee
11   meeting notes?
12        A.   Yes.
13        Q.   And if a bonus plan was established at one of
14   those meetings, would you put it in the meeting notes?
15        A.   Yes.
16        Q.   Do you recall the last bonus plan that was
17   established by the executive committee?
18        A.   No.
19        Q.   There's a place in the authorization
20   guidelines talking about auditors, an annual review of
21   auditors that says the VPF does that.
22             What is the annual review of an auditor?
23        A.   It's a annual review to make sure that as a
24   company, we're getting what we need on both the
25   financial side and the compliance side, and that the
```



```
1        A.    Somewhat.  I helped review it in its final
2   stages.
3        Q.    Do different documents have different
4   retention periods?
5        A.    Sure.
6        Q.    So like the financial documents you work on,
7   is there like a blanket retention period for them?
8        A.    It's all listed in that RDP.  So I would have
9   to pull that up to see what the --
10       Q.    It's actual called document retention policy?
11       A.    I'd have to tell you what the exact name is.
12       Q.    Okay.  Monthly financial review, I saw that
13  term used a few places.  Is that the same thing as the
14  cash flow meeting or is that different?
15       A.    No, that's monthly, as you said, and the cash
16  flow is weekly.
17       Q.    Okay.  Is the same thing looked at at monthly
18  financial review as you're looking at in the cash flow
19  meetings, or are you looking at something different?
20       A.    What do you mean?
21       Q.    Well, at cash flow meetings you said, I think
22  you agree it's kind of looking at money coming in, going
23  out, are we where we thought we would be; right?
24       A.    Yes.
25       Q.    And so the monthly financial review, is it
```



RYAN MILLER                                          November 14, 2023
ROBERSON V. HCI

```
 1   that same thing, money coming and going in that month
 2   and are we where we thought we would be?
 3        A.   So two parts to that.  Monthly financial
 4   review is reviewing your previous month's results versus
 5   budget or forecast.
 6             In that, as we went through there is the
 7   income statement, balance sheet and cash flow.  So your
 8   balance sheet cash flow show your cash on a monthly
 9   basis.  We also look at, depending on where the meeting
10   is, we will look at the weekly one as well and tie that
11   in to there.
12        Q.   And HCI sends money some way, shape or form to
13   Florian during the year, Florian Education Investors?
14        A.   Yes.
15        Q.   And is that done on a regular basis or
16   randomly?
17        A.   Typically, it's monthly.
18        Q.   And what would that be called on the HCI
19   budget?
20        A.   Distribution.
21        Q.   So there's a line item I guess you are saying
22   in the budget that says distribution?
23        A.   Yes.
24        Q.   And how much is that monthly right now?
25        A.   50,000.
```



RYAN MILLER                                          November 14, 2023
ROBERSON V. HCI

```
 1        Q.   And do you know what that money goes to?
 2        A.   It goes to the Bank of America account of FEI.
 3        Q.   Do you know what FEI does with the money when
 4   it's sent?
 5        A.   No.
 6        Q.   Who has access to that Bank of America
 7   account?
 8        A.   Steve and myself.
 9        Q.   So you can operate the Bank of America account
10   for FEI?
11        A.   I don't think I'm set up that way to operate.
12   When you say operate --
13        Q.   Like could you sign a check?
14        A.   No.  Two different things.
15        Q.   Okay.  What can you do with that account?
16        A.   I believe I can log in to see a balance if I
17   needed to.
18        Q.   Are you listed as a, like an account user,
19   account holder?  How does that work?
20        A.   I'm not sure how he set that up.
21        Q.   Is the bank permitted to speak with you about
22   that account?
23        A.   I don't know.  I doubt it.
24        Q.   So if there was a distribution from HCI to
25   Florian Education Investors and something happened and
```



# Exhibit H

