UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

| | |
|---|---|
| BRITTANY ROBERSON, REBECCA FREEMAN, BIANCA VIÑAS, TIFFANY KING, and TRESHA THOMPSON, individually and on behalf of others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>HEALTH CAREER INSTITUTE LLC (dba HCI COLLEGE LLC and HCI ACQUISITION LLC), FLORIAN EDUCATION INVESTORS LLC, and STEVEN W. HART,<br><br>*Defendants*. | Civil Action No. 9:22-cv-81883-RAR |

# PLAINTIFFS' REPLY IN SUPPORT OF THEIR RENEWED RULE 23 MOTION FOR CLASS CERTIFICATION

**ARGUMENT**

Defendants fail to show that Plaintiffs' Renewed Rule 23 Motion for Class Certification (ECF No. 203, "Motion") does not demonstrate compliance with the requirements of Federal Rule of Civil Procedure Rule 23. Instead, their meandering Amended Response (ECF No. 211) primarily engages the merits of Plaintiffs' arguments, highlighting common questions of fact and law that support a finding of predominance. Class certification should be granted.

**I.     The Class Is Adequately Defined**

The Primary Class is adequately defined and clearly ascertainable and thus satisfies the standard set forth in Federal Rule of Civil Procedure 23(a)(1). *See* ECF No. 203 16–17. Defendants' arguments to the contrary are unavailing. As an initial matter, the mere existence of four subclasses is in no way dispositive. *See* ECF No. 211 at 9. Indeed, in *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, the Eleventh Circuit "recognize[d] the long and venerated practice of creating subclasses as a device to manage complex class actions." 601 F.3d 1159, 1176 (11th Cir. 2010). The court merely warned that "a large number of subclasses"—like the "nearly thirty subclasses" that could be necessitated by factual differences in the case before it—could indicate the lack of predominance. *Id.* Here, the small number of subclasses does not present such an issue, particularly as five claims are asserted on behalf of the entire Primary Class. *See* ECF No. 203 at 17; *see also, e.g.*, *Doe v. Snyder*, 449 F. Supp. 3d 719, 725 (E.D. Mich. 2020) (primary class seeking relief on three counts and two subclasses each seeking relief on an additional count); *Dockery v. Hall*, No. 3:13-CV-326-WHB-JCG, 2018 WL 11424799, at *1, 3 (S.D. Miss. Feb. 14, 2018) (denying motion to decertify general class seeking relief on four counts and three subclasses each seeking relief on an additional count); *Yates v. Collier*, 868 F.3d 354, 358 (5th Cir. 2017) (affirming certification of a general class and two subclasses).

Further, neither the Primary Class nor any of the subclasses is overbroad. Neither the Primary Class nor any subclass contains any uninjured individuals, let alone "a great many." *See Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, 481 F. Supp. 3d 1258, 1276 (S.D. Fla. 2020) ("[A] class should not be certified if it is apparent that it contains *a great many* persons who have suffered no injury."); *see also MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.*, 342 F.R.D. 347, 355 (S.D. Fla. 2022) ("[T]he mere presence of uninjured class members does not necessarily preclude class certification.").

In Counts 1 and 4 (FDUTPA and Breach of Contract as to Grading and Advancement), Plaintiffs allege that Defendants failed to apply the graduation and advancement requirements stated in enrollment agreements and college catalogs. While these documents may have changed over time, none of these changes resulted in notice of Defendants' arbitrary graduation and advancement requirements—including the 50% Rule, the unannounced choice of exit exam, and the refusal to allow students to retake that exit exam—and therefore none serves to differentiate the proposed class. *See* ECF No. 211-17 at 7, 13, 18; 211-18 at 75–75. Indeed, as highlighted in the Motion, on October 2, 2023, HCI's accreditor warned that "the school has yet to demonstrate that graduation requirements are stated accurately or consistently in both the catalog and enrollment agreement." ECF No. 203 at 26; ECF No. 203-2 at 1082 (Pls' Ex. 77 at 6). Defendants' argument that individuals' expectations could affect liability is also unpersuasive, as "the reasonable expectations of a party to a standardized form contract are judged objectively." *In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645, 657 (S.D. Fla. 2012); *see also Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) (FDUPTA uses reasonable consumer standard).

