🚩 KeyCite Yellow Flag - Negative Treatment
Distinguished by Broodie v. Target Corporation, M.D.Fla., June 6, 2024

823 F.3d 977
United States Court of Appeals, Eleventh Circuit.

Geri Siano CARRIUOLO, on her own behalf and on behalf of all others similarly situated, Peter Bracchi, Plaintiffs–Appellees,
v.
GENERAL MOTORS COMPANY, Defendant–Appellant.

No. 15–14442
|
Non–Argument Calendar
|
May 17, 2016.

**Synopsis**
**Background:** Motor vehicle purchasers and lessees brought putative class action against manufacturer, alleging unjust enrichment and violations of Florida Deceptive and Unfair Trade Practices Act (FDUTPA) based on manufacturer's alleged misrepresentation of safety ratings given by National Highway Traffic Safety Administration (NHTSA). The United States District Court for the Southern District of Florida, No. 0:14–cv–61429–JIC, James I. Cohn, J., granted plaintiffs' motion for class certification. Manufacturer appealed.

**Holdings:** The Court of Appeals, Marcus, Circuit Judge, held that:

[1] common questions predominated over individual ones;

[2] class action was superior method for adjudicating claims at issue; and

[3] class representatives satisfied adequacy of representation prerequisite.

Affirmed.

**Procedural Posture(s):** On Appeal.

West Headnotes (21)

[1] **Federal Courts** ⚷ Class actions
Court of Appeals reviews a district court's grant of class certification for abuse of discretion, which occurs if the court applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

[2] **Federal Courts** ⚷ Class actions
When reviewing a district court's grant of class certification, it is irrelevant whether the Court of Appeals would have granted certification, and, as long as the district court's reasoning stays within the parameters of the applicable rule's requirements, the decision will not be disturbed. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

1 Case that cites this headnote

[3] **Federal Civil Procedure** ⚷ Evidence; pleadings and supplementary material
Burden of establishing the requirements for class certification is on the plaintiff who seeks to certify the class. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

24 Cases that cite this headnote

[4] **Federal Civil Procedure** ⚷ In general; certification in general
**Federal Civil Procedure** ⚷ Consideration of merits
Class certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites for certification have been satisfied, and this analysis will frequently entail overlap with the merits of the plaintiff's underlying claim. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

6 Cases that cite this headnote

[5]  **Antitrust and Trade Regulation**  Nature and Elements

Elements comprising a consumer claim for damages under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. West's F.S.A. § 501.204(1).

161 Cases that cite this headnote

[6]  **Antitrust and Trade Regulation**  Fraud; deceit; knowledge and intent

To show a deceptive act or unfair practice, and thus satisfy the first element of a consumer claim for damages under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), the plaintiff must show that the alleged practice is likely to deceive a consumer acting reasonably in the same circumstances. West's F.S.A. § 501.204(1).

152 Cases that cite this headnote

[7]  **Antitrust and Trade Regulation**  Fraud; deceit; knowledge and intent

**Antitrust and Trade Regulation**  Reliance; causation; injury, loss, or damage

Courts apply an objective test to determine whether a practice was likely to deceive a consumer acting reasonably, as required to show the existence of a deceptive act or unfair practice to support a consumer claim for damages under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), and thus the plaintiff need not show actual reliance on the representation or omission at issue. West's F.S.A. § 501.204(1).

142 Cases that cite this headnote

[8]  **Federal Civil Procedure**  Identification of class; subclasses

Plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

60 Cases that cite this headnote

[9]  **Federal Civil Procedure**  Common interest in subject matter, questions and relief; damages issues

Under the commonality prerequisite for class certification, even a single common question will do, so long as that question is of such a nature that it is capable of classwide resolution, meaning that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

23 Cases that cite this headnote

[10]  **Federal Civil Procedure**  Common interest in subject matter, questions and relief; damages issues

Predominance requirement for class certification is far more demanding than the commonality prerequisite for certification, and it tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation. Fed.Rules Civ.Proc.Rule 23(a)(2), (b)(3), 28 U.S.C.A.