```
 1    know if there's any policies regarding curriculum
 2    creation and changes to curriculum; is that right?
 3              MR. CARNEY:  That's my objection.  You just
 4         changed the word.
 5              THE WITNESS:  Right.
 6              MR. CARNEY:  I'll clarify if you want, but I
 7         won't if you don't want.  I'm just objecting to you
 8         asked two separate questions using different words.
 9         I'll clarify if you want.
10              MS. MAYER:  No, please do.
11              MR. CARNEY:  Add the word process.  Ms. Dennis
12         has already clarified the distinction between a
13         policy and a process.  Your question was exclusive
14         of the latter and I think that's unfair based on
15         what Ms. Dennis was telling you.  But go ahead.
16              MS. MAYER:  I understand.
17    BY MS. MAYER:
18         Q.   And so I'll ask, are HCI processes written
19    down?
20         A.   So yes, we have guidance on the various
21    processes we implement.
22         Q.   So regarding curriculum creation and changes
23    to curricula, are their written processes for that?
24         A.   Right.  As I said before, that would guide
25    those meetings, how we go about making those changes;
```



ALECIA DENNIS, RN 30(b)(6)                          August 14, 2023
ROBERSON ET AL V. HEALTH CAREER INSTITUTE

```
 1   yes.
 2        Q.    And would you get those from the director of
 3   nursing?
 4        A.    So the director of nursing certainly would be
 5   familiar with this, but again, ultimately you would go
 6   to your academic affairs officers in relation to those
 7   matters.
 8        Q.    And they would have written processes in
 9   place?
10        A.    So I don't know that every single process that
11   we follow is written.  Obviously, some of them are
12   standard practices.  Others would have written guidance,
13   depending on what you're discussing.
14        Q.    So how changes are made to the curriculum, is
15   there written guidance on that?
16        A.    Yes.
17        Q.    And who does that reside with?
18        A.    That would be academic affairs.
19        Q.    Okay.  And who is in academic affairs that you
20   would talk to about that?
21        A.    So your dean's office is part of academic
22   affairs, as well as your VP or chief academic officer.
23        Q.    And similar question for advancement in
24   courses, are you aware of any written policies or
25   processes that guide advancement requirements at the
```



```
 1   school?

 2        A.   So yes, and for the student that's outlined in

 3   the catalog as well.  In terms of when you repeat a

 4   course, our repeat policy for the course, those kind of

 5   things, yeah, that's something you can reference as

 6   well.

 7        Q.   So other than something that's student-facing,

 8   I'm asking about something that's kept by the school,

 9   that someone could reference and say, okay, I want to

10   know what your policy or process is on how advancement

11   occurs at the school.  Can you go somewhere and look at

12   a written version of that process or policy?

13        A.   So specifically as it relates to advancing

14   from one course to the next, you're guided by what is

15   outlined in the catalog.  I mean, that's fairly

16   transparent.  There's not a back-end side to that.  It's

17   fairly straightforward in terms of what a student

18   requires.  If you're not successful in the course, here

19   is your -- here are your options, here's the repeat

20   policy.  Both faculty and student are using that same

21   information to guide them.  It's consistent.

22        Q.   So are you saying the catalog is the written

23   policy?