In Count 2 (FDUTPA as to Misrepresentation of Educational Services Provided), all students who enrolled in the RN Program were harmed by Defendants' misrepresentations and

2

omissions: they did not get the product they were promised. *See* ECF No. 203 at 6–7. Plaintiffs present significant evidence of these misrepresentations and omissions, including a May 2023 letter from CIE finding that required clinical competencies were not covered by HCI's clinical sites, ECF No. 203-2 at 1097 (Pls' Ex. 79 at 3), and a May 2023 ACEN candidacy review suggesting that faculty were unqualified to teach their assigned courses, ECF No. 203-2 at 49 (Pls' Ex. 12 at 8). Similarly, as to Count 5 (Breach of Contract as to Clinical Placement), Plaintiffs have presented evidence that Defendants never offered, and thus no class members received, adequate clinical opportunities. *See* ECF No. 203-2 at 1097 (Pls' Ex. 79 at 3); ECF No. 2023-2 at 224 (Pls' Ex. 20 ¶¶ 14–16). Plaintiffs define "adequate" clinical opportunity objectively, using the standards set forth in the Nurse Practice Act, § 464.019(1), Fla. Stat. *See, e.g.*, ECF No. 93 ¶ 222. Contrary to Defendants' unsupported assertion, *see* ECF No. 211 at 11, a "formal or concrete finding" that Defendants failed to meet these standards is not required.

In Count 6 (FDUPTA as to "New" Program), all individuals *were* exposed to the same practices and harmed in the same way. *See* ECF No. 211 at 12. For example, all were given misleading CIE Form 609a disclosures that omitted institutional first-time test takers who tested under the "old" HCI-WPB RN Program NCLEX code (70755)—a point borne out by Defendants' own evidence. *See* ECF No. 211-5; ECF No. 211-7; ECF No. 211-12; ECG No. 211-14.

In Count 7 (FDUTPA as to Withholding), Plaintiffs intended to define the Withholding Subclass as they did in their Reply in Support of their First Motion for Class Certification: "all HCI students who enrolled in HCI's RN Programs after September 1, 2019, signed retail installment contracts, were denied advancement in the RN Program and/or had their transcripts or other HCI records withheld or delayed for any period of time as a result of their Tuition Options balance, **and paid any portion of their Tuition Options balance in order to advance in the RN**

3

**Program and/or obtain their transcripts**." ECF No. 161 at 2 (emphasis added). All such individuals were injured when they paid amounts on their retail installment contracts. *See* ECF No. 136 at 10. Plaintiffs regret the omission of the final clause and ask the Court to permit refinement of the definition. *See A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 696 (S.D. Fla. 2017) ("[T]he Court is empowered to amend an over-inclusive class definition.").

In Count 8 (FDUTPA as to VATI Course), the fact that students owe money to HCI does not mean that they were not injured. *See* ECF No. 211 at 13. Instead, it shows that they ***were*** injured: the incursion of debt is actual damage under FDUPTA. *See Sharon v. Royal Caribbean Cruises Ltd.*, No. 17-cv-22323, 2017 WL 11220344, at *3 (S.D. Fla. Oct. 6, 2017).

Finally, Plaintiffs note that discovery is not complete, and some definitions may warrant refinement in the future. If, based on the evidence, the Court comes to the conclusion that a temporally-defined subclass should be created for Counts 1 and 4, or that a cut-off date should be applied to the Primary Class and all subclasses, the Court may amend the definitions at that time. *See A&M Gerber Chiropractic LLC*, 321 F.R.D. at 696.

## I. The Named Plaintiffs Have Standing

Each Named Plaintiff has individual standing to raise Counts 1 through 5, which assert violations of FDUTPA and Florida contract law related to arbitrary grading and advancement requirements, misrepresentations of educational services provided, and unauthorized RICs. For Counts 1 and 4, each Named Plaintiff suffered injury-in-fact when she took on loans and made tuition payments for an RN Program that contained undisclosed, arbitrary advancement and graduation requirements.[1] For Counts 2 and 5, each Named Plaintiff suffered injury-in-fact when

---

[1] Defendants' assertion that "Plaintiffs Freeman, Vi[ñ]as and Thompson, were not injured by the 50 percent rule since it was not included in their enrollment agreements," ECF No. 211 at

4

she took on loans and made tuition payments for an RN Program that offered different, inferior educational services from those represented in contracts and other materials. Defendants' dismissal of Plaintiffs' allegation that they were injured when they "took on debt," *see* ECF No. 211 at 14, demonstrates a misunderstanding of the law: as previously explained, the incursion of debt is actual damage under FDUPTA. *See Sharon*, 2017 WL 11220344, at *3.