14 Cases that cite this headnote

[11]  **Federal Civil Procedure**  Common interest in subject matter, questions and relief; damages issues

Common issues can predominate, so as to merit class certification, only if they have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

37 Cases that cite this headnote

[12]  **Federal Civil Procedure**  Consumers, purchasers, borrowers, and debtors

Common question as to whether motor vehicle window sticker inaccurately stating that vehicle had received perfect safety ratings in

three categories would deceive objectively-reasonable observer when in fact no safety ratings had been issued predominated in motor vehicle purchasers' and lessees' action against manufacturer, alleging unjust enrichment and violations of Florida Deceptive and Unfair Trade Practices Act (FDUTPA), even if there were differences among class members' subjective reliance on stickers, where every class member purchased or leased same model vehicle with same sticker attached. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.; West's F.S.A. § 501.204(1).

8 Cases that cite this headnote
More cases on this issue

[13] **Federal Civil Procedure** Consumers, purchasers, borrowers, and debtors

Common question existed as to calculation of damages predominated in motor vehicle purchasers' and lessees' action against manufacturer, alleging unjust enrichment and violations of Florida Deceptive and Unfair Trade Practices Act (FDUTPA) based on manufacturer's alleged misrepresentation of safety ratings, where FDUTPA's "benefit of the bargain" model provided standardized class-wide damages figure rendering immaterial any individual's out-of-pocket payment, and price premium that plaintiffs alleged as damages was consistent with their theory of liability. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.; West's F.S.A. § 501.204(1).

17 Cases that cite this headnote
More cases on this issue

[14] **Antitrust and Trade Regulation** Measure and amount

Florida Deceptive and Unfair Trade Practices Act (FDUTPA) damages are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. West's F.S.A. § 501.201 et seq.

37 Cases that cite this headnote

[15] **Federal Civil Procedure** Hearing and determination; decertification; effect

Power of the district court to alter or amend class certification orders at any time prior to a decision on the merits is critical, because the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims. Fed.Rules Civ.Proc.Rule 23(c)(1)(C), 28 U.S.C.A.

9 Cases that cite this headnote

[16] **Federal Civil Procedure** Common interest in subject matter, questions and relief; damages issues

Class certification rule does not require the plaintiff to prove predominance separately as to both liability and damages. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

4 Cases that cite this headnote

[17] **Federal Civil Procedure** Common interest in subject matter, questions and relief; damages issues

Individual damages calculations do not preclude class certification under the rule provision regarding predominance. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

12 Cases that cite this headnote

[18] **Federal Civil Procedure** Consumers, purchasers, borrowers, and debtors

Class action was superior method for adjudicating motor vehicle purchasers' and lessees' action against manufacturer, alleging unjust enrichment and violations of Florida Deceptive and Unfair Trade Practices Act (FDUTPA) based on manufacturer's alleged misrepresentation of safety ratings, where manufacturer identified 1,058 potential class vehicles in Florida, and individual damages claims were potentially too small for separate

actions by individual class members. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.; West's F.S.A. § 501.204(1).

13 Cases that cite this headnote
More cases on this issue

[19] **Federal Civil Procedure** Representation of class; typicality; standing in general

Party's claim to representative status in a class action is defeated only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

6 Cases that cite this headnote

[20] **Federal Civil Procedure** Representation of class; typicality; standing in general

Under adequacy of representation prerequisite, a class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

1 Case that cites this headnote

[21] **Federal Civil Procedure** Consumers, purchasers, borrowers, and debtors

Class representatives satisfied adequacy of representation prerequisite for class certification in motor vehicle purchasers' and lessees' action against manufacturer, alleging unjust enrichment and violations of Florida Deceptive and Unfair Trade Practices Act (FDUTPA) based on manufacturer's alleged misrepresentation of safety ratings, because potential for individualized damages was insufficient to defeat class certification under Florida law, each class member's subjective sophistication or knowledge was irrelevant because liability inquiry stated objective elements, and fact of resale was immaterial because injury occurred when class members paid price premium at time of lease or purchase. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.; West's F.S.A. § 501.204(1).

15 Cases that cite this headnote
More cases on this issue

**Attorneys and Law Firms**

*980 Geoffrey S. Stahl, Jeffrey M. Liggio, Liggio Benrubi PA, Philip M. Burlington, Burlington & Rockenbach, PA, West Palm Beach, FL, Edward F. Haber, Patrick J. Vallely, Shapiro Haber & Urmy, LLP, Boston, MA, for Plaintiffs–Appellees.