24        A.   The catalog indicates what the school's

25   requirements are for course advancement.
```



# Exhibit I

1               AND AS THE AUTHORIZATION GUIDELINES SAY

2               IF YOU BRING A -- PART OF WHAT THEY DO

3               THEY HAVE TO SAY WHEN THEY'RE BRINGING

4               ON A NEW VENDOR IS MAKE IN THE

5               DECLARATION IN THE RECOMMENDATION THAT

6               THERE IS NO CONFLICT.

7    BY MS. ROYTENBERG:

8         **Q    WHO HAS THE AUTHORITY TO CHANGE THE**

9    **GUIDELINES?**

10        A    PEDRO HAS THE AUTHORITY TO RECOMMEND

11   CHANGES AND I HAVE TO AGREE TO THEM.  RYAN MAY HAVE

12   SOME AUTHORITY, TOO, IN THE CASH AREA; BUT THE

13   RECOMMENDATION MAY GO TO PEDRO AND I, IN THAT CASE,

14   BUT PEDRO.

15        **Q    SO PEDRO CAN MAKE OR RECOMMEND CHANGES**

16   **OR EDITS TO THE GUIDELINES AND YOU APPROVE THEM, IS**

17   **THAT CORRECT?**

18        A    YES.

19        **Q    AND IN WHAT CAPACITY DO YOU APPROVE**

20   **THEM?**

21        A    AS CHAIRMAN.  IT'S WRITTEN IN THE

22   GUIDELINES.

23        **Q    WE ALREADY SAID THAT EXCOM OR EXECUTIVE**

24   **COMMITTEE IS THE VP OF FINANCE, YOURSELF AS THE**

25   **CHAIRMAN, AND THE PRESIDENT AND CEO, IS THAT**

1  CORRECT?

2      A   YES.

3      Q   AND AT TIMES OTHER PEOPLE JOIN THOSE

4  MEETINGS; BUT THE COMMITTEE, ITSELF, ARE THOSE

5  THREE PEOPLE?

6      A   YES.

7          WE'VE DISCUSSED BRINGING DAVID SHELPMAN

8  IN AND I DON'T KNOW IF WE'VE DONE THAT OR NOT.

9      Q   BUT HE HASN'T BEEN PREVIOUSLY A PART OF

10  THE -- A CORE PART OF THE COMMITTEE?

11      A   CORRECT.

12      Q   THE COMMITTEE MEETS ONCE A MONTH, YOU

13  SAID, ROUGHLY?

14      A   WE MEET ONCE A MONTH.

15          IT'S IN THE AUTHORIZATION GUIDELINES

16  WHEN IT HAS TO BE.

17      Q   AND ASIDE FROM BUDGETS -- BUDGETS AND

18  BUDGETARY CONSIDERATIONS, WHAT ELSE IS DISCUSSED IN

19  THE EXCOM MEETINGS?

20      A   THAT'S IT.

21      Q   JUST THE BUDGET AND BUDGETARY

22  CONSIDERATIONS?

23      A   WE WOULD DISCUSS THE FINANCIAL RESULTS

24  AND OTHER -- AND LOOK HOW THEY DO VERSUS BUDGET OR

25  VERSUS FORECAST OR SOMETHING LIKE THAT; BUT, IT'S

**BRITTANY ROBERSON, ET AL. vs HEALTH CAREER INSTITUTE LLC, ET AL.**
Steven W. Hart on 08/17/2023

```
 1   A -- IT'S LARGELY FINANCIAL, ALTHOUGH I'M SURE WE

 2   COVER OPERATING THINGS, TOO BUT IT'S LARGELY

 3   FINANCIAL.

 4        Q    I'M GOING TO GO BACK TO SOME OTHER

 5   AUTHORIZATION GUIDELINES IN A LITTLE BIT.

 6             WHEN YOU WERE CEO OF HCI UNTIL -- LET ME

 7   GET THIS RIGHT.

 8             YOU WERE CEO OF HCI UNTIL NOVEMBER OF

 9   2019?

10        A    MAY I OFFER A CORRECTION?

11        Q    YES.

12        A    I WAS A CO-CEO.

13        Q    OKAY.  CO-CEO.

14        A    UNTIL SEPTEMBER OR OCTOBER OF 2019.

15        Q    AND IN NOVEMBER OF 2019, YOU BECAME

16   CO-CHAIRMAN?

17        A    SEPTEMBER TO NOVEMBER, SOMEWHERE IN

18   THERE.

19        Q    SOMEWHERE IN THERE, THOSE ROLES

20   SWITCHED.  YOU WENT FROM CO-CEO TO CO-CHAIRMAN?

21        A    WHEN PEDRO DE GUZMAN JOINED US, HE

22   BECAME CEO AND WE ACTUALLY COULD NOT BE TRI-CEOS.

23        Q    THAT MAKES SENSE.

24        A    SO WE MOVED UP TO CO-CEOS.  EXACTLY WHEN

25   ALL THAT HAPPENED, IT WAS WITHIN THAT PERIOD OF
```