For Counts 3 and 7, each Named Plaintiff (and, for Count 7, Ms. Thompson) suffered injury-in-fact when she made payments towards unlawful retail installment contract balances. Defendants' argument that the Retail Installment Sales Act, Chapter 520 Fla. Stat. ("RISA"), does not provide the relief requested, *see* ECF No. 211 at 15–16, is plainly inapposite—Plaintiffs do not bring their claim under the RISA, but rather allege that Defendants' violation of that statute constitutes a *per se* violation of FDUTPA. *See* ECF No. 93 at ¶ 506. And under FDUTPA, Plaintiffs are not limited to the damages available to them under the predicate statute, but rather to actual damages. § 501.211, Fla. Stat.; *cf. State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1300–01 (S.D. Fla. 2018). Furthermore, "[w]hether recovery for such a claim is permitted under governing law is a separate question; it is sufficient for standing purposes that [P]laintiffs seek recovery for an economic harm that they allege they have suffered." *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007).

For Count 6, Ms. Roberson, Ms. Freeman, Ms. Viñas, and Ms. King suffered injury-in-fact when they took on loans and made tuition payments for an RN Program that Defendants misrepresented as "new." Defendants' claim that Plaintiffs have not shown that the "new" HCI-WPB RN Program was the same as the old program is an argument about the merits, not about

---

14, is baffling: *all* Named Plaintiffs were injured by the 50% Rule precisely *because* it was never disclosed in enrollment agreements.

standing. *See Varner v. Domestic Corp.*, No. 16-cv-22482, 2017 WL 3730618, at *6 (S.D. Fla. Feb. 7, 2017) ("[W]hen considering whether a plaintiff has Article III standing, a federal court must assume arguendo the merits of his or her legal claim."). Further, it is false. *See, e.g.*, ECF No. 203-2 at 277 (Pls' Ex. 34) (the "new" program consisted of materials for the "old" program); *id.* at 607 (Pls' Ex. 36) (same); *id.* at 43 (Pls' Ex. 12 at 2) (ACEN criticized Defendants' candidacy application for HCI-WPB because it ignored the "old" program); *id.* at 78 (Pls' Ex. 13 at 6) (ACEN reviewers concluded that the "new" curriculum was not concept-based, and thus not new).

As to Counts 9 and 10, Plaintiffs have clearly stated the injury that Ms. Roberson, Ms. King and Ms. Thompson have suffered: they are Black women who Defendants targeted with a predatory product and who took on debt to finance it. *See* ECF No. 203 at 18; ECF No. 84 at 34.

**II.     Plaintiffs Have Satisfied the Requirements of Rule 23(a)**

   **A. The Withholding Subclass Is Sufficiently Numerous.**

Defendants dispute numerosity only as to Count 7. Citing no evidence, they argue that "HCI does not require payment as alleged." ECF No. 211 at 17. They ignore HCI's CEO's testimony that HCI "could not release students to the Florida Board of Nursing or send their transcripts if the students were, you know, in arrears in what they owed us [on their retail installment contracts]," ECF No. 203-2 at 15 (Pls' Exhibit 6 at 111:9–13); statements in HCI newsletters that "students will not be allowed to enter HCI College if they are past due on their tuition options [sic] payment plan," ECF No. 203-2 at 1111 (Pls' Ex. 81 at 11); and clear institutional policies. ECF No. 132-2 at 115 (Pls' Ex. 14 at 21); *id.* at 645 (Pls' Ex. 39 at 23); *id.* at 749 (Pls' Ex. 40 at 21); Exhibits Vol. II at 225 (Pls' Ex. 62 at 16, filed under seal); *id.* at 252 (Pls' Ex. 63 at 18, filed under seal); *id.* at 287 (Pls' Ex. 64 at 26, filed under seal); *id.* at 314 (Pls' Ex. 65 at 24, filed under seal). Based on this evidence, and the number of retail installment

contracts entered into during the class period, *see* ECF No. 203 at 20, Plaintiffs made a "reasonable estimate" of the minimum number of subclass members, which is all that is required. *See Brink v. Raymond James & Assocs., Inc.*, 328 F.R.D. 437, 444 (S.D. Fla. 2018).