Laurie M. Riley, Jones Walker, LLP, Miami, FL, Thomas Alcade Casey, Jr., David G. Radlauer, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP, New Orleans, LA, for Defendant–Appellant.

Appeal from the United States District Court for the Southern District of Florida.

Before MARCUS, WILSON, and ROSENBAUM, Circuit Judges.

**Opinion**

MARCUS, Circuit Judge:

In this interlocutory appeal, Defendant–Appellant General Motors LLC challenges *981 a district court order granting in part a motion for class certification proffered by Plaintiffs–Appellees Geri Siano Carriuolo and Peter Bracchi in their action brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, et seq. The district court certified a class consisting of all Florida purchasers and lessees of 2014 Cadillac CTS sedans. On appeal, General Motors argues that the district court erroneously certified the class under Fed.R.Civ.P. 23 because: (1) there are not questions of law or fact common to the class; (2) any common questions of law or fact do not predominate; (3) a class action is not superior; and (4) the representative parties will not fairly and adequately protect the interests of the class. After thorough review, we can discern no abuse of discretion in the district court's class certification, and, accordingly, affirm.

I.

 [1]  [2]  [3]  [4]   We review a district court's grant of class certification for abuse of discretion. *Vega v. T–Mobile USA, Inc.,* 564 F.3d 1256, 1264 (11th Cir.2009). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1096 (11th Cir.2004) (quotation omitted). "It is irrelevant whether this Court would have granted certification, and as long as the district court's reasoning stays within the parameters of Rule 23's requirements, [its] decision will not be disturbed." *Babineau v. Fed. Express Corp.,* 576 F.3d 1183, 1189 (11th Cir.2009) (quotation omitted and alterations adopted). The burden of establishing the requirements of Rule 23 is on the plaintiff who seeks to certify the class. *See Heaven v. Trust Co. Bank,* 118 F.3d 735, 737 (11th Cir.1997). The Supreme Court has repeatedly "emphasized that it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Comcast Corp. v. Behrend,* ––– U.S. ––––, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) (quotations omitted). "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim." *Id.* (quotation omitted).

## II.

The facts—as alleged in the complaint—are these. In November 2013, Bracchi purchased a new 2014 Cadillac CTS sedan in Brentwood, Tennessee. In December 2013, Carriuolo purchased the same model in Sunrise, Florida. As it turns out, when these vehicles were sold, General Motors had provided —in the standardized "Monroney" window stickers that appear on new vehicles—inaccurate safety information. The stickers are intended to provide safety ratings assigned by the National Highway Traffic Safety Administration ("NHTSA") on a five-star scale for six categories, including: (1) rollover risk; (2) the risk of injury to the driver from a frontal crash; (3) the risk of injury to the passenger in a frontal crash; (4) the risk of injury to the driver in a side crash; (5) the risk of injury to the passenger in a side crash; and (6) an overall safety rating. The Monroney stickers for certain 2014 Cadillac CTS sedans represented that each vehicle had received perfect five-star ratings in three categories: risk of injury to the driver from a frontal crash, risk of injury to the passenger from a frontal crash, and risk of rollover. No ratings were provided for the other categories. The sticker is depicted in Figure 1 below:

*982 **FIGURE 1**



In fact, the NHTSA had not assigned *any* safety ratings to the 2014 Cadillac CTS at the time of sale to class members. As acknowledged in a May 2014 letter from General Motors to Carriuolo, her vehicle displayed inaccurate safety data:

> The purpose of this letter is to advise you about an inadvertent error on your vehicle's window label with respect to the National Highway Traffic Safety Administration's (NHTSA) safety ratings for your vehicle. Not all vehicles are tested by NHTSA every model year. When a vehicle is tested, however, star ratings are issued by NHTSA for frontal crash, side crash, rollover, and overall vehicle performance. All of these ratings are then placed on the window label. While Cadillac always strives for excellence in safety and quality, as of the date of this letter, the 2014 CTS Sedan has not been tested or rated by NHTSA as to its vehicle crash performance. Therefore, the vehicle does not have any star ratings from NHTSA in any category.

> The window label on your vehicle correctly indicated that its overall vehicle and side crash performance were not rated. However, due to an inadvertent computer programming error, the label also indicated that your vehicle had achieved a 5–star rating for frontal crash and rollover performance. This is not correct. Enclosed is a corrected window label accurately reflecting that your vehicle has no NHTSA star ratings. If you have retained the original window label with the incorrect information, please discard it and retain the enclosed corrected label instead.