### B. Plaintiffs Have Demonstrated Commonality

Defendants' argument as to commonality demonstrates that they misunderstand *both* commonality *and* Plaintiffs' entire theory of the case. Commonality is "generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *Gibson v. Lynn Univ., Inc.*, No. 20-cv-81173, 2021 WL 1109126, at *4 (S.D. Fla. Mar. 23, 2021). The gravamen of Plaintiffs' FDUPTA and contract claims[2] is that, as a result of Defendants' uniform policies and procedures, the RN Program was a worthless product. Every class member was subjected to those same policies and suffered the same harm when they received that product. Defendants claim that changes made to HCI's RN Program "are working," ECF No. 211 at 2, supports this point: the changes have worked by preventing almost 9 in 10 RN Students who enrolled between January 6, 2020, and May 8, 2023, from graduating from HCI, *see* ECF No. 203 at 1. Furthermore, as discussed *infra* Part IV.D, Plaintiffs have satisfied Rule 23(b)'s predominance requirement; the commonality requirement of Rule 23(a)(2) is therefore necessarily satisfied. *See Carriuolo*, 823 F.3d at 985.

### C. The Named Plaintiffs Are Typical of the Class.

Defendants' suggestion that Plaintiffs must compare their facts to those of each of "the myriad putative class members who may exist," ECF No. 211 at 18, simply lacks merit. Plaintiffs have demonstrated typicality by showing a "sufficient nexus" between the legal claims of the Named Plaintiffs and those of the rest of the class. *Ault v. Walt Disney World Co.*, 692 F.3d 1212,

---

[2] Defendants do not argue that Plaintiffs' ECOA and Title VI claims lack commonality.

1216 (11th Cir. 2012); *see also* ECF No. 203 at 21–22. As noted in the Motion, *see* ECF No. 203 at 21, variations in the Named Plaintiffs' experiences "offer a broad spectrum of experiences that collectively illustrate the alleged failures" and misdeeds of Defendants, *see Fla. Pediatric Soc'y v. Benson*, No. 05-cv-23037, 2009 WL 10668698, at *11 (S.D. Fla. June 25, 2009).

Defendants' insistence that differences in enrollment agreements and college catalogs defeats typicality, ECF No 211 at 19, is also unpersuasive. As discussed *supra* at 2, every enrollment agreement and every college catalog was substantially similar in that all set forth advancement and graduation requirements different from those applied by Defendants. The circumstances are thus distinguishable from those in *Dalton v. FMA Enterprises, Inc.*, No. 95-cv-396, 1996 WL 379105, at *5 (M.D. Fla. July 1, 1996)—here, **every** member of the class received defective materials. And it is simply false that Plaintiffs have not alleged misrepresentations that occurred after 2022, ECF No. 211 at 19; as discussed *supra* at 2, Plaintiffs have provided evidence that accrediting bodies warned Defendants about relevant misrepresentations in October 2023. Even so, typicality "may be satisfied despite substantial factual differences" when there is "a strong similarity of legal theories." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). Here, where the legal theories are consistent across the class, Plaintiffs have established typicality.

### D.  The Named Plaintiffs Will Fairly and Adequately Protect the Class's Interests

Defendants' unexplained argument that Plaintiffs seek "improper" injunctive relief that "would likely result in a Pyric [sic] victory," ECF No. 211 at 19, is difficult to parse. As explained in the Motion, the Named Plaintiffs will not benefit from any remedy that would be harmful to the interest of other class members, and they can only recover if they succeed on legal theories that would also lead to recovery for the class. *See* ECF No. 203 at 23.

### III.  Plaintiffs Have Satisfied the Requirements of Rule 23(b)

Rule 23(b)(3) does not require that every issue be common to the class and that no issue

8

will have to be tried individually. Rather, when evaluating predominance, the Court considers whether the common questions are "more prevalent or important than the non-common" questions and whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *Id.* Here, Defendants fail to rebut Plaintiffs' showing that the common questions identified by Plaintiffs in their Motion are more prevalent or important than the individual issues. As a result, Plaintiffs have established predominance. *See id.*

### A. Common Questions Predominate as to FDUTPA and Breach of Contract Claims.

1. <u>Counts 1 and 4: FDUTPA and Breach of Contract as to Grading and Advancement</u>