The appropriate sticker—without any rankings—is depicted in Figure 2.

**FIGURE 2**



**\*983** General Motors and dealers responded to customers expressing concern by offering "goodwill options" like automatic OnStar extensions, XM radio service, accessory certificates, service coupons, and vehicle repurchases. In late May 2014, General Motors asked NHTSA to test the CTS. NHTSA announced on August 6, 2014, that the CTS earned a five-star rating for five of the six safety categories, but earned a four-star rating for risk of injury to the passenger from a frontal crash.

In this action, plaintiffs claimed violations of FDUTPA, Fla. Stat. § 501.201, *et seq.,* and the Tennessee Consumer Protection Act, Tenn.Code § 47–18–101, *et seq.;* unjust enrichment; and breach of express warranty. Plaintiffs also moved for certification of four classes: (1) a Florida class, (2) a Tennessee class, (3) a Nationwide Unjust Enrichment Class, and (4) a Multistate Breach of Express Warranty Class. Notably, the district court certified only one class—a class of persons "within the State of Florida who purchased or leased a 2014 Cadillac CTS that had affixed to it false and deceptive information concerning the NHTSA safety ratings for the vehicle," designating Carriuolo as the lead plaintiff—and denied certification of the other proposed classes. General Motors petitioned us under Rule 23(f)[1] to review the class certification order. We granted the petition.

**III.**

 **[5]**  **[6]**  **[7]**  FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). The elements comprising a consumer claim for damages under FDUTPA are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *City First Mortg. Corp. v. Barton,* 988 So.2d 82, 86 (Fla.Dist.Ct.App.2008). To satisfy the first element, the plaintiff must show that "the alleged practice was likely to deceive a consumer acting reasonably **\*984** in the same circumstances." *State, Office of the Att'y Gen. v. Commerce Comm. Leasing, LLC,* 946 So.2d 1253, 1258 (Fla.Dist.Ct.App.2007) (quotation omitted). Under Florida law, an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably. That is, "[a] party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Davis v. Powertel, Inc.,* 776 So.2d 971, 973 (Fla.Dist.Ct.App.2000).

 **[8]**  **[9]**  Moreover, "a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.' " *Little v. T–Mobile USA, Inc.,* 691 F.3d 1302, 1304 (11th Cir.2012). If the district court determines that this requirement has been met, it is then obliged to examine the prerequisites set forth in Federal Rule of Civil Procedure 23(a), which provides that a class representative may sue on behalf of its members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S.Ct. 2541, 2556, 180 L.Ed.2d 374 (2011) (quotations omitted). "That common contention ... must be of such a nature that it is capable of classwide

resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551; *see also* [Williams v. Mohawk Indus., Inc.,](#) 568 F.3d 1350, 1355 (11th Cir.2009) ("Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." (quotation omitted)).

In addition to meeting the requirements found in Rule 23(a), a plaintiff must establish that the proposed class satisfies at least one of three requirements listed in Rule 23(b). [2] Here, the district court concluded **\*985** that Carriuolo satisfied Rule 23(b)(3), which allows the maintenance of a class action when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). As we've explained:

> Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief. On the other hand, common issues will not predominate over individual questions if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.

Babineau, 576 F.3d at 1191 (quotations and citations omitted and alterations adopted).

[10] [11] The predominance requirement in Rule 23(b)(3) is "far more demanding" than the commonality requirement found in Rule 23(a)(2), and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Common issues can predominate *only* if they have a "direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Vega,* 564 F.3d at 1270 (quotation omitted). Because plaintiffs will necessarily satisfy the commonality requirement if they can show predominance, we begin with the predominance test. *See id.* at 1272.

[12] In this case, the district court found the predominance requirement to be satisfied by an essential question common to each class member: whether the inaccurate Monroney sticker provided by General Motors constituted a misrepresentation prohibited by FDUTPA. General Motors claims that the liability determination will be highly individualized because the buying and leasing experiences of each proposed class member were not uniform. General Motors points out that some class members may have known that the safety ratings were inaccurate; some may not have been aware of the Monroney sticker; and each member negotiated the purchase or lease price individually with the dealer from whom the member purchased or leased the vehicle.