Defendants argue that because class members may have been affected by Defendants' arbitrary grading and advancement requirements in different ways, they cannot show common injury as to Counts 1 and 4. *See* ECF No. 211 at 21–22. But this misstates the question: here, the injury is the application of the requirements itself, not the consequences that followed. *See South v. Progressive Select Ins. Co.*, No. 19-cv-21760, 2020 WL 8641572, at *8 (S.D. Fla. Dec. 28, 2020) (defendant's uniform business practice is common proof of breach); *Bowe v. Pub. Storage*, 318 F.R.D. 160, 182 (S.D. Fla. 2015) (where "alleged misrepresentations and omissions were made in the same manner to every class member," injury under FDUTPA can be based on common proof). Because "[t]he fraudulent course of conduct alleged in the complaint is common to all class members, . . . individual variations of fact would be insufficient to defeat predominance." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 696–97 (M.D. Fla. 2005); *see also Chianne D. v. Weida*, No. 23-cv-985, 2024 WL 1743334, at *21 (M.D. Fla. Apr. 23, 2024) ("[F]actual variations

9

. . . among the class members do not undermine the existence of the challenged practices.").

And again, the fact that there may have been some variation among the contracts is not dispositive, because each of a limited number of contracts, all drafted by Defendants on behalf of HCI, contained substantially similar material terms or omissions. *See Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) ("materially similar" agreements satisfy predominance); *South* 2020 WL 8641572, at *7 (uniform relevant contract language satisfies predominance); *id.* at *8 ("substantially uniform" contract provisions satisfy predominance); *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 660 (S.D. Fla. 2011) (predominance satisfied by "substantially uniform or similar account agreements"). This case is thus distinguishable from *Klay v. Humana, Inc.*, which involved "many defendants over a significant period of time and . . . each defendant throughout this period utilized many different form contracts," 382 F.3d 1241, 1263 (11th Cir. 2004), or *Sacred Heart Health Sys., Inc.*, which involved "substantial variation" among many contracts and "very disparate" rights and duties of the parties to them, 601 F.3d at 1176.

2. Count 2: FDUTPA as to Misrepresentation of Educational Services Provided

Plaintiffs have provided evidence that Defendants made uniform misrepresentations about the educational services provided at HCI—including statements in HCI's college catalogs that the school was in compliance with state standards—and that HCI was not, in fact, in compliance with those standards. *See* ECF No. 203 at 6–7. Defendants claim that predominance has not been established because class members may have had "actual knowledge of the educational services provided by HCI despite any alleged misrepresentations." ECF No. 211 at 23. But the case Defendants cite fails to support their argument.[3] In *Egwuatu v. S. Lubes, Inc.*, the court found that

---

[3] Defendants also cite two cases for the proposition that no action for fraudulent concealment may lie where the concealed facts were reasonably accessible. ECF No. 211 at 23. Of

there were individualized issues as to whether the alleged misrepresentations were actually made. 976 So. 2d 50, 53 (Fla. Dist. Ct. App. 2008). Here, Plaintiffs presented evidence that all class members were exposed to misrepresentations; Defendants have introduced no evidence showing that HCI sought to mitigate these misrepresentations or that class members had access to information that would rebut them. *See id*.

3. Counts 3 and 7: FDUTPA as to Retail Installment Contracts and Withholding

Defendants do not argue that Plaintiffs failed to establish that common questions predominate as to Counts 3 and 7. *See* ECF No. 211 at 24. Instead, they make premature arguments as to the merits and ***identify*** predominant common questions: whether the RISA applies to HCI and whether the Defendants' retail installment contracts are unenforceable. Further, contrary to Defendants' assertions, the Motion points to common evidence that will demonstrate that the RISA does apply: HCI's own uniform "Retail Installment Contract" governing their sale of "educational goods and services" to RN Students. ECF No. 203-2 at 980 (Pls. Ex. 67 at 1).

4. Count 5: Breach of Contract as to Clinical Placement

Defendants argue Count 5 will require individual damage calculations, such that common issues will not predominate. However, as discussed *infra* at 13–14, the damages here are susceptible to class-wide proof, and even if individualized damages analyses were required, class certification would be appropriate. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Defendants also assert, without any connection to predominance, that "Plaintiffs fail to offer any bright line test to distinguish adequate, from inadequate, clinical placement." ECF No. 211 at 26.