But these objections do not defeat the district court's determination that common questions predominate. Because a plaintiff asserting a FDUTPA claim "need not show actual reliance on the representation or omission at issue," *Davis,* 776 So.2d at 973, the mental state of each class member is irrelevant. In *Davis,* the First District Court of Appeal of Florida recognized that the absence of a reliance requirement means "the impediment to class litigation that exists for multiple intrinsic fraud claims does not exist" in FDUTPA cases. *Id.* Thus, General Motors is incorrect to suggest that the plaintiffs must prove that every class member saw the sticker and was subjectively deceived by it. As the district court correctly observed, these arguments simply seek a reliance inquiry by another name. Instead, under FDUTPA, the plaintiff must only establish three *objective* **\*986** elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *City First Mortg. Corp.,* 988 So.2d at 86. Here, the first FDUTPA element is amenable to class-wide resolution: the factfinder must only determine whether a Monroney sticker that inaccurately states a vehicle had received perfect safety ratings in three categories would deceive an objectively reasonable observer when in fact no safety ratings had been issued.

We addressed a similar issue in *Fitzpatrick v. Gen. Mills, Inc.,* 635 F.3d 1279 (11th Cir.2011), where we reviewed a FDUTPA class certification arising out of misrepresentations made by a producer about the nutritional benefits of YoPlus yogurt. The district court certified a class defined as "all persons who purchased YoPlus in the State of Florida to obtain its claimed digestive health benefit." *Id.* at 1282. We

vacated the order because "[t]he class definition limits the class to those who purchased YoPlus 'to obtain its claimed digestive health benefit,' which takes into account individual reliance on the digestive health claims." *Id.* at 1283. This was error, we explained, because FDUTPA recovery depends on whether plaintiffs paid a price premium, not on whether plaintiffs actually relied on the illegal misrepresentation. *Id.* at 1282–83. Because every class member here purchased or leased the same model vehicle with the same Monroney sticker attached, it does not matter that there may have been differences among the class members' subjective reliance.

**[13] [14]** Moreover, because the injury is not determined by the plaintiffs' subjective reliance on the alleged inaccuracy, causation and damages may also be amenable to class-wide resolution. FDUTPA damages are measured according to "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rollins, Inc. v. Heller,* 454 So.2d 580, 585 (Fla.Dist.Ct.App.1984) (quotation omitted); *see also Coghlan v. Wellcraft Marine Corp.,* 240 F.3d 449, 453 (5th Cir.2001) (The FDUTPA damages formula calculates "the value of the product as promised minus the value of the product delivered."). Thus, the proper question is not how much the erroneous sticker may have reduced the vehicle's perceived value for any individual purchaser or lessee. Rather, damages should reflect the difference between the market value of a 2014 Cadillac CTS with perfect safety ratings for three standardized categories and the market value of a 2014 Cadillac CTS with no safety ratings. Unlike the calculation of an individual consumer's direct pecuniary loss, which would limit the plaintiff to the difference of what she paid and the actual value received, the FDUTPA "benefit of the bargain" model provides a standardized class-wide damages figure because the plaintiff's out-of-pocket payment is immaterial. *See Coghlan,* 240 F.3d at 453 (recognizing that FDUTPA cases apply a "benefit of the bargain" damages formula); 13 A.L.R.3d 875, §§ 3(a) and 4(a) (contrasting the "benefit of the bargain" damages model with an "out of pocket" measure).

In *Collins v. DaimlerChrysler Corp.,* 894 So.2d 988, 991 (Fla.Dist.Ct.App.2004), a Florida appellate court held that a plaintiff adequately alleged actual damages under FDUTPA when she purchased a vehicle with defective seatbelts. Chrysler argued that the plaintiff did not suffer any out-of-pocket damages because the seatbelt never malfunctioned during an accident. *Id.* at 989. The court, however, recognized that this was the wrong metric. *Id.* at 990–91. **\*987** Because FDUTPA allows for damages based on diminution of market value, the court permitted the plaintiff to proceed on the theory that she did not get what she bargained for. *Id.* It concluded, "This case turns on a relatively simple question, at least as to damages—Is a car with defective seatbelt buckles worth less than a car with operational seatbelt buckles? Common sense indicates that it is[.]" *Id.* at 991. The similar question here is amenable to classwide resolution. The plaintiffs may show that a vehicle presented with three perfect safety ratings is more valuable than a vehicle presented with no safety ratings. General Motors received the same benefit of the bargain from the sale or lease to each class member— even if individual class members negotiated different prices— because a vehicle's market value can be measured objectively.