---

course, Plaintiffs do not allege fraudulent concealment; they bring their claim under FDUTPA, which uses a "reasonable consumer" standard. *See Carriuolo*, 823 F.3d at 983–84. Further, unlike in the cited cases, here there is no evidence that the truth about HCI's education offerings was "fully accessible to [Plaintiffs] through due diligence." *See Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1139 (M.D. Fla. 2021).

11

This is false: the SAC clearly defines the lack of "meaningful clinical instruction" with reference to state law requirements. ECF No. 93 ¶ 222 (citing § 464.019(1) Fla. Stat.); *id.* at ¶ 528. Because no class member received the required clinical instruction, all were injured by Defendants' breach.

     5. <u>Count 6: FDUTPA as to "New" Program</u>

Defendants argue that individual issues of exposure to misrepresentations about the RN Program at HCI-WPB, causation, and injury will predominate as to Count 6. ECF No. 211 at 24. But Plaintiffs have demonstrated that each member of the WPB Subclass was exposed to the same misrepresentations, including identical, misleading CIE Form 609a disclosures. And where "alleged misrepresentations and omissions were made in the same manner to every class member," causation and injury under FDUTPA can be based on common proof. *Bowe*, 318 F.R.D. at 182. As this Court has observed, "[p]rospective students acting rationally with access to [accurate] information would likely refrain from enrolling in such a school." ECF No. 84 at 28.

     6. <u>Count 8: FDUTPA as to the VATI Course</u>

Defendants concede that Plaintiffs have properly established predominance with respect to Count 8 but allege that the claim fails on the merits. *See* ECF No. 211 at 25. This argument is premature. "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). The question of whether the Capstone course was substantially distinct from VATI is a common question not ripe for resolution. What is important at this stage is that "[i]n no event will the individual circumstances of particular class members bear on the inquiry." *See id.*

Defendants' argument regarding injury also fails to defeat predominance. As an initial matter, Defendants offer no proof that any putative class members took on financing specifically

to pay for Capstone or that said financing was "written off." *See* ECF No. 211 at 35. Additionally, "writing off" a debt is an accounting measure that has no effect on the debtor. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1188 n. 5 (11th Cir. 2010) ("The act of charging off a debt refers to a mechanism whereby creditors determine that a debt is unlikely to be repaid by the borrower and . . . cannot be collected. . . . However, the charged off debt is not forgiven."). Because students with balances that have been written off by Defendants still have legally enforceable debt, they still suffered injury and incurred damages under FDUTPA.

       7. <u>Damages and Defenses</u>

Defendants complain that FDUTPA and contract damages are not susceptible to class-wide proof, specifically taking issue with Plaintiffs' allegation that the RN Program was worthless. ECF No. 211 at 25–26. But as Plaintiffs explained in the Motion, "[t]he question of whether the RN Program, which provided institutionally substandard education without a meaningful pathway to actually becoming an RN, was sufficiently defective as to be effectively worthless is a question common to the class." ECF No. 230 at 29. And Plaintiffs have presented evidence that it was, including communications from Indian River State College regarding the lack of transferability of HCI credits and consistent Named Plaintiff declarations. *See* ECF No. 203-2 at 1154 (Pls' Ex. 85 at 2); *id.* at 226 (Pls' Ex. 20 ¶ 34); *id.* at 232 (Pls' Ex. 21 ¶ 25); *id.* at 245 (Pls' Ex. 23 ¶ 32). Defendants' suggestion that this evidence is hearsay is inapposite: "in the context of determining class certification, the evidence rules are relaxed, and courts may consider evidence that may not ultimately be admissible at trial." *In re Chiquita Brands Int'l Inc. Alien Tort Statute & Shareholders Derivative Litig.*, 331 F.R.D. 675, 680 n.8 (S.D. Fla. 2019) (citation omitted).

Defendants' argument that contract damages would be individualized is based on a false premise. Defendants posit that "HCI would be entitled to a credit for whatever services they

13

provided, such as to Freeman who did in fact receive clinical placement." ECF No. 211 at 27. But as explained *supra* at 13, Count 5 is premised on the failure to deliver promised and statutorily required minimum clinical opportunities. It is Plaintiffs' position that Defendants cannot be entitled to any credit for *insufficient* clinical opportunities that they may have provided, as such opportunities were functionally worthless. This is yet another common merits question that would support rather than defeat the argument for class certification.