As the district court recognized here, a manufacturer's misrepresentation may allow it to command a price premium and to overcharge customers systematically. Even if an individual class member subjectively valued the vehicle equally with or without the accurate Monroney sticker, she could have suffered a loss in negotiating leverage if a vehicle with perfect safety ratings is worth more on the open market. As long as a reasonable customer will pay more for a vehicle with perfect safety ratings, the dealer can hold out for a higher price than he would otherwise accept for a vehicle with no safety ratings. Thus, for example, a dealer would likely not discount a pickup truck with superior towing capacity for a customer with only a suburban commute, since most customers willingly pay more for that feature. Nor would a dealer be likely to lower the price for a hearing impaired customer who demands to pay less for a vehicle equipped with satellite radio, even though she might value it equally to a vehicle equipped with no audio capabilities. Obviously, prices are determined in substantial measure according to market demand. Thus, because a vehicle with three perfect safety ratings may be able to attract greater market demand than a vehicle with no safety ratings, the misleading sticker arguably was the direct cause of actual damages for the certified class even if members individually value safety ratings differently.

General Motors offers two other arguments about damages that the district court rejected. First, General Motors proposes that damages should be calculated by comparing the value of the vehicle with the inaccurate sticker against the value of the vehicle after the NHTSA ratings were published. It says that because the safety ratings ultimately confirmed two of the three five-star ratings that were prematurely included in the stickers provided to the plaintiffs, the plaintiffs could not have suffered any injury. But even if we ignore that General Motors

displayed a five-star rating for the risk of injury to passengers from frontal impact when in fact the NHTSA awarded only four stars for that category, General Motors offers the wrong metric. A defendant may not escape FDUTPA liability under Florida law merely because a deceptive or misleading statement later turns out to be true. The injury occurs at the point of sale because the false statement allows the seller to command a premium on the sales price. A vehicle that the manufacturer knows to be safe is more valuable than a vehicle that the manufacturer perhaps anticipates will later be declared safe. Because General Motors could only anticipate five-star safety ratings at the time of sale to class members, it caused actual damages within the meaning of FDUTPA by presenting those ratings as confirmed fact.

[15] Second, General Motors argues that the predominance inquiry is not satisfied *988 because damages may vary for some class members. Even if the damages determination does ultimately necessitate individualized calculations, however, reversal would be unwarranted at this stage for two reasons. First, the certification of a class is always provisional in nature until the final resolution of the case. *See* Fed.R.Civ.P. 23(c)(1)(C) (permitting amendment of a certification order at any time prior to judgment). As we have explained, the power of the district court to alter or amend class certification orders at any time prior to a decision on the merits "is critical, because the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims." *Prado–Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1273 (11th Cir.2000). The district court acknowledged that institutional purchasers who leased 2014 Cadillac CTSs to end-consumers may have recaptured the same price premium enjoyed by General Motors. However, evidence offered by General Motors says that of the approximately 9,000 CTSs with erroneous stickers sold or leased in the United States, only "[h]undreds of those vehicles were fleet sales" to institutional purchasers. Thus, there is no reason to expect the predominating questions concerning liability will be overwhelmed by intensive, individualized damages determinations. The district court recognized that, to the extent this becomes an issue, it may be resolved through refinement of the Florida Class or the creation of subclasses. The district court's determination did not amount to an abuse of discretion.