Regardless, "individual damages calculations do not preclude class certification." *Carriuolo*, 823 F.3d at 988 (citations omitted). Because Plaintiffs' theories of damages are consistent with their theories of liability and consistent for all class members, predominance can be satisfied even if individualized analysis is required. *See id.* at 989.

Lastly, Defendants assert that individual defenses preclude a finding of predominance. ECF No. 211 at 27. But the defenses that Defendants identify are either common to the class or nonexistent. For example, Defendants allege that Ms. Roberson waived her rights to advance under the requirements stated in the enrollment agreement when she signed syllabi that contained the new, arbitrary requirements. *Id.* But one must assume that every class member was required to sign such syllabi; thus, the question of waiver is common to the class. Where "affirmative defenses are common across the putative class members, the defenses [do] not operate to destroy the predominance of common questions across the class, but . . . instead provide an additional link of commonality between the class members." *In re Checking Acct. Overdraft Litig.*, No. 10-cv-20496, 2012 WL 12877718, at *9 (S.D. Fla. May 16, 2012) (citation omitted).

As for estoppel, Defendants' assertion that a class member who benefitted from the HCI program would be "estopped" from asserting damages under FDUTPA, ECF No. 211 at 27, is incorrect. If the Court determines that class members received a benefit from their time at HCI,

14

estoppel will not come into play; rather, the value of the benefit will be deducted from the price they paid in tuition, pursuant to the "benefit of the bargain" theory of damages. *See Rollins, Inc. v. Heller*, 454 So.2d 580, 585 (Fla. Dist. Ct. App. 1984) (defining "benefit of the bargain"); *see also In re Checking Acct. Overdraft Litig.*, 2012 WL 12877718, at *10 (setoff defense does not defeat predominance). The primary case cited by Defendants, *Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819 (Fla. Dist. Ct. App. 2010), does not prove otherwise. There, the plaintiffs alleged that a car dealership misrepresented that they were required to purchase a warranty with their vehicle. *Id*. at 821. The court reversed a jury verdict in favor of the plaintiffs because the warranty contract expressly provided that the warranty was not required. *Id*. at 825. Here, Defendants' contractual representations not only fail to contradict Plaintiffs' claims, they support them.

### B. Common Questions Predominate as to ECOA and Title VI Claims

Defendants do not argue that Plaintiffs have failed to show that common questions predominate as to their discrimination claims.[4] Instead, they once again attack the merits of the claims. *Compare* ECF No. 211 at 28 ("[Plaintiffs] fail to demonstrate any RIC terms are predatory.") *with Amgen Inc.*, 568 U.S. at 459. Defendants' argument is perhaps appropriate for a motion for summary judgment; it is not appropriate at this time.

### C. Plaintiffs' Request for Injunctive and Declaratory Relief Supports Predominance

Defendants argue that Plaintiffs are not entitled to injunctive or declaratory relief.[5] This merits-based argument is common to the class and thus support a finding of predominance.

---

[4] As Defendants acknowledge in their lengthy, premature discussion of the sufficiency of Plaintiffs' evidence of disparate impact, ECF No. 211 at 30, Plaintiffs have not "abandoned" their theory of disparate treatment.

[5] Plaintiffs note that this discussion appears on page 31 of Defendants' brief, for which they had a page limit of 30. ECF 192 at 1. Because the one that follows it both appears on page 31 and contains no actual argument, Plaintiffs will not address it here and instead refer to the Motion, ECF No. 141 at 33–34.

## **CONCLUSION**

For the reasons stated above and in Plaintiffs' Motion, this Court should grant Plaintiffs' Motion for Class Certification.

Dated: May 9, 2024

                                                                      Respectfully submitted,

                                                                      */s/ Nicole Mayer*
                                                                      NICOLE MAYER
Florida Bar No. 012035
Nicole@MayerLawFlorida.com
Mayer Law PLLC
171 Dommerich Drive
Maitland, Florida 32751
(352) 494-3657

JENNIFER THELUSMA
Florida Bar No. 1019776
jthelusma@ppsl.org
REBECCA EISENBREY
(*pro hac vice*)
reisenbrey@ppsl.org
VICTORIA ROYTENBERG
(*pro hac vice*)
vroytenberg@ppsl.org
Project on Predatory Student
Lending 769 Centre Street, Suite 160
Jamaica Plain, MA 02130
(617) 390-2669

***Attorneys for Plaintiffs***