[16] [17] Further and related, individualized damages calculations are insufficient to foreclose the possibility of class certification, especially when, as here, the central liability question is so clearly common to each class member. Rule 23 permits a class action when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). Nothing in this Rule requires plaintiffs to prove predominance separately as to both liability and damages. General Motors argues nevertheless that, pursuant to *Comcast Corp. v. Behrend,* –––U.S. ––––, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013), "damages [must be] capable of measurement on a classwide basis." *Id.* at 1433. But *Comcast* simply requires that "any model supporting a plaintiff's damages case must be consistent with its liability case." *Id.* (quotation omitted). In *Comcast,* the Supreme Court reversed class certification when the plaintiffs sought damages for injuries distinct from the theory of antitrust liability that was accepted for class-action treatment. *Id.* Thus, as our sister circuits have held since *Comcast,* "individual damages calculations do not preclude class certification." *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 374–75 (3d Cir.2015) (quotation omitted); *see also Pulaski & Middleman, LLC v. Google, Inc.,* 802 F.3d 979, 987 (9th Cir.2015) ("Since Comcast ... we reaffirmed that damage calculations alone cannot defeat class certification."), petition for cert. filed, No. 15–1101 (Mar. 1, 2016); *Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 408 (2d Cir.2015) ("The Supreme Court did not foreclose the possibility of class certification under Rule 23(b)(3) in cases involving individualized damages calculations."); *Butler v. Sears, Roebuck & Co.,* 727 F.3d 796, 801 (7th Cir.2013) ("If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification."). *989 Unlike in *Comcast,* where the Court determined that "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class," 133 S.Ct. at 1433, there is no evidence to suggest that the class-wide adjudication of any FDUTPA liability will be subsumed in or overwhelmed by an individualized damages inquiry.

Besides, the price premium that plaintiffs allege as damages is consistent with their theory of liability. By inaccurately communicating that the 2014 Cadillac CTS had attained three perfect safety ratings, General Motors plainly obtained enhanced negotiating leverage that allowed it to command a price premium. The size of that premium—"the difference in the market value of the [vehicle] in the condition in which it was delivered and its market value in the condition in

which it should have been delivered," *Rollins,* 454 So.2d at 585—represents the damages attributable to that theory of liability. Because that theory is consistent for all class members, the predominance requirement under Rule 23(b)(3) is satisfied. This consistency is also sufficient to establish the commonality requirement under Rule 23(a)(2). The district court's determination on these points does not amount to an abuse of discretion.

[18] General Motors also suggests that a class action is not "superior to other available methods for fairly and efficiently adjudicating the controversy," as required by Rule 23(b)(3). We disagree. Among the factors relevant to the superiority requirement are these:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3).
Here, General Motors has identified 1,058 potential class vehicles in Florida. As the district court noted, individual claims may be too small for a separate action by each class member. Because common questions of law and fact predominate, class-wide adjudication appropriately conserves judicial resources and advances society's interests in judicial efficiency. *See Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Again, we can discern no abuse of discretion.

[19] [20] Finally, General Motors argues that Carriuolo failed to prove that she can fairly and adequately protect the interests of the class as required by Rule 23(a)(4).[3] "[A] party's claim to representative status is defeated only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy." *Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1280 (11th Cir.2000). "Thus, a class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class." *Id.*

[21] General Motors has identified three potential class conflicts: first, the damages calculation may differ for institutional **\*990** purchasers who leased the vehicle to end-users; second, different class members may have had varying levels of sophistication and access to information at the time of lease or purchase; and finally, class interests may diverge between those who sold their vehicle before the sticker was corrected, those who sold their vehicle after NHTSA completed testing, and those who still own their vehicle. As we've already noted, the potential for individualized damages is not sufficient to defeat class certification under Florida law. A class member's subjective sophistication or knowledge is irrelevant because the liability inquiry states objective elements. And the fact of resale is immaterial because the injury occurred when class members paid a price premium at the time of lease or purchase. None of these factors suffices as a fundamental conflict. Each class member is connected by the common predominate inquiry: Did General Motors violate FDUTPA by affixing inaccurate Monroney stickers to 2014 Cadillac CTS sedans sold or leased in Florida? Moreover, we again observe that the district court's determination is a provisional one, subject to change in the face of the development of new facts that may compel a different process.

On this record, however, the decision to grant plaintiffs' motion for class certification was not an abuse of discretion; accordingly, we affirm the judgment of the district court.

**AFFIRMED.**

**All Citations**

823 F.3d 977, 94 Fed.R.Serv.3d 957, 26 Fla. L. Weekly Fed. C 305

**Footnotes**

1   "A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal is filed with the circuit clerk within 14 days after the order is entered." Fed.R.Civ.P. 23(f).

2   Rule 23(b) provides that:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
> **(1)** prosecuting separate actions by or against individual class members would create a risk of:
>
> **(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> **(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> **(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> **(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> **(D)** the likely difficulties in managing a class action.
>
> Fed.R.Civ.P. 23(b).

3   "One or more members of a class may sue or be sued as representative parties on behalf of all members only if ... the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4).

---

